**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| VOTE.ORG, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. _____ |
| DEBRA CLEAVER, | ) | |
| | ) | |
| *Defendant*. | ) | |
| | ) | |

## <u>COMPLAINT</u>

Defendant Debra Cleaver ("Cleaver") has pursued a personal vendetta against Plaintiff Vote.org and its leadership for six years, ever since she was unanimously replaced by Vote.org's Board of Directors in 2019. Cleaver has conducted an illegal smear campaign to damage Vote.org's reputation and the reputation of its CEO, and to otherwise interfere with Vote.org's fundraising, business relationships, and development.

In her own words, Cleaver has sought to "destroy Vote.org" and prevent its continued success. Cleaver has told multiple third parties that she "will never be sane if we don't destroy [Vote.org] in the press," "really, truly, deeply want[s] to ruin these people," is "fine with destroying vote.org," and that the members of the Board can "chew glass and die."

Cleaver has acted upon her specific intention to damage Vote.org and its leadership by placing negative and defamatory stories, what she referred to as "hit pieces," in the press to "ruin" Vote.org's reputation. She has also impersonated Vote.org and its CEO in an effort to siphon funding and other support away from Vote.org to herself and a new entity that she created. There is no reason to believe Cleaver will ever stop—short of injunctive relief and legal accountability. Vote.org, by and through its attorneys, hereby brings this action and alleges as follows:

## NATURE OF THE ACTION

1.     This is an action for injunctive relief and damages for defamation, trademark infringement, false association/endorsement, unfair competition, and conversion, *inter alia*, arising under the federal Trademark Act of 1946, 15 U.S.C. §§ 1051, *et seq.* (the "Lanham Act"), and Indiana law, including Indiana's Crime Victims Relief Act, Ind. Code § 34-24-3-1.

2.     Vote.org is a 501(c)(3) nonprofit, nonpartisan voting registration and get-out-the-vote organization whose charitable mission is to use technology, data, and strategic outreach to ensure that every eligible American has the information and access they need to cast a ballot and exercise their right to vote.

3.     Vote.org has registered millions of American voters, reaching record numbers of voters in the past five years alone.

4.     In 2020, Vote.org registered over 4.4 million voters, a record number for any nonprofit organization in a single election cycle. That same year, Vote.org helped more than 3.3 million people request mail-in ballots and led a 50-state get-out-the-vote operation.

5.     In 2024, Vote.org made over 87 million voter outreach touchpoints, powered over 40 million visits to its website, and helped register more than 2.2 million voters, the majority of whom were under age 25.

6.     So far in 2025, with four months remaining, Vote.org has already registered more 18-year-olds than in any previous election cycle.

7.     By partnering across social media platforms, dating apps, fashion brands, legacy civil rights organizations, and more, Vote.org is pursuing its goal to embed voting into everyday digital and real life spaces where people live their lives.

8.     Defendant Debra Cleaver founded the organization that became Vote.org in 2008 and served as its Chief Executive Officer until 2019.

9.     In 2019, Vote.org's Board of Directors voted unanimously to remove Cleaver as CEO and terminated her employment with the organization.

10.     Each director serving on Vote.org's Board at the time of Cleaver's termination had been appointed by Cleaver. The Board did not make its decision to terminate Cleaver lightly.

11.     Cleaver's removal followed a period of high turnover at Vote.org and multiple staff complaints of abusive behavior by Cleaver that went unaddressed, even after the Board provided executive coaching for Cleaver.

12.     Since her 2019 firing, Cleaver has defamed and disparaged Vote.org and its executive leadership in an effort to discourage donors, partners, and vendors from continuing to work with the organization.

13.     As a recent example, in July 2025, Cleaver submitted false and defamatory complaints about Vote.org and its CEO to several regulatory and law enforcement agencies, including, upon information and belief, the offices of Attorneys General in at least four states.

14.     Upon information and belief, Cleaver also submitted a false and defamatory complaint to the U.S. Internal Revenue Service in July 2025.

15.     On or before July 11, 2025, Cleaver contacted a reporter at a national news organization to pitch yet another "hit piece" against Vote.org and its CEO, in conjunction with her false and defamatory submissions to government agencies. This was not the first time that Cleaver had contacted this reporter to pitch falsehoods about Vote.org and its CEO. The story pitched by Cleaver was published in the national press on July 15, 2025, and was covered by several additional publications and press organizations.

16.     Upon information and belief, Cleaver has gone so far as to impersonate Vote.org and its CEO in email messages sent from a Protonmail account purporting to be the CEO's –

"[CEO's First Name], Vote.org <votedotorg@proton.me>" – and using the misappropriated intellectual property of Vote.org, including the Vote.org logo.

17.    Enormous harm has resulted from Cleaver's actions.

18.    Through her violations of state and federal law, Cleaver has undercut the work and mission of Vote.org, marring its reputation.

19.    Cleaver's actions have directly impacted Vote.org's ability to raise crucial funds, retain and attract Board members, and do the vital work of registering and turning out voters to the polls.

20.    Cleaver's vindictive smear campaign forced Vote.org to spend substantial amounts of operating funds to respond and attempt to mitigate the harm caused by her defamatory conduct and false reports.

21.    Additional and significant harm continues to accrue.

22.    Nonetheless, Vote.org remains focused on its work and mission.

23.    Cleaver must be held accountable for the harm she has caused and enjoined from further misconduct and violations of the law.

## **THE PARTIES**

24.    Plaintiff Vote.org (f/k/a Long Distance Voter) is a 501(c)(3) non-profit corporation incorporated under the laws of California and the District of Columbia with a principal place of business located in Washington, D.C.

25.    Upon information and belief, Defendant Cleaver is an individual residing in California.

## JURISDICTION AND VENUE

26.     This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) and 15 U.S.C. § 1121(a) because Plaintiff's claims present well pleaded federal questions arising under the Lanham Act.

27.     This Court has supplemental jurisdiction over Plaintiff's claims arising under Indiana law pursuant to 28 U.S.C. §§ 1338(b) and 1367 because those claims are joined with substantial and related claims under the Lanham Act, and are so related to the claims under the Lanham Act that they form part of the same case or controversy under Article III of the United States Constitution.

28.     This Court has personal jurisdiction over Cleaver because she purposefully directed her tortious and unlawful conduct at Indiana with the specific aim of injuring Vote.org. As alleged in further detail below, Cleaver made numerous defamatory statements regarding Vote.org and its CEO with the intent of inflicting reputational harm on Vote.org in Indiana and elsewhere. On information and belief, Cleaver also sent an "anonymous" letter using Vote.org's name and logo to several Indiana residents—a letter that both defamed Vote.org and infringed on its trademarks.

29.     Venue in this Court is proper under 28 U.S.C. § 1391 (b) and (c) in that Cleaver is subject to personal jurisdiction in this District and a substantial part of the events giving rise to the claims occurred in this District.

## SUMMARY OF THE ALLEGATIONS

**A. Vote.org's Mission and Mark are Unique and Valuable.**

30.     Vote.org uses cutting-edge technology and tools with direct voter outreach to simplify political engagement, increase voter turnout, and strengthen American democracy. Through the organization's website, Americans can register to vote, verify their registration, request a mail-in ballot, sign up for election reminders, find their polling locations, and stay up to date on the laws and policies that affect their ability to vote.

31.     Vote.org disseminates reliable election and polling information, and these tools are free for anyone to use. Other organizations can also offer the Vote.org toolset for free on their websites and, for a fee, can receive access to the resulting data.

32.     Vote.org owns common law trademark rights dating back several years in the mark "Vote.org" and the following Vote.org logo in connection with its various goods, services and mission, including in the solicitation of contributions (collectively, the "Vote.org Marks").



([https://www.vote.org/](https://www.vote.org/)).

33.     Additionally, the Vote.org Marks are trademarks and service marks as defined by the Lanham Act, which defines a trademark as any "word, name, symbol, or device" used by a merchant "to identify his or her goods and distinguish them from those manufactured by others." 15 U.S.C. § 1127. Similarly, a service mark is any "any word, name, symbol, or device, or any combination" used by a merchant "to identify and distinguish the services of one person, including a unique service, from the services of others and to indicate the source of the services, even if that source is unknown." *Id.*

34.     Vote.org has continuously used the Vote.org Marks, including on its website, promotional materials, and solicitations, and has acquired significant and valuable goodwill in them.

35.     For several years, Vote.org has invested considerable time and money in developing and maintaining the goodwill associated with the Vote.org Marks throughout the United States.

36.     As a result of these continuous, extensive efforts, the Vote.org Marks are recognizable to donors, voters, and stakeholders as source identifiers, and these donors, voters, and stakeholders have come to associate the distinctive and valuable Vote.org Marks with Vote.org and Vote.org's goods, services and mission.

37.     The Vote.org Marks are unique symbols of identification, value, right, and/or privilege that Vote.org uses to promote Vote.org's goods, services, and mission.

**B. <u>Cleaver's Termination Followed Failed Efforts at Performance Management.</u>**

38.     After achieving success in boosting voter registration and turnout for the November 2018 elections, Vote.org's Board hoped to see the organization grow in advance of the November 2020 elections. However, beginning in late 2018, under Cleaver's leadership, Vote.org's already small staff began to shrink.

39.     Between late 2018 and early 2019, three of the organization's less than ten employees left the organization. Of these three, Cleaver fired two and one resigned, complaining about Cleaver's abusive behavior before she did so.

40.     In 2019, Vote.org's Board attempted to address these concerns. In an effort to rehabilitate Cleaver, the Board directed her to participate in executive coaching with a focus on how to interact with colleagues.

41.     The Board further assisted Cleaver by offering to take certain measures to reduce the risks associated with Cleaver's interactions with employees and vendors.

42. The Board's efforts were ultimately in vain, and Cleaver resisted performance management.

43. On August 22, 2019, concerned about Cleaver's poor judgment, erratic and abusive behavior toward employees, and resistance to performance management, the Board removed Cleaver as a member of the Board and terminated her employment with the organization.

**C. Cleaver's Personal Vendetta Against Vote.org Led to Multiple Violations of the Law.**

44. Immediately following her removal in 2019—and continuing for six years, to the present day—Cleaver made it her mission to reputationally and monetarily harm Vote.org.

45. Indeed, Cleaver maintained an electronic folder titled "fuck vote.org." A true and correct copy of Cleaver's admission to maintaining such an electronic folder is attached as Exhibit A.

46. Cleaver made clear to several of her associates her desire to take down the organization and its employees, stating that she:

    a. "will never be sane if we don't destroy [Vote.org] in the press;"

    b. "really, truly, deeply want[s] to ruin these people;"

    c. is "fine with destroying vote.org;" and

    d. that the members of the Board can "chew glass and die."

True and correct copies of the communications containing the above statements are attached as Exhibit B.

47. Shortly after her termination, Cleaver formed a competing venture, VoteAmerica, whose website is strikingly similar to Vote.org's and even contains Vote.org's tagline "Everything You Need to Vote." VoteAmerica, like Vote.org, focuses on "voter mobilization" strategy, working "to strengthen American democracy by removing barriers to voting" and running "large-scale, information-based voter registration and mobilization campaigns."

48.     Instead of focusing her energy on VoteAmerica, however, Cleaver doubled down on her intent to "ruin" Vote.org.

49.     Cleaver's actions defamed and attempted to discredit Vote.org and its leadership to donors, partners and vendors, discouraging them from continuing to work with Vote.org, and impersonating Vote.org and its CEO via email to disparage the organization.

50.     Indeed, Cleaver made several comments regarding Vote.org and its leadership's conduct and history, all of which are false, defamatory, and/or intended to interfere with Vote.org's business relations, including:

     a.     Cleaver told donors and third-party partners of the organization that Vote.org would not be able to continue its planned work with them since Cleaver had been removed;

     b.     Cleaver disparaged Vote.org in her private communications with existing supporters of the organization by planting seeds of doubt as to its future; by suggesting that Vote.org did not have a succession plan or forward-looking strategy and that all of its staff were planning to leave the organization;

     c.     Cleaver promoted the false narrative that she was improperly removed from her position at Vote.org and wrongly terminated;

51.     These comments were part of Cleaver's larger plan to divert funds from Vote.org and interfere with its ability to do business. Indeed, Cleaver:

     a.     Encouraged existing donors to seek refunds of previous donations from Vote.org;

     b.     Attempted to divert funding from Vote.org and its mission by notifying donors who were in the process of making donations that she had been terminated, and therefore advised them not to make donations;

     c.     Tried to sour relations between Vote.org and other non-profit organizations, whose cooperation and relationships are crucial to Vote.org realizing its mission; and

      d.   Threatened to stop working with any individuals, donors, and other non-profit organizations who worked with Vote.org.

52.    Cleaver's more recent conduct is consistent with threatening statements she made as far back as December 2019—after her termination from Vote.org—at which time Cleaver made a barrage of additional statements illustrating her desire to take down Vote.org and its employees:

      a.   In an instant message, Cleaver stated that if the Board didn't want to resign, she would just "ruin their professional reputations;" and

      b.   Cleaver engaged with a consulting strategist on how to disrupt Vote.org's operations, discussing a plan of "de-legitimizing vote.org via some well-placed pieces that burn them while not burning [Cleaver] a ton." Cleaver also expressed enthusiasm to "go ruin lives," and stated that "it is very much my hope that you will just destroy them, and that when you're done with them they have their Vote.org positions, and very little else."

True and correct copies of the communications containing the above statements are attached as Exhibit C.

53.    Since devoting herself to ruining the lives of Vote.org's leadership and Board, Cleaver has submitted a formal complaint with the Internal Revenue Service against Vote.org's CEO and her husband falsely alleging conduct that the two did not engage in. The complaint was dismissed.

54.    Shortly thereafter, during the spring of 2020, Cleaver submitted a proposal for a panel at the largest annual conference for progressives, drawing thousands of attendees from around the country and beyond. The proposal made several derogatory and false claims about Vote.org and its leadership and was posted publicly on the conference's website, where it could be viewed by thousands of site visitors, including prospective and confirmed conference attendees.

55.     Cleaver repeated her false statements regarding Vote.org and its employees in the lead up to the 2020 mid-term elections. She circulated communications to labor unions that were considering donating to Vote.org falsely describing Vote.org's conduct and thereby deterring potential donors.

**D.  Cleaver's Frivolous Lawsuit was Dismissed, with Prejudice.**

56.     On August 18, 2022, Cleaver initiated a lawsuit against Vote.org, its individual Board members, and its General Counsel at the time of her termination.

57.     On March 17, 2023, the court dismissed all but one of Cleaver's causes of action.

58.     On May 9, 2023, Vote.org filed a Cross-Complaint against Cleaver, asserting claims for: (1) Breach of Fiduciary Duty; (2) Conversion; (3) Violation of Comprehensive Computer Data Access and Fraud Act; (4) Violation of Computer Fraud and Abuse Act; (5) Intentional Misrepresentation; (6) Unjust Enrichment; (7) Tortious Interference; and (8) Violation of the Unfair Competition Law.

59.     Pursuant to a May 3, 2024, agreement, Cleaver voluntarily dismissed her remaining claim in a walkaway settlement. Vote.org paid nothing to Cleaver and did not admit to any wrongdoing.

60.     Once Cleaver's lawsuit was dismissed, Vote.org thought the matter was finished. However, Cleaver doubled down on her smear campaign, which continues to this day.

**E.  Cleaver's Disparagement and Defaming of Vote.org Continues.**

61.     In June 2024, during a critical fundraising period prior to the 2024 election, Vote.org received an email from a partner organization (the "Partner Organization") informing it that a formal complaint had been filed against the organization by Cleaver. The Partner Organization is a valuable partner of Vote.org, providing Vote.org with access to voter data, software and data licenses, and data and technology strategy support.

62.    Cleaver's complaint falsely alleged that Vote.org had engaged in conduct that was in violation of the Partner Organization's Code of Conduct. Specifically, the complaint included false allegations of intimidation, harassment, personal or political attacks, and personal insults.

63.    Cleaver made the false and defamatory complaint in an attempt to discredit Vote.org and harm, or potentially end, its relationship with the Partner Organization.

64.    In summer 2024, on information and belief, Cleaver sent, or caused to be sent, an "anonymous" letter to individuals with a "personal or professional affiliation with the Vote.org board or its CEO." Recipients of the letter included donors, stakeholders, and prospective supporters. The letter was sent to several recipients in Indiana, including the CEO's parents, the head of an educational organization on whose Board of Directors Vote.org's CEO serves, and several employees of the educational organization. A true and correct copy of the letter, which was affixed with the Vote.org Marks to make it appear to be affiliated with or endorsed by Vote.org, is attached at Exhibit D. Specifically, the letter falsely attacked Vote.org's CEO's professional history and work experience, disparaging her both personally and professionally with an intent to damage Vote.org by discrediting its CEO, falsely stated that Vote.org was "currently being investigated by the IRS for misappropriating funds," and falsely stated Vote.org was "involved in litigation with a former employee.

65.    In July 2024, Cleaver appeared on a podcast where she made numerous false statements about Vote.org, including but not limited to that she had been wrongfully terminated, that Vote.org had continued to threaten her with litigation, and that Vote.org told her its plan was to bankrupt her and ruin her life.

66.    In the Spring of 2025, Cleaver pitched another "hit piece" about Vote.org to a national publication, though no story was published at that time.

67.    In May 2025, on information and belief, Cleaver ratcheted up her campaign by impersonating Vote.org and its CEO. On information and belief, Cleaver caused the sending of an email that purported to be from "[CEO's first name], Vote.org," and used the email address "votedotorg@proton.me." "Proton.me" accounts are hosted by Protonmail, a Switzerland-based electronic communications service that allows users to anonymously create encrypted email accounts that are difficult if not impossible to trace, and whose contents cannot be provided by the services to courts or law enforcement agencies in response to lawful orders. The email was sent to harass a newly hired employee of Vote.org and disparage the organization. Plaintiff does not know who else has received these deceptive and disparaging impersonating emails.

68.    In July 2025, Cleaver submitted false and defamatory complaints about Vote.org and its CEO to at least four offices of state Attorneys General. Upon information and belief, a similar complaint was sent to the IRS in the same timeframe. Cleaver made these complaints and the false statements contained in them in bad faith, knew that statements she was making were false and/or acted with reckless disregard of their falsity. Cleaver's false statements to the Attorneys General included, but are not limited to, the following:

a.    Cleaver falsely and maliciously accused the organization of fraud because it failed to meet an ambitious voter registration goal in 2024. Any suggestion of nefarious intent is false, and clearly intended to disparage and defame Vote.org and its leadership. There is no evidence that Vote.org intended for its voter registration efforts to be misleading. On the contrary, despite Cleaver's incessant attacks to the organization's reputation, Vote.org registered over 2.2 million voters in 2024, far surpassing any other nonpartisan, nonprofit entity in the field;

b.    Cleaver falsely accused Vote.org of private inurement by allegedly allocating "substantial resources to executive benefits and amenities that were unrelated to its

charitable purpose." Cleaver knows this allegation is false, and/or she has made the allegation with reckless disregard of the truth or falsity. The travel data that Cleaver references includes travel for all Vote.org employees (not only for its CEO) and reflects legitimate expenses related to fundraising for the nonprofit and other work which furthers the charitable mission; and

c.    Cleaver falsely accused Vote.org of paying "excessive compensation" to the CEO, and then went on to defame Vote.org and its CEO by falsely attacking her professional resume. Cleaver knows these allegations are false, and/or she has made the allegations with reckless disregard of the truth or falsity. The annual salary set by Vote.org for its CEO is within the range of objectively reasonable compensation for comparable nonprofits, and its CEO's professional experience, including over six years as CEO of Vote.org, is an appropriate basis for that salary; and,

d.    Cleaver falsely stated a lawsuit against Vote.org filed by a former Vote.org employee was pending. Cleaver knows this allegation is false, and/or she has made the allegation with reckless disregard of the truth or falsity. Public record of the mentioned lawsuit show the former Vote.org employee voluntarily dismissed the case in 2023.

69.    On or about July 11, 2025, Cleaver contacted a reporter at a national publication to pitch another "hit piece" on Vote.org, centered on Cleaver's false and defamatory complaints.

70.    Cleaver repeated the defamatory statements contained in the complaints purportedly sent to the offices of Attorneys General and provided the reporter with a copy of the complaint sent to the office of the New York Attorney General.

71.    A story about Cleaver's complaints was published by the national publication on July 15, 2025.

72.     As a result of these actions, Vote.org has been harmed in a multitude of ways. While the full scope of the damages is unknown, Cleaver has undoubtedly caused millions of dollars of direct harm, and damaged Plaintiff's reputation in ways that warrant punitive damages. For example, Cleaver damaged Vote.org's relationship with a major funding source, resulting in a loss of $10 million in funding for radio programs. Cleaver's vindictive campaign also forced Vote.org to spend significant organizational funds and other resources to respond and attempt to mitigate the harm caused by her defamatory and other improper conduct—funds and resources that could have been devoted directly to Vote.org's operations and mission, but for Cleaver's unlawful course of conduct.

73.     Cleaver has directly impacted Vote.org's ability to raise crucial funds, retain and attract staff and Board members, and to do the incredibly important work of registering and turning out voters to the polls, a function that is vital to our democratic process. Her misconduct has caused additional damage to the entities who rely on Vote.org for tools and information used to support their own independent voter registration efforts.

74.     The damage Cleaver has caused and continues to cause to Plaintiff's reputation is ongoing, and discovery will be necessary to determine the full extent of her misconduct and its impact. As of the filing of this Complaint, it is clear that Cleaver has disrupted Vote.org's business relationships, damaged its fundraising efforts, and caused more than ten million dollars in harm.

## COUNT ONE
**(Defamation)**

75.    Plaintiff restates and incorporates by reference the allegations in paragraphs 1 through 74 of the Complaint.

76.    Cleaver has made numerous defamatory statements regarding Vote.org, including but not limited to:

    a.    stating Vote.org violated the Partner Organization's Code of Conduct;

    b.    stating Vote.org's CEO's resume is incorrect and that the CEO has a history of "past misconduct" and "lack of relevant experience;"

    c.    stating that Vote.org was "currently being investigated by the IRS for misappropriating funds;"

    d.    stating Vote.org's plan was to "bankrupt" Cleaver and "ruin" Cleaver's life;

    e.    stating that Vote.org's ambitious goal to register eight million voters in 2024 was "deception, calculated and sustained" using "public trust and charitable status to raise millions of dollars under false pretenses;"

    f.    stating Vote.org allocated "substantial resources to executive benefits and amenities that were unrelated to its charitable purpose;"

    g.    stating Vote.org paid "excessive compensation" to its CEO; and,

    h.    stating that a lawsuit filed by a former Vote.org employee was currently "pending."

77.    These statements constitute defamation *per se* because they impute misconduct by Vote.org with respect to its work as a voting registration and get-out-the-vote organization. Alternatively, the statements constitute defamation *per quod*.

78.    Cleaver's statements regarding Vote.org are false.

79.     Cleaver made her defamatory statements regarding Vote.org with knowledge that they were false or with reckless disregard of their truth or falsity.

80.     As a result of Cleaver's defamatory statements, Vote.org has been damaged and is entitled to presumed damages as a natural and probable consequence of the *per se* defamation, as well as compensatory and punitive damages.

81.     In addition, Vote.org is entitled to special damages that it has suffered as a natural and proximate consequence of the defamation. Vote.org's reputation has been greatly injured and its relationships have been harmed.

## COUNT TWO
### (Trademark Infringement (15 U.S.C. § 1125(a)))

82.     Plaintiff restates and incorporates by reference the allegations in paragraphs 1 through 74 of the Complaint.

83.     Vote.org owns the Vote.org Marks and used and continues to use the Vote.org Marks in interstate commerce, including but not limited to soliciting donations through websites, mail, or other means across the United States.

84.     The Vote.org Marks are inherently distinctive and/or have acquired secondary meaning, and the Vote.org Marks have been and will continue to be known throughout the United States as the identifying and distinguishing source of Vote.org's services and mission.

85.     While running a competing nonprofit, VoteAmerica, on information and belief, Cleaver sent out an "anonymous" letter to Vote.org donors and stakeholders during a critical fundraising period prior to the 2024 election. This "anonymous" letter was on letterhead which was affixed with the Vote.org Marks, including its exact logo, to make it appear to be affiliated with or endorsed by Vote.org.

86.     Without authorization or the consent of Vote.org, on information and belief, Cleaver used and will continue to use the Vote.org Marks in commerce, and in connection with soliciting

donations, or advertising of goods or services, in a manner that is likely to cause confusion, mistake, or to deceive.

87.    The above-described infringing use of the Vote.org Marks in "anonymous" letters are designed to dilute the Vote.org Marks, cause confusion or mistake, deceive, and/or divert donations and contributions from Vote.org to Cleaver and/or VoteAmerica and/or to pass off Cleaver's new entity as that of Vote.org.

88.    On information and belief, Cleaver is and/or has been able to profit from the goodwill associated with the Vote.org Marks by diverting donations and support away from Vote.org by its existing and/or prospective donors and contributors, and otherwise by diverting business and causing competitive harm to Vote.org through the actions described throughout this complaint.

89.    By using the Vote.org Marks in commerce without Vote.org's authorization or consent, Cleaver is depriving Vote.org of the exclusive right to control use of the Vote.org Marks.

90.    Cleaver's use of the Vote.org Marks constitutes trademark infringement in violation of § 43 of the Lanham Act, 15 U.S.C. § 1125(a).

91.    By reason of and as a direct and proximate result of Cleaver's trademark infringement, Cleaver has caused damage to Vote.org's business, reputation and the goodwill associated with the Vote.org Marks, and/or has diverted donors, business, and goodwill from Vote.org to Cleaver.

92.    Vote.org is entitled to recover damages suffered by Vote.org, and costs of this action.

93.    On information and belief, Cleaver committed these acts of trademark infringement knowingly, willfully, deliberately, and maliciously, with the intent to cause confusion and mistake,

and to deceive. Accordingly, Vote.org is entitled to a monetary recovery in an amount to be proven at trial as well as treble damages, attorneys' fees, and costs, pursuant to 15 U.S.C. § 1117.

94.    Vote.org has been, and continues to be, damaged by Cleaver's willful and unlawful activities and conduct, and unless/until Cleaver's conduct is enjoined, Vote.org's reputation and the goodwill associated with the Vote.org Marks will continue to suffer irreparable injury that cannot adequately be calculated or fully compensated by monetary damages.

95.    The continuing injury to Vote.org absent injunctive relief outweighs the prospective harm, if any, to Cleaver if an injunction is granted because Cleaver has no legal right to infringe on Vote.org's trademarks.

96.    Accordingly, Vote.org is also entitled to injunctive relief to prevent future trademark infringement by Cleaver.

## COUNT THREE
### (False Association/False Endorsement (15 U.S.C. § 1125(a)))

97.    Plaintiff restates and incorporates by reference the allegations in paragraphs 1 through 74 of the Complaint.

98.    On information and belief, Cleaver's use of the Vote.org Marks to identify the "anonymous" letter to Vote.org donors and stakeholders during a critical fund-raising period prior to the 2024 election constitutes false association and/or false endorsement in violation of § 43 of the Lanham Act, 15 U.S.C. § 1125(a).

99.    This conduct is likely to create confusion among donors, voters, and stakeholders concerning Vote.org's endorsement of, sponsorship of, approval of, and/or affiliation with the "anonymous" letter, and Cleaver herself.

100.    By reason of and as a direct and proximate result of Cleaver's false association and false endorsement, Cleaver has caused damage to the Vote.org's business, reputation, and the

goodwill associated with the Vote.org Marks, and/or has diverted donors, business, and goodwill from Vote.org to Cleaver.

101.    Vote.org is entitled to recover damages suffered by Vote.org, and the costs of this action.

102.    On information and belief, Cleaver committed false association and false endorsement knowingly, willfully, deliberately, and maliciously, with the intent to cause confusion and mistake and to deceive. Accordingly, Vote.org is entitled to a monetary recovery in an amount to be proven at trial as well as treble damages, attorneys' fees, and costs, pursuant to 15 U.S.C. § 1117.

103.    By reason of and as a direct and proximate result of Cleaver's unlawful acts and practices, including those set forth above, Cleaver has caused, is causing, and unless such acts and practices are enjoined by the Court, will continue to cause, immediate and irreparable harm to Vote.org that cannot adequately be calculated or fully compensated by monetary damages.

104.    The continuing injury to Vote.org absent injunctive relief outweighs the prospective harm, if any, to Cleaver if an injunction is granted because Cleaver has no legal right to false association.

105.    Accordingly, Vote.org is also entitled to injunctive relief to prevent false association by Cleaver.

## COUNT FOUR
### (Tortious Interference with Contract)

106.     Plaintiff restates and incorporates by reference the allegations in paragraphs 1 through 74 of the Complaint.

107.     Vote.org has valid and enforceable contractual relationships with its employees and business partners, including but not limited to the Partner Organization.

108.     Cleaver was aware of Vote.org's contractual relationships.

109.     Cleaver intentionally induced various employees and business partners to breach their contractual relationships with Vote.org by making false and defamatory statements regarding Vote.org.

110.     Indeed, Cleaver has attempted to induce the Partner Organization to breach its contractual relationship with Vote.org by making a false and defamatory allegation that Vote.org has violated the partner organization's Code of Conduct.

111.     And most recently, Cleaver, on information and belief, attempted to interfere with Vote.org's employee relationships by impersonating Vote.org in an attempt to convince an employee not to work for Vote.org.

112.     Cleaver's conduct was not justified, was malicious, and was exclusively directed to Vote.org's injuries.

113.     Vote.org has been damaged by Cleaver's tortious interference with Vote.org's contractual relationships.

## COUNT FIVE
### (Tortious Interference with Business Relationships)

114.     Plaintiff restates and incorporates by reference the allegations in paragraphs 1 through 74 of the Complaint.

115.     Vote.org has business and economic relationships with actual and potential donors with the probability of future economic benefit to Vote.org and the charitable purposes it serves.

116.     Cleaver was aware of Vote.org's business relationships.

117.     Cleaver intentionally interfered with Vote.org's economic relationships with actual and potential donors by making false and defamatory statements regarding Vote.org. Cleaver's conduct was intentionally designed to disrupt Vote.org's business relationships with actual and potential donors.

118.     Cleaver's conduct disrupted numerous relationships with Vote.org's actual and potential donors.

119.     Cleaver's conduct was not justified, was malicious, and was exclusively directed to Vote.org's injuries.

120.     Vote.org has been damaged by Cleaver's tortious interference with Vote.org's valid economic and business relationships.

## COUNT SIX
### (Unfair Competition)

121.     Plaintiff restates and incorporates by reference the allegations in paragraphs 1 through 74 of the Complaint.

122.     On information and belief, Cleaver's unauthorized use of the property of Vote.org, namely Vote.org's name, Uniform Resource Locator (URL) web address, and the Vote.org Marks and the goodwill associated with that property as alleged herein constitutes common law unfair competition.

123.     Cleaver is engaged in a competing venture, VoteAmerica, which focuses on voter mobilization and registration like Vote.org.

124.     On information and belief, Cleaver's unauthorized use of the property of Vote.org, including the use of the Vote.org's name, web address, and the Vote.org Marks, without consent, when impersonating Vote.org in an email harassing a newly hired employee and by using Vote.org's name and logo in an "anonymous" letter to Vote.org donors and stakeholders, is likely to cause confusion, mistake and/or deception as to the source or origin of the information and/or statements in the unauthorized email.

125.     Vote.org had valid, at-will employment contracts with its new employees.

126.     On information and belief, Cleaver was aware of Vote.org's employment contracts with its new employees.

127.     On information and belief, Cleaver intentionally attempted to induce one or more of Vote.org's new employees to breach their employment contracts with Vote.org.

128.     Cleaver's conduct was not justified.

129.     By reason of and as a direct and proximate result of Cleaver's unfair competition, including the tortious interference with Vote.org's employment relationship with its employees and

causing confusion, mistake and/or deception as to the source or origin of the information and/or statements in her unauthorized email and her anonymous letter, Cleaver has caused damage to Vote.org's business, reputation and the goodwill associated with the Vote.org's name, URL web address, and the Vote.org Marks.

130.    Vote.org is entitled to recover any value or monetary gains to Cleaver as a result of her actions, damages suffered by Vote.org, and costs of the action.

131.    On information and belief, Cleaver committed these acts of unfair competition knowingly, willfully, deliberately, and maliciously, with the intent to cause confusion and mistake, and to deceive. Accordingly, Vote.org is entitled to a monetary recovery in an amount to be proven at trial.

132.    Vote.org has been, and continues to be, damaged by Cleaver's willful and unlawful activities and conduct, and unless Cleaver's conduct is enjoined Vote.org's reputation and the goodwill associated with its name, web address, and the Vote.org Marks will continue to suffer irreparable injury that cannot adequately be calculated or fully compensated by monetary damages.

133.    The continuing injury to Vote.org absent injunctive relief outweighs the prospective harm, if any, to Cleave if an injunction is granted because Cleaver has no legal right to continue her willful and unlawful conduct.

134.    Accordingly, Vote.org is also entitled to injunctive relief.

## COUNT SEVEN
### (Identity Deception)

135.    Plaintiff restates and incorporates by reference the allegations in paragraphs 1 through 74 of the Complaint.

136.    On information and belief, Cleaver knowingly or intentionally used Vote.org's CEO's identifying information, including her name and association with Vote.org, with the intent to harm or defraud Vote.org, by engaging in the foregoing conduct, including impersonating Vote.org's CEO in an email harassing a newly hired employee of Vote.org.

137.    On information and belief, Cleaver's unlawful, knowing, intentional, deliberate, willful, and malicious use of a fictitious name and email address that purports to be from "[CEO's first name], Vote.org" is deceiving and misrepresents the identity of the person sending the email, as well their employment affiliation and authorization as an officer of the employer.

138.    On information and belief, Cleaver or someone acting on her behalf used Vote.org's CEO's identifying information for her own benefit without consent in order to deceive and to pursue a personal vendetta, which resulted in a pecuniary loss for Vote.org.

139.    Cleaver has therefore committed identity deception under Indiana Code § 35-43-5-3.5.

140.    As a direct and proximate result of Cleaver's actions described herein, Vote.org has suffered, and will continue to suffer, irreparable injury to its reputations, business, and goodwill, unless and until the Court enjoins Cleaver's actions.

141.    As a direct and proximate result of Cleaver's actions described herein, Vote.org has suffered, and will continue to suffer, monetary damages and pecuniary losses in an amount to be proven at trial.

142.    Under the Indiana Crime Victims Relief Act, Indiana Code § 35-24-3-1, a person that suffers pecuniary loss as a result of the violation of Indiana Code §§ 35-43 *et seq.*, may bring a civil action against the person who caused the loss for treble damages, costs of the action, and reasonable attorneys' fees.

143.    As set forth herein, Cleaver violated Indiana Code § 35-43-5-3.5 through knowing, intentional, deliberate, willful, and malicious commission of identity deception.

144.    Vote.org is the victim of Cleaver's knowing, intentional, deliberate, willful, and malicious actions set forth herein, and, as a result, has suffered, and will continue to suffer monetary damages and pecuniary losses in amounts to be proven at trial.

145.    Vote.org is accordingly entitled to an award of those actual damages as well as statutory treble damages under Indiana's Crime Victims Relief Act, Indiana Code § 34-24-3-1, costs, and reasonable attorneys' fees.

146.    Vote.org is also entitled to injunctive relief.

147.    Vote.org has no complete and adequate remedy at law with respect to those of Cleaver's actions that are ongoing or difficult to assess and quantify.

148.    Vote.org has been, and continues to be, damaged by Cleaver's willful and unlawful activities and conduct, and unless/until Cleaver's conduct is enjoined, Vote.org's reputation and the goodwill associated with Vote.org will continue to suffer irreparable injury that cannot adequately be calculated or fully compensated by monetary damages.

## COUNT EIGHT
### (Theft)

149.    Plaintiff restates and incorporates by reference the allegations in paragraphs 1 through 74 of the Complaint.

150.    On information and belief, Cleaver knowingly or intentionally exerted unauthorized control over the Vote.org Marks with intent to deprive Vote.org of a part of their value and use by making unauthorized use of Vote.org Marks for her own benefit and to pursue a personal vendetta, which resulted in a pecuniary loss for Vote.org.

151.    On information and belief, Cleaver knowingly or intentionally exerted unauthorized control over the property of Vote.org, namely the Vote.org Marks, and the goodwill associated with that property, by making unauthorized use of the same when impersonating Vote.org in an email harassing a newly hired employee of Vote.org, as well as by sending an anonymous letter to donors and stakeholders that used Vote.org Marks.

152.    The Vote.org Marks are valuable property.

153.    Vote.org's goodwill associated with the Vote.org Marks is valuable property.

154.    As the owner of the Vote.org Marks, and the associated goodwill, Vote.org alone has the right to control and authorize the use of the Vote.org Marks, and the associated goodwill.

155.    On information and belief, Cleaver obtained, took, conveyed, encumbered, possessed and/or transferred all or a valuable part of Vote.org's property by making unauthorized use of the same when impersonating Vote.org in an email harassing a newly hired employee, as well as by sending an anonymous letter to donors and stakeholders that used the Vote.org Marks.

156.    On information and belief, Cleaver obtained, took, conveyed, encumbered, possessed and/or transferred all or a valuable part of Vote.org's property for her own use and

benefit and in exclusion and defiance of Vote.org's property interests, and without the consent of Vote.org.

157.    On information and belief, Cleaver misappropriated the Vote.org Marks, and the associated goodwill for her own use and benefit and interfered with Vote.org's control over the same.

158.    As a direct and proximate result of Cleaver's actions described herein, Vote.org has suffered, and will continue to suffer, monetary damages in an amount to be proven at trial, and Vote.org seeks statutory remedies under the Indiana Crime Victims Relief Act, Indiana Code § 34-24-3-1, for Cleaver's violations of Indiana Code § 35-43-4-2, including but not limited to treble damages, costs, and attorneys' fees.

159.    Vote.org has been, and continues to be, damaged by Cleaver's willful and unlawful activities and conduct, and unless Cleaver's conduct is enjoined, Vote.org's reputation and the goodwill associated with the Vote.org Marks will continue to suffer irreparable injury that cannot adequately be calculated or fully compensated by monetary damages.

160.    The continuing injury to Vote.org absent injunctive relief outweighs the prospective harm, if any, to Cleaver if an injunction is granted because Cleaver has no legal right to misappropriate Vote.org's trademarks.

161.    Accordingly, Vote.org is also entitled to injunctive relief.

## COUNT NINE
### (Conversion)

162.    Plaintiff restates and incorporates by reference the allegations in paragraphs 1 through 74 of the Complaint.

163.    On information and belief, Cleaver knowingly or intentionally exerted unauthorized control over the Vote.org Marks with intent to deprive Vote.org of a part of their value and use by making unauthorized use of the Vote.org Marks for her own benefit and to pursue a personal vendetta, which resulted in a pecuniary loss for Vote.org.

164.    On information and belief, Cleaver knowingly or intentionally exerted unauthorized control over the property of Vote.org, namely the Vote.org Marks and the goodwill associated with that property, by making unauthorized use of the same when impersonating Vote.org in an email harassing a newly hired employee of Vote.org, as well as by sending an anonymous letter to donors and stakeholders that used the Vote.org Marks.

165.    The Vote.org Marks are valuable property.

166.    Vote.org's goodwill associated with the Vote.org Marks is valuable property.

167.    As the owner of the Vote.org Marks, and the associated goodwill, Vote.org alone has the right to control and authorize the use of the Vote.org Marks, and the associated goodwill.

168.    On information and belief, Cleaver obtained, took, conveyed, encumbered, possessed and/or transferred all or a valuable part of Vote.org's property by making unauthorized use of the same when impersonating Vote.org in an email harassing a newly hired employee, as well as by sending an anonymous letter to donors and stakeholders that used the Vote.org Marks.

169.    On information and belief, Cleaver obtained, took, conveyed, encumbered, possessed and/or transferred all or a valuable part of Vote.org's property for her own use and

benefit and in exclusion and defiance of Vote.org's property interests, and without the consent of Vote.org.

170.    On information and belief, Cleaver misappropriated the Vote.org Marks, and the associated goodwill for her own use and benefit and interfered with Vote.org's control over the same.

171.    As a direct and proximate result of Cleaver's actions described herein, Vote.org has suffered, and will continue to suffer, monetary damages in an amount to be proven at trial, and Vote.org seeks statutory remedies under the Indiana Crime Victims Relief Act, Indiana Code § 34-24-3-1, for Cleaver's violations of Indiana Code § 35-43-5-3, including but not limited to treble damages, costs, and attorneys' fees.

172.    Vote.org has been, and continues to be, damaged by Cleaver's willful and unlawful activities and conduct, and unless Cleaver's conduct is enjoined, Vote.org's reputation and the goodwill associated with the Vote.org Marks will continue to suffer irreparable injury that cannot adequately be calculated or fully compensated by monetary damages.

173.    The continuing injury to Vote.org absent injunctive relief outweighs the prospective harm, if any, to Cleaver if an injunction is granted because Cleaver has no legal right to convert Vote.org's trademarks.

174.    Accordingly, Vote.org is also entitled to injunctive relief.

## COUNT TEN
### (Criminal Mischief)

175.    Plaintiff restates and incorporates by reference the allegations in paragraphs 1 through 74 of the Complaint.

176.    On information and belief, Cleaver recklessly, knowingly, or intentionally damaged or defaced Vote.org's property without consent by making unauthorized use of the Vote.org Marks for her own benefit and to pursue a personal vendetta, which resulted in a pecuniary loss and other harms for Vote.org.

177.    On information and belief, Cleaver knowingly or intentionally exerted unauthorized control over the property of Vote.org, namely the Vote.org Marks and the goodwill associated with that property, by making unauthorized use of the same when impersonating Vote.org in an email harassing a newly hired employee of Vote.org, as well as by sending an anonymous letter to donors and stakeholders that used Vote.org's name and logo.

178.    The Vote.org Marks are valuable property.

179.    Vote.org's goodwill associated with the Vote.org Marks is valuable property.

180.    As the owner of the Vote.org Marks, and the associated goodwill, Vote.org alone has the right to control and authorize the use of the Vote.org Marks, and the associated goodwill.

181.    On information and belief, Cleaver's use of the Vote.org Marks, and the associated goodwill without consent in connection with Cleaver's unauthorized use of the same when impersonating Vote.org in an email harassing a newly hired employee damages and by using Vote.org Marks in an anonymous letter to donors and stakeholders devalues Vote.org's property and the associated goodwill.

182.    As a direct and proximate result of Cleaver's actions described herein, Vote.org has suffered, and will continue to suffer, monetary damages in an amount to be proven at trial, and

Vote.org seeks statutory remedies under the Indiana Crime Victims Relief Act, Indiana Code § 34-24-3-1, for Cleaver's violations of Indiana Code § 35-43-1-2, including but not limited to treble damages, costs, and attorneys' fees.

183.     Vote.org has been, and continues to be, damaged by Cleaver's willful and unlawful activities and conduct, and unless Cleaver's conduct is enjoined, Vote.org's reputation and the goodwill associated with the Vote.org Marks will continue to suffer irreparable injury that cannot adequately be calculated or fully compensated by monetary damages.

184.     The continuing injury to Vote.org absent injunctive relief outweighs the prospective harm, if any, to Cleaver if an injunction is granted because Cleaver has no legal right to her continued willful and unlawful activities and conduct.

185.     Accordingly, Vote.org is also entitled to injunctive relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Vote.org prays for relief as follows:

a.     Judgment against Defendant, Debra Cleaver, for the claims of defamation, trademark infringement, false association/endorsement, tortious interference with contract, tortious interference with business relationships, unfair competition, and identity deception, theft, conversion, and criminal mischief;

b.     Defendant, Debra Cleaver, her agents, affiliates, employees, attorneys, and representatives, and all those in privity or acting in consent or participation with Cleaver, and each and all of them, be permanently enjoined from:

i.     Impersonating Vote.org, its CEO and other employees, or its Board members, in any communication, including but not limited to email communications;

32

      ii.      Imitating, copying, reproducing, or using, in any manner, Vote.org's name, web address, and/or the Vote.org Marks, or any other mark similar to the Vote.org's name, web address, or the Vote.org Marks; and

      iii.      Committing any act that is likely to cause confusion, mistake and/or deception as to the source or origin of information or statement about Hailey and/or Vote.org.

c.      Defendant, Debra Cleaver, her agents, affiliates, employees, attorneys, and representatives, and all those in privity or acting in consent or participation with Cleaver, and each and all of them, be permanently enjoined and required to:

      i.      Discontinue use of the display name and/or email address "[CEO's First Name], Vote.org <votedotorg@proton.me>", any similar display name or email address, and any display name or email address that references Vote.org or its CEO in any way; and

      ii.      File with this Court and serve on Plaintiff an affidavit setting forth in detail the manner and form of Cleaver's compliance with the terms of this Court's orders.

d.      An award to Plaintiff of all damages, costs, attorneys' fees, prejudgment interest, and other amounts to which Plaintiff is entitled by law;

e.      An award of punitive damages and/or statutory damages under Indiana's Crime Victims Relief Act; and

f.      All other relief that is appropriate.

## JURY DEMAND

Plaintiff Vote.org hereby demands a trial by jury on all issues so triable.

Dated: September 8, 2025

Respectfully submitted,

PLAINTIFF,
VOTE.ORG

By McCARTER & ENGLISH, LLP

*/s/ Zachary A. Myers*
Zachary A. Myers
Vanessa Roberts Avery (*pro hac vice* application forthcoming, upon request)
Kaylin O. Cook

10 E. Main Street, Suite 200
Carmel, IN  46032
T: (317) 810-5510
F: (317) 602-1698
zmyers@mccarter.com
vavery@mccarter.com
kcook@mccarter.com

*Its Attorneys*