Exhibit A – Vote.org's Cross-Complaint against Debra Cleaver

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

VOTE.ORG,                              )
                                       )
            Plaintiff,                 )
                                       )
    v.                                 )          Case No. 1:25-cv-01776-SEB-MJD
                                       )
DEBRA CLEAVER,                         )
                                       )
            Defendant.                 )

**DECLARATION OF ATTORNEY ALEXIS MUSTELL**

I, Alexis Mustell, declare under penalty of perjury that the following facts are true and accurate:

1. I am one of the attorneys who represents Defendant Debra Cleaver in this matter and I am admitted to practice law in the state of California. My California bar number is 359751.

2. I personally retrieved, via electronic request to the Clerk of Court, the exhibits which are now offered in support of Defendant's Motion for Judicial Notice – (1) the Cross-Complaint filed by Vote.org against Debra Cleaver, in the previous civil matter which was pending before Alameda County Superior Court for the state of California (case number 22CV016466); and, (2) the request for dismissal of said Cross-Complaint, filed by Vote.org on May 17, 2024, and entered by the court on May 23, 2024.

3. I am able to aver and confirm, under the penalties for perjury, that the copies of the documents offered herein are authentic, unredacted, and unaltered copies of the original filings provided to me upon my request to the Alameda County Superior Court for the state of California.

1

I declare, under penalty of perjury, that the foregoing representations are true and accurate.

DATED: November 17, 2025       /s/ Alexis Mustell

                                           Alexis Mustell

ELECTRONICALLY FILED
Superior Court of California,
County of Alameda
05/09/2023 at 11:03:25 AM
By: Lynetta Irvin,
Deputy Clerk

1  CHERYL D. ORR (SBN 143196)
   cheryl.orr@faegredrinker.com
2  CAROLINE L. GUENSBERG (SBN 338440)
   caroline.guensberg@faegredrinker.com
3  FAEGRE DRINKER BIDDLE & REATH LLP
   Four Embarcadero Center, 27th Floor
4  San Francisco, California 94111
   Telephone:  +1 415 591 7500
5  Facsimile:  +1 415 591 7510

6  WILLIAM R. HORWITZ (*Admitted Pro Hac Vice*)
   william.horwitz@faegredrinker.com
7  FAEGRE DRINKER BIDDLE & REATH LLP
   600 Campus Drive
8  Florham Park, New Jersey 07932
   Telephone:  +1 973 549 7142
9  Facsimile:  +1 973 360 9831

10 KRISTIN M. HALSING (SBN 318602)
   kristin.halsing@faegredrinker.com
11 FAEGRE DRINKER BIDDLE & REATH LLP
   1800 Century Park East, Suite 1500
12 Los Angeles, California 90067-1517
   Telephone:  +1 310 203-4000
13 Facsimile:  +1 310 229-1285

14 *Attorneys for Defendant and Cross-Complainant*
   VOTE.ORG

15

16 **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

17 **COUNTY OF ALAMEDA**

18 DEBRA CLEAVER,                          CASE NO. 22CV016466

19          Plaintiff,                     ASSIGNED FOR ALL PURPOSES TO:
                                           JUDGE JULIA SPAIN
20     v.                                  DEPARTMENT 520

21 VOTE.ORG, and INSPERITY PEO            **CROSS-COMPLAINT FOR:**
   SERVICES,
22                                         **1)  Breach of Fiduciary Duty**
          Defendants.                      **2)  Conversion**
23                                         **3)  Violation of Cal. Penal Code § 502**
                                           **4)  Violation of 18 U.S.C. § 1030**
24 VOTE.ORG,                               **5)  Intentional Misrepresentation**
                                           **6)  Unjust Enrichment**
25          Cross-Claimant,                **7)  Tortious Interference with Prospective**
                                           **     Economic Relationships**
26     v.                                  **8)  Violation of Cal. Bus. & Prof. Code §**
                                           **     17200 et seq.**
27 DEBRA CLEAVER,

28          Cross-Defendant.               **JURY TRIAL REQUESTED**

Defendant and Cross-Claimant Vote.org, by and through its attorneys, hereby submit the following Cross-Complaint and Jury Trial Demand against Plaintiff and Cross-Defendant Debra Cleaver:

## I. INTRODUCTION

1.      This is a case about a once-respected leader in the movement to increase voter turnout, Debra Cleaver, whose personal drive for attention and control outweighed her commitment to safeguarding American democracy. Pettiness, spite and cruelty increasingly characterized her management of the important voting organization she founded, Vote.org. Over time, she created an oppressive workplace for the organization's dedicated staff and unpaid volunteers. As American democracy faces threats unparalleled in our nation's history, Vote.org is essential. Recognizing the stakes, the organization's Board of Directors grew increasingly concerned about Ms. Cleaver's behavior as she grew increasingly self-interested and lost sight of the organization's mission. She mistreated employees and volunteers and instilled a climate of fear and uncertainty. Rather than respecting others and uniting in common goals, she divided, belittled, schemed and insulted. Her erratic and abusive behavior affected the organization's internal personnel and external relationships.

2.      Understanding the organization's reliance on outside donations for its success and survival, Ms. Cleaver, in breach of her fiduciary duty, persuaded third parties to place conditions on their donations. Those conditions allowed her to try to use the donations as leverage to shield her from the consequences of her misconduct.

3.      Unwilling to prioritize the organization's mission, she left the Board of Directors no choice but to remove her from the organization. It bears emphasizing that Ms. Cleaver had personally chosen the members of the Board of Directors who made this decision.

4.      The Board did not take this decision lightly. It first made multiple attempts to work with Ms. Cleaver to improve her behavior. Rather than reciprocating these good faith efforts, however, she embarked on a campaign of sabotage. Members of the Board considered resigning, beleaguered by Ms. Cleaver's conduct. However, honoring their commitments to the organization and its mission, the Directors stayed on, and made the difficult, prudent and proper decision to remove a reckless and abusive CEO.

5.      After her removal, Vote.org discovered that Ms. Cleaver's misconduct was even more nefarious than it had feared. Her actions included, without limitation: (1) unauthorized access to and transfer or deletion of electronic documents; (2) improper use and disclosure of confidential Vote.org information including, but not limited to, employee severance information, donor lists, fundraising and Board Materials, "G-Suite" folders and their contents, a master user email list, website and tool Source Code (defined below), and Legacy Code (defined below) (collectively, the "Confidential Information"); (3) dissemination of disparaging and defamatory comments about the organization to third parties; (4) secretly hiring her own outside counsel as the organization's counsel to pursue arguments in her personal interest; and (5) deliberate interference with the organization's existing contractual relations and prospective economic advantage, including with past, current and prospective donors, vendors, and other partners.

6.      Since her departure and replacement, the organization has greatly grown its fundraising revenue, significantly increased its impact and reach to American voters, and restored its single-minded focus on its mission to protect American democracy. However, Ms. Cleaver now runs a competing organization. Although non-profit voting-expansion advocacy groups traditionally work together to further their shared mission, Ms. Cleaver has instead undertaken anti-competitive actions with the objective of undermining and harming – and gaining an unfair competitive advantage over – Vote.org. By threatening an organization dedicated to protecting our nation's most-cherished values, Ms. Cleaver is indirectly advancing the cause of the enemies of American democracy.

## II. PARTIES

7.      Vote.org (f/k/a Long Distance Voter) is a 501(c)(3) non-profit corporation with its principal place of business in Oakland, California.

8.      On information and belief, Ms. Cleaver is a U.S. citizen who resides in San Francisco, California.

## III. JURISDICTION AND VENUE

9.      This Court has jurisdiction of this dispute pursuant to California Constitution, Article VI, Section 10.

1    10.    This Court has personal jurisdiction over Ms. Cleaver because she commenced this

2    action in this Court, thereby consenting to personal jurisdiction on any cross-complaint filed against

3    her. (*Adam v. Saenger* (1938) 303 U.S. 59, 67–68; *Nobel Floral, Inc. v. Pasero* (2003) 106

4    Cal.App.4th 654, 658.)

5    11.    This Court also has personal jurisdiction over Ms. Cleaver pursuant to Section 410.10

6    of the California Code of Civil Procedure.  On information and belief, Ms. Cleaver is, and at all

7    material times has been, domiciled in California.  Further, Ms. Cleaver has purposefully availed

8    herself of the benefits of doing business in the State of California by serving as a director and officer

9    of, and subsequently being removed from, Vote.org, a non-profit corporation with its principal place

10    of business in Oakland, California. Her employment and removal give rise to this litigation in the

11    State of California.

12    12.    Venue is proper in the County of Alameda, as venue is determined based on the

13    complaint.  (*Dow AgroSciences LLC v. Superior Court* (2017) 16 Cal.App.5th 1067, 1076.)

14                                    **IV. BACKGROUND**

15    **A.    Vote.org's Mission**

16    13.    Vote.org is a 501(c)(3) non-profit organization.  Its mission is to ensure the electorate

17    matches the population by making registering to vote and voting more convenient and accessible for

18    all eligible citizens nationwide.  Vote.org uses technology to simplify political engagement, increase

19    voter turnout, and strengthen American democracy.  It accomplishes its mission through a two-

20    pronged approach:  (i) building and maintaining the Vote.org website and the Vote.org toolset of

21    voter outreach materials; and (ii) proactively reaching out to low-propensity voters and encouraging

22    them to vote.

23    14.    The Vote.org toolset currently includes a voter registration tool, an absentee ballot

24    tool, a tool that helps individuals verify voter registration status, a pledge to register tool, and a stand-

25    alone election reminders tool.  These tools are free for anyone to use.  Other organizations can also

26    offer the Vote.org toolset for free on their websites and, for a fee, can receive access to the resulting

27    data.  They can use that data for their in-person voter registration and "Get Out The Vote" ("GOTV")

28    campaigns.

**B.    As CEO, Cleaver's Put Her Own Interests Above Those of the Organization.**

15.    In the weeks leading up to her removal, after the board began to question her ability to effectively manage the organization, Ms. Cleaver took actions intended to bolster her position that were adverse to the best interests of the organization.

16.    In July 2019, Ms. Cleaver unilaterally hired an outside law firm, purportedly on behalf of Vote.org.  However, Ms. Cleaver's intention in engaging the outside law firm was to secure her own position, as underscored by the fact she sought the "organization's" lawyer's advice after she was removed from her position as CEO.

17.    On August 9, 2019, a donor arranged a donation of $4 million to Vote.org.

18.    Ms. Cleaver, upon suspecting that her position as CEO was in jeopardy, directed the donor to condition the donation on her continued service as CEO and director/board member.

19.    Ms. Cleaver admitted in communications to her assistant that she would use the $4 million donation as leverage to attempt to keep her CEO position, threatening: "the board knows about the 4 million[.] try to fire me now motherf[]s."

20.    Ms. Cleaver also played a role in drafting the agreement to impose the condition on the donation without the input of the organization's General Counsel, who was normally involved in drafting such agreements.

21.    On August 22, 2019, Ms. Cleaver was removed from her position.

22.    Vote.org never received the $4 million donation.

23.    One day after she was removed from Vote.org, Ms. Cleaver boasted on social media that she had secured "a four million dollar commitment from a long term donor" of Vote.org and that she planned to use the donation as "seed money to start a new organization."

24.    Shortly after her departure from Vote.org, Ms. Cleaver launched a new, competing organization.

25.    Further, in the lead up to Ms. Cleaver's resignation, Ms. Cleaver instructed Vote.org's then-Director of Communications to decline a request by the Wall Street Journal to write a feature story about Vote.org's all-female board because she was in a dispute with the board and was planning to demand that they all to resign or face a lawsuit.

**C.    Ms. Cleaver Retained Vote.org's Confidential and Trade Secret Information and Property**

26.    Vote.org maintains a series of non-public donor lists that have been compiled since its inception that contain identifying information and contact information, as well as level of support given, for each of its donors.

27.    These lists were compiled through the diligent work of Vote.org's many employees, board members, and consultants, who have spent countless hours identifying and contacting potential donors and cultivating donor relationships.  Because these compilations are the result of the work undertaken by multiple individuals—each of whom owed a confidentiality obligation to the organization—all of the information does not exist anywhere in one person's mind.

28.    If a competitor organization—or indeed any like-minded non-profit—were to obtain these lists, they would provide such organizations a substantial head-start in fundraising, and put Vote.org at a significant disadvantage by luring away valuable donors and other advocates from supporting the organization's critical mission.

29.    Vote.org also maintains fundraising files that, like the donor lists, are the culmination of years' worth of work by the organization's many employees, board members, and consultants, and include non-public proposals, team meeting notes, grant agreements, prospective donor research, fundraiser proposal and report trackers, and a list of major renewal donor targets, among other things. These confidential materials are valuable to the organization as they represent the lifeblood of its fundraising activities and would provide a roadmap to any like-minded non-profit competing for donor support to redirect valuable funds from Vote.org to those organizations instead.

30.    Following her removal from Vote.org on August 22, 2019, Ms. Cleaver, locked employees out of the "Fundraising and Board Materials G Suite" folders maintained on the organization's computer system.

31.    As a result, Vote.org was unable to access its own donor lists and fundraising files.

32.    On information and belief, Ms. Cleaver copied and retained these materials for her own personal use.

33.     Vote.org also maintains a non-public master user email list—one of its most valuable proprietary assets.  At the time of Ms. Cleaver's removal, this email list consisted of information regarding almost five million users of its online tools.

34.     By way of background, when someone uses one of Vote.org's online tools, that individual provides Vote.org with certain personal information, including an email address.  The organization uses the email addresses to send election reminders and fundraising emails.  This data essentially identifies Vote.org's entire audience of users.  Disclosure of this data would give a competitor organization an unfair competitive advantage in attracting users and donors.

35.     This list was accessible through Vote.org's "VIP portal," which is an internet-based platform that the organization built to enable staff to access data and run queries about individuals who have used Vote.org's tools.  The VIP portal is password protected through individual staff logins and is accessible to a limited number of individuals on a need-to-know basis only.

36.     As CEO, Ms. Cleaver had access to the VIP portal and regularly used the master email list while at Vote.org.

37.     Separately, Vote.org also maintained a non-public major donor and friends-of-Vote.org list in Mailchimp, which it used to regularly email for programmatic funding.  Ms. Cleaver also had access to this list.

38.     On information and belief, Ms. Cleaver misappropriated the master email list and the major donor and friends-of-Vote.org list in Mailchimp (in whole or in part) when she left Vote.org.  In this regard, without permission or authority, she took or retained possession of these non-public resources (in whole or in part) and used them to identify and solicit funders for her new organization.

39.     Ms. Cleaver had no permission or authority to take, use or retain this information after her departure from Vote.org.

40.     The confidential source code underlying Vote.org's suite of online tools is another valuable asset to which Ms. Cleaver had access, and which, Vote.org believes, she possessed in whole or in part on the laptop that she used for work.

41.     The source code is comprised of several compilations of code and accompanying non-public data that (1) allows voters to register to vote online (the Vote.org voter registration tool); (2)

allows voters to verify their registration status (the Vote.org verification tool); (3) allows voters to apply for an absentee ballot (the Vote.org absentee ballot tool); (4) allows voters to sign up for election reminders (the Vote.org election reminders tool); (5) enables tools that permit Vote.org's partners to log in and access select data; and (6) enables Vote.org's website to integrate with Vote.org's tools.  Vote.org also has (7) one central backend application, and three separate applications for shared libraries of code that serve different functions.  Vote.org's code and accompanying data are housed in a repository called GitHub and collectively will be referred to herein as Vote.org's "Source Code."

42.     Vote.org retains legacy versions of the code and applications, which are separately housed in a repository called BitBucket (Vote.org's "Legacy Code").

43.     This non-public Source Code and Legacy Code are proprietary to Vote.org and Vote.org takes measures to protect their confidentiality.  Both GitHub and BitBucket—the repositories in which the Source Code and Legacy Code reside, respectively—are only accessible to a limited number of engineering staff and contractors through independent logins that are password protected and protected with multi-factor authentication.

44.     This Source Code and Legacy Code were developed and enhanced over an incalculable number of hours by Vote.org employees and contractors subject to confidentiality agreements and are of great value to the organization because they facilitate the operation of Vote.org's online proprietary technology, which is critical to the public services it provides.

45.     Access to this Source Code or Legacy Code would provide a competitor organization with the ability to replicate Vote.org's online tools at little to no cost and give them an unfair competitive advantage.  Because Ms. Cleaver had "super administrator" rights to the organization's electronic systems, she had access to everything on BitBucket and GitHub and could restrict access to others.

46.     During her employment with Vote.org, Ms. Cleaver accessed Vote.org's Source Code and Legacy Code.

47.     When Ms. Cleaver left Vote.org, she retained these items or copies of them.

48.    Ms. Cleaver had no permission or authority to take, use or retain this information after her departure from Vote.org.

49.    In addition to the measures described above, the organization takes great care to maintain the confidentiality of its Confidential Information, including its donor information and email lists, including by using passwords to protect computer and network resources on which these lists and files are located, and limiting access to them on a "need to know basis" only to employees subject to strict confidentiality agreements.

50.    Consultants also sign robust confidentiality provisions as part of a consulting contract. Further, the organization's employee manual expressly prohibits employees from "[g]iving confidential or proprietary information to competitors" and "breaking confidentiality of information."

51.    On August 22 and 24, 2019, the organization asked Ms. Cleaver to return all devices, including her laptop and phone, that were bought with organizational funds, in accordance Vote.org policy.

52.    Ms. Cleaver only surrendered the laptop to a third party forensic inspector after weeks of negotiations, and she refused to provide the password to access the laptop—though she has no property right to it or any reasonable expectation of privacy in the information thereon. She also still has not returned her phone.

**D.    Following her Removal, Ms. Cleaver Embarked on a Crusade Against the Organization**

53.    Immediately after her Removal, Ms. Cleaver falsely told donors and third party partners of Vote.org that it would not be able to continue its planned work with them since she had been removed.

54.    Among other things, she told one foundation donor that the organization had no succession plan.

55.    She also told at least one of Vote.org's partners on an existing project that the organization would not be able to continue its work with the partner and that her new organization would be taking it on instead.

56.    Upon information and belief, Ms. Cleaver disparaged the organization in her private communications with existing supporters of Vote.org by planting seeds of doubt as to its future, for

1    example by suggesting that Vote.org did not have a proper succession plan, strong leadership, or

2    forward looking strategy and that all staff were planning to leave the organization.

3        57.    On information and belief, Ms. Cleaver concocted a false narrative that she was

4    improperly removed from her position at Vote.org and encouraged existing donors to seek refunds of

5    previous donations.

6        58.    One donor requested a refund of $10,000, and a second requested a refund of $22,000.

7        59.    Ms. Cleaver sent a message to a large Slack channel that "the vote.org board removed

8    me as president and CEO during a board meeting. … there was disagreement over how much

9    severance to give an employee who voluntarily resigned. *somehow* that led to me being fired."

10   (emph. added).  This comment was intended to improperly convey that the Board's decision to

11   remove her was not justified, thereby leading outside parties to erroneously conclude that the

12   management of Vote.org was not acting properly.

13       60.    Ms. Cleaver has also attempted to sour relations between Vote.org and other non-

14   profit organizations, cooperation with which is crucial to Vote.org realizing its mission.  In December

15   2019, Ms. Cleaver attempted to undermine Vote.org's relationship with one such organization by

16   sending an email to the organization's head stating that her new organization, VoteAmerica

17   "do[esn't] do work with anyone who works with vote.org," and accusing the Board of financial and

18   governance misconduct.  The email stated:

19

20       Also **we don't work with anyone who works with vote.org**. It's
         literally in our contracts and MOUs. **The board committed
21       financial and governance misconduct and then fired me when I
         told them they had to resign**. **They've lost over 5 million dollars
22       in committed money as a result**. Then they told the donors they
         would resign and reneged, thereby ensuring that the 2020 funding is
23       in peril.

         But don't worry: at least they spent months threatening to sue me
24       for me for telling people what happened. Your girl Andrea is the
         reason I have a 47 thousand dollar legal bill, and that's just the cost
25       of defending myself.

26       You can totally work with vote.org, but not with my org as well.
         And I can't make any more intros for you if you do, since my donors
27       won't have anything to do with vote.org. Sage probably wouldn't
         have funded you if he knew you worked with vote.org,  but I won't
28       blow up your spot since the pledge has already been made.

(Emphasis added).

61.     Thereafter, during the spring of 2020, Ms. Cleaver submitted a proposal for a panel at NetRoots Nation, the "largest annual conference for progressives, drawing thousands of attendees from around the country and beyond." (*See* https://www.netrottsnation.org.)  The proposal was posted on NetRoot Nation's website, where it could be viewed by thousands of site visitors, including prospective and confirmed conference attendees, and stated:

> What happened at Vote.org is worse than you think, but Debra Cleaver has been cleared by her attorneys to tell you the tale. It involves **misappropriation of charitable funds, whistleblower activity, wrongful termination, racism, classism, sexism, homophobia**, a voter suppression campaign, the Pete Buttigieg presidential campaign, five different Sillicon Valley billionaires, the Koch Brothers' preferred law firm, an entitled straight white dude, **falsified legal documents, more lawsuits than you can shake a stick at, the California Attorney General, the IRS**, a family of grifters …

Further, Cleaver, indicated attendees would get the following "takeaways" from the panel:

> The hows and whys to prevent this from happening to you, including,
> \*How to run a low-cost and comprehensive background checks
> \*How to write iron-clad legal docs that will **keep billionaires from stealing your organization.**
> \*How to **blow the whistle without sacrificing your career**.
> \*How to protect your financial assets in a lawsuit.
> ….
> \*The red flags you should never, ever ignore.

(Emphasis added).

62.     In response to the prompt to "[d]escribe the skill level of this training and the intended audience," Ms. Cleaver wrote: "[y]ou don't need any particular skills, but you do **need to have a moral compass** and willingness to speak truth to power."  (Emphasis added).

63.     Finally, in response to the question "[w]hy should the Netroots Nation community vote for your session?" Ms. Cleaver wrote:

> **Because what happened at Vote.org was a goddamn mess**, and the only way to make lemonade out of these lemons to teach the larger progressive community how to protect their work from billionaires, corporations, partisan interests, consultants, and terrible actors. Mike Podhorzer described this as the craziest thing he's every heard and Mike helped kicked [*sic*] the mafia out of unions in the 70s.

(Emphasis added).

64.     Ms. Cleaver repeated her false narrative regarding Vote.org in the lead up to the 2020 mid-term elections. In this regard, she circulated communications to unions that were considering donating to Vote.org. In her communications, she falsely described Vote.org's conduct, thereby deterring potential donors.

**E.    Aware of the Wrongful Nature of Her Conduct, Ms. Cleaver Attempted to Cover Her Tracks**

65.     On August 25, 2019, just two days after the organization sent Ms. Cleaver a cease and desist letter, and merely a day after her counsel demanded that "Vote.org and its directors and officers . . . implement a litigation hold and preserve all evidence, . . . that is or may be relevant to the claims and defenses arising out of Ms. Cleaver's employment," Ms. Cleaver took steps to destroy documents potentially relevant to her ongoing dispute with the organization.

66.     Ms. Cleaver invited then-current organization employees to communicate with her on the ephemeral messaging application "Signal," which allows users to set messages to automatically delete themselves after a certain amount of time. (*See* https://signal.org/blog/disappearing-messages/.) The organization immediately demanded that she cease any such spoliation activity and preserve all potentially relevant documents.

67.     On October 23, 2019, Vote.org employees received a message from Trello, a project management application, indicating that Ms. Cleaver had removed them from Vote.org's account on Trello. Vote.org had uploaded files, checklists, and other documents to Trello.

68.     Vote.org owned the Trello account and the items that Vote.org uploaded to the account. Ms. Cleaver had no ownership interest in those items and no permission or authority to access or restrict others' access to them.

# V. CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### Breach of Fiduciary Duty

*(on behalf of Defendant and Cross-Claimant Vote.org)*

69.　Vote.org incorporates by reference each of the allegations in the preceding paragraphs of this Cross-Complaint as though fully set forth herein.

70.　California law defines a fiduciary relationship as "any relation existing between parties to a transaction wherein one of the parties is in duty bound to act with the utmost good faith for the benefit of the other party.  Such a relation ordinarily arises where a confidence is reposed by one person in the integrity of another, and in such a relation the party in whom the confidence is reposed, if he voluntarily accepts or assumes to accept the confidence, can take no advantage from his acts relating to the interest of the other party without the latter's knowledge or consent." (*Cleveland v. Johnson* (2012) 209 Cal.App.4th 1315, 1338.)

71.　Ms. Cleaver served in executive positions—including as CEO, President, and Director—while at Vote.org.  Her positions enabled her to gain access to the highest level of Vote.org's non-public strategic, human resources, and operational documents and information, and other confidential information that other employees did not have.

72.　Ms. Cleaver actively participated in management activities, and thus owed a fiduciary duty to Vote.org.  She intentionally breached this duty by, among other things,

  a.　convincing a donor otherwise willing to donate $4 million to Vote.org without any conditions to instead condition the $4 million donation on Ms. Cleaver remaining CEO.

  b.　secretly hiring her own outside counsel as the organization's counsel to pursue arguments in her personal interest (and squarely against the interests of Vote.org) in her dispute with the Board regarding the severance agreement with a former employee.

       c.  Stopping publication of a Wall Street Journal feature story regarding Vote.org's all-female board because Ms. Cleaver was in a dispute with the board and was planning to demand that all the Board members resign or face a lawsuit.

73. Ms. Cleaver's conduct described above constitutes a breach of the fiduciary duty of undivided loyalty because:

       a.  there existed a fiduciary relationship between Vote.org and Ms. Cleaver;

         Ms. Cleaver willfully and intentionally acted against Vote.org's interests in engaging in the conduct;

       b.  Vote.org did not give informed consent to Ms. Cleaver's conduct;

         Vote.org has been injured in its business or property including, but not limited to, the loss of donations, the diminished value of Vote.org's confidential and proprietary information by virtue of its disclosure to third parties, the concomitant losses of competitive advantage and goodwill, the erosion of a culture of trust, lost employee time due to interference caused by leaks, the payment of unnecessary legal fees due to her hiring of counsel to serve her own personal interests, the costs of resolving the manufactured legal dispute concerning the severance agreement, and the costs of uncovering, investigating, and documenting Ms. Cleaver's improper conduct, all in an amount to be proven at trial; and

       c.  Ms. Cleaver's conduct was a substantial factor in causing this harm.

## SECOND CAUSE OF ACTION

### Conversion

*(on behalf of Defendant and Cross-Claimant Vote.org)*

74. Vote.org incorporates by reference each of the allegations in the preceding paragraphs of this Cross-Complaint as though fully set forth herein.

75. At all relevant times, Vote.org was, and still is, the rightful owner of the files and documents unlawfully accessed, downloaded and/or copied by Ms. Cleaver. Vote.org purchased the laptop and the laptop was used by Ms. Cleaver during her employment at Vote.org for Vote.org business.

76.    While Ms. Cleaver physically returned the laptop to Vote.org, she refuses to provide the password that would allow Vote.org access to all the files on the laptop. As such, Ms. Cleaver has converted the contents of the laptop by denying Vote.org access to those contents, which are the rightful property of Vote.org.

77.    Despite Vote.org's demand to Ms. Cleaver for repossession of the laptop and all of Vote.org's electronic files, Ms. Cleaver failed to return possession of or access to all files to Vote.org.

78.    Accordingly, Ms. Cleaver has converted certain files from Vote.org in the process of accessing, transferring, deleting, copying, and/or downloading (some of which Vote.org no longer has any way of knowing whether it has in its possession as true, correct, and complete versions).

79.    Vote.org is informed and believes that Ms. Cleaver's conversion of the files was willful and malicious, and accordingly Vote.org is entitled to exemplary and punitive damages from Ms. Cleaver in a sum according to proof.

## THIRD CAUSE OF ACTION

## Violation of Comprehensive Computer Data Access and Fraud Act

## (Cal. Penal Code § 502)

*(on behalf of Defendant and Cross-Claimant Vote.org)*

80.    Vote.org incorporates by reference each of the allegations in the preceding paragraphs of this Cross-Complaint as though fully set forth herein.

81.    Upon her removal, Ms. Cleaver lost any right to access, alter, damage, delete, destroy, or otherwise use Vote.org data, computer(s), computer system(s), or computer network(s) as described above, pursuant to Organizational policy governing employee conduct that states "[u]pon termination of employment for any reason, the employee must return all company-issued property."

82.    Ms. Cleaver has violated California Penal Code § 502(c)(1) by knowingly accessing and without permission altering, damaging, deleting, destroying, or otherwise using Vote.org data, computer(s), computer system(s), or computer network(s) as described above, in order to (a) devise or execute a scheme or artifice to defraud or deceive Vote.org, or (b) wrongfully control or obtain money, property, or data from Vote.org.

83. Ms. Cleaver has violated California Penal Code § 502(c)(2) by knowingly accessing and without permission taking, copying, and/or making use of data from a Vote.org computer, computer system, or computer network, and taking and/or copying supporting documentation from Vote.org's computers, computer systems, and/or computer networks as described above including, but not limited to, fundraising files, the master email list and donor lists.

84. As set forth above, Ms. Cleaver has violated California Penal Code § 502(c)(3) by knowingly and without permission accessing and using Vote.org's computer services.

85. As set forth above, Ms. Cleaver has violated California Penal Code § 502(c)(4) by knowingly accessing and without permission altering, damaging, deleting, and/or destroying data which reside or exist internal to a Vote.org computer, computer system, or computer network.

86. As set forth above, Ms. Cleaver has violated California Penal Code § 502(c)(7) by knowingly and without permission accessing, or causing to be accessed, Vote.org's computers, computer systems, and/or computer networks.

87. Vote.org owns certain materials comprised of Vote.org Confidential Information that has been wrongfully obtained by Ms. Cleaver.

88. As a direct and proximate result of Ms. Cleaver's unlawful conduct within the meaning of California Penal Code § 502, Ms. Cleaver has caused damage to Vote.org in an amount to be proven at trial. Vote.org is also entitled to recover its reasonable attorneys' fees pursuant to California Penal Code § 502(e).

89. Vote.org is informed and believes that Ms. Cleaver's acts were willful and malicious; Vote.org is therefore entitled to punitive damages.

## FOURTH CAUSE OF ACTION

### Violation of Computer Fraud and Abuse Act

### (18 U.S.C § 1030)

*(on behalf of Defendant and Cross-Claimant Vote.org)*

90. Vote.org incorporates by reference each of the allegations in the preceding paragraphs of this Cross-Complaint as though fully set forth herein.

91.     Ms. Cleaver violated 18 U.S.C. § 1030(a)(2)(c), by intentionally accessing a computer used for interstate commerce or communication, without authorization or by exceeding authorized access to such a computer, and by obtaining information from such a protected computer.

92.     Ms. Cleaver violated 18 U.S.C. § 1030(a)(4), by knowingly, and with intent to defraud Vote.org, accessing a protected computer, without authorization or by exceeding authorized access to such a computer, and by means of such conduct furthered the intended fraud and obtained one or more things of value, including but not limited to Vote.org's highly confidential, proprietary business information.

93.     Ms. Cleaver violated 18 U.S.C. § 1030(a)(5)(A), by knowingly causing the transmission of a program, information, code, or command and as a result intentionally causing damage without authorization to a protected computer owned by Vote.org.

94.     Ms. Cleaver violated 18 U.S.C. § 1030(a)(5)(B) and (C), by intentionally accessing a protected computer without authorization, causing damage to Vote.org, recklessly or without due regard for its actions.

95.     The computer system that Ms. Cleaver accessed, as described above, constitutes a "protected computer" used for, and in, interstate commerce within the meaning of 18 U.S.C. § 1030(e)(2)(B).

96.     Vote.org has spent in excess of $5,000 to investigate Ms. Cleaver's wrongful acts at the time of filing the Cross-Complaint. This includes, but is not limited to, the cost Vote.org incurred to hire attorneys, investigators, and costs to assess what computer folders and files Ms. Cleaver impermissibly accessed, transferred and/or deleted, and the cost associated with Vote.org's subsequent attempts to recover the impermissibly deleted files and enjoin Ms. Cleaver from further violations. These costs are ongoing and continue to escalate.

97.     Vote.org has suffered damage and loss by reason of these violations, including, without limitation, harm to the Organization's data, programs, and computer systems and other losses and damage in an amount to be proved at trial.

98.     Accordingly, Ms. Cleaver's activities constitute a violation of 18 U.S.C. § 1030(a)(2)(c), (a)(4), (a)(5)(A)-(C) and Plaintiff is entitled to injunctive relief and full compensatory damages under that Act.

## FIFTH CAUSE OF ACTION

### Intentional Misrepresentation

(*on behalf of Defendant and Cross-Claimant Vote.org*)

99.     Vote.org incorporates by reference each of the allegations in the preceding paragraphs of this Cross-Complaint as though fully set forth herein.

100.    Ms. Cleaver represented to Vote.org that the donor of the $4 million gift described above imposed a condition on the gift that Ms. Cleaver remain as CEO of the Organization.

101.    Upon information and belief, Ms. Cleaver represented that this condition was a true requirement to receive the $4 million donation.

102.    Ms. Cleaver's representation was false, because in fact, she is the person who imposed the condition – or, more specifically, she convinced the donor to impose the condition, which the donor would otherwise not have imposed – because the condition served her own self-interest in maintaining her position as CEO of Vote.org.

103.    Ms. Cleaver knew that the representation was false when she made it.

104.    Ms. Cleaver intended that Vote.org rely on the representation.

105.    Vote.org did reasonably rely on Ms. Cleaver's representation—among other things, it considered the condition and permitted Ms. Cleaver to draft the agreement with the self-serving conditional clause, which in turn caused a delay in the donation being made, and the subsequent loss of the donation that it otherwise would have received.

106.    Vote.org was harmed by the loss of the $4 million which Ms. Cleaver claimed as her own personal "seed money" to start a new competing organization, which she did.

107.    Vote.org's reliance on Ms. Cleaver's representation was a substantial factor in causing its harm.

1       **SIXTH CAUSE OF ACTION**

2       **Unjust Enrichment**

3       (*on behalf of Defendant and Cross-Claimant Vote.org*)

4       108.    Vote.org incorporates by reference each of the allegations in the preceding paragraphs

5       of this Cross-Complaint as though fully set forth herein.

6       109.    Ms. Cleaver was enriched by receiving the $4 million donation that was originally

7       intended for Vote.org at the Organization's expense.

8       110.    Ms. Cleaver persuaded the donor to condition the donation on Ms. Cleaver remaining

9       CEO of the organization.

10      111.    Absent Ms. Cleaver persuading the donor to impose this condition, Vote.org would

11      have received the donation.

12      112.    Vote.org did not receive the donation.

13      113.    It would be unjust for Ms. Cleaver to retain this benefit at the expense of Vote.org.

14      **SEVENTH CAUSE OF ACTION**

15      **Tortious Interference with Prospective Economic Relationships**

16      (*on behalf of Defendant and Cross-Claimant Vote.org*)

17      114.    Vote.org incorporates by reference each of the allegations in the preceding paragraphs

18      of this Cross-Complaint as though fully set forth herein.

19      115.    Prior to of Ms. Cleaver's removal from Vote.org, various individuals and entities

20      pledged donations to Vote.org, including donors who had previously donated to the organization,

21      committed to donate $4 million, $10,000, and $22,000, respectively.

22      116.    Ms. Cleaver knew of these donor's commitments and, in an effort to dissuade the

23      donors from paying Vote.org the pledged amounts, falsely informed the donors that, among other

24      things, Vote.org improperly removed Ms. Cleaver from her position and had no succession plan in

25      place.

26      117.    As a result of Ms. Cleaver's false representations, donors withdrew or attempted to

27      withdraw donations they had promised to give the organization.

28

19

118.    Since Ms. Cleaver's removal from Vote.org, she has continued to spread falsehoods regarding Vote.org including, among other things, that it committed misconduct, in an effort to discourage donations to the organization.

119.    Vote.org has lost donations it would have received had it not been for Ms. Cleaver's misrepresentations.

120.    Ms. Cleaver acted solely out of malice, and/or used dishonest, unfair, or improper means by disseminating false and disparaging information about Vote.org.

121.    Vote.org has incurred damages and is entitled to compensatory damages as a result of Ms. Cleaver's tortious interference with Vote.org's prospective economic relationship with various donors.

122.    By virtue of the gross wanton, malicious, and outrageous nature of Ms. Cleaver's conduct, Vote.org is also entitled to punitive damages.

## **EIGHTH CAUSE OF ACTION**

### **Violation of Unfair Competition Law**

### **(Cal. Bus. & Prof. Code § 17200 et seq.)**

(*on behalf of Defendant and Cross-Claimant Vote.org*)

123.    Vote.org incorporates by reference each of the allegations in the preceding paragraphs of this Cross-Complaint as though fully set forth herein.

124.    Ms. Cleaver's conduct described above constitutes unlawful, unfair, or fraudulent business acts or practices in violation of Section 17200 of the California Business and Professions Code.

125.    Ms. Cleaver's conduct is unlawful because it violates at least the Comprehensive Computer Data Access and Fraud Act (Cal. Penal Code § 502) and Computer Fraud and Abuse Act (18 U.S.C. § 1030).  Ms. Cleaver's business practices in unlawfully accessing, transferring, deleting, downloading and/or copying Vote.org's Confidential Information also clearly constitute unfair, fraudulent, and/or deceitful conduct under California's Unfair Competition Law and the U.S. Computer Fraud and Abuse Act—and furthermore, such acts are unethical, oppressive, or

1  unscrupulous, and certainly cause injury to competition and consumers that outweighs any

2  conceivable lawful benefits (of which Vote.org is aware of none).

3      126.    Ms. Cleaver's conduct is further unlawful because it constitutes intentional

4  misrepresentation. Ms. Cleaver's business practices are unethical, oppressive, or unscrupulous, and

5  certainly cause injury to competition and consumers that outweighs any conceivable lawful benefits

6  (of which Vote.org is aware of none).

7      127.    Ms. Cleaver's conduct is further unlawful because it constitutes intentional

8  interference with prospective economic relationships. Ms. Cleaver deprived Vote.org of donations

9  the organization had been promised and future donations from past and prospective donors by

10  making false representations about the organization.

11      128.    Ms. Cleaver's conduct is also patently "unfair" in that she misappropriated protected

12  corporate confidential information from a secure corporate electronic system through unauthorized

13  use of a corporate computer, log-in and system in violation of the letter, spirit, and policies that

14  undergird IP protection and destroy the most basic distinctions between public and private property.

15      129.    By reason of Ms. Cleaver's violations of California's Unfair Competition Law,

16  Vote.org has been injured in its business or property and has lost money or property including by

17  incurring damages for the costs of uncovering, investigating, and documenting Ms. Cleaver's

18  misconduct; the costs of defending against the Complaint and filing this Cross-Complaint; and the

19  loss of donations. Vote.org asserts this claim for unfair competition in its own name only, and does

20  not act for the interest of any other person or entity or for the general public.

21      130.    Vote.org has suffered irreparable injury by reason of the acts, practices, and conduct

22  of Ms. Cleaver as described above, and will continue to suffer such injury unless and until the Court

23  enjoins such acts, practices, and conduct. Vote.org has no adequate remedy at law. Vote.org further

24  requests restitution damages.

25                          **PRAYER FOR RELIEF**

26      WHEREFORE, Vote.org respectfully requests that this Court enter orders (as to sections A

27  and B below) and judgment (as to sections C through I) as follows:

28      A.      For a permanent injunction directing Ms. Cleaver to immediately:

1                      (1) cease further access to, disclosure, use, or destruction of any Vote.org Confidential

2                      Information, to prevent the ongoing misuse of Vote.org's confidential information,

3                      including but not limited to ceasing access to, disclosure, or use of the iPhone she

4                      purchased with Vote.org funds and used for organizational business, and any

5                      electronic or email accounts belonging to Vote.org or personally to Ms. Cleaver that

6                      contain or received Vote.org Confidential Information or emails sent to Vote.org

7                      personnel (including Ms. Cleaver) while Ms. Cleaver was employed by and/or a

8                      Director of Vote.org; and

9                      (2) return any Vote.org physical and Confidential Information in her possession,

10                   purchased with Vote.org funds, and/or containing Vote.org Confidential Information,

11                   including but not limited to her cellular phone, and any storage devices, including

12                   external hard drives and USB flash drives, as well as any Vote.org Confidential

13                   Information housed in cloud drives, and email accounts;

14                   (3) relinquish and transfer ownership and control of access and passwords to the

15                   organization's laptop, software and web services accounts, and electronic documents

16                   and systems to the extent she maintains any such ownership and/or control, as well as

17                   to return organizational assets such as checks, keys, hardware, and the like;

18                   (4) preserve documents and devices that are relevant to the parties' claims or defenses

19                   or likely to lead to the discovery of admissible evidence; and

20                   (5) cease and refrain from further harming, or intending to harm, Vote.org, including,

21                   without limitation, by using or preventing access to Vote.org property and engaging in

22                   unfair competition with Vote.org by using Vote.org's confidential information;

23        B.      For an Order directing Ms. Cleaver to file with the Court and serve on Vote.org within

24        thirty (30) days after the service on Ms. Cleaver of such injunction a report in writing, under

25        oath, setting forth the manner and form in which Ms. Cleaver has complied with the

26        injunction in all respects;

27        C.      For general and compensatory damages according to proof at trial;

28        D.      For punitive and/or exemplary damages;

E.      For disgorgement of all ill-gotten gains Ms. Cleaver has unjustly attained by her illegal acts and of the wages she received during the period of her disloyalty;

F.      For restitution as warranted;

G.      For prejudgment interest;

H.      For an Order awarding Vote.org its attorneys' fees and costs;

I.      For an Order awarding Vote.org such other and further relief as the Court deems just and proper.

DATED: May 9, 2023                          Respectfully submitted,

                                            By: _____
                                            Cheryl D. Orr
                                            William R. Horwitz (*Admitted Pro Hac Vice*)
                                            Kristin M. Halsing
                                            Caroline L. Guensberg

                                            *Attorneys for Defendant and Cross-Claimant*
                                            VOTE.ORG

1

**PROOF OF SERVICE**

2

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

3

I am employed in the County of San Francisco, State of California.  I am over the age of 18 and not a party to the within action.  My business address is Faegre Drinker Biddle & Reath LLP, Four Embarcadero Center, 27th Floor, San Francisco, California  94111.

4

5

On May 9, 2023, I served the foregoing document described as: **CROSS COMPLAINT** on the interested parties in this action as follows:

6

7

**SEE SERVICE LIST**

8

__X__    **By E-MAIL OR ELECTRONIC TRANSMISSION**

9

__X__    (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

10

11

Executed on May 9, 2023**,** at San Francisco, California.

12

13

_____

14

Connie B. Gutierrez

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CROSS-COMPLAINT

**SERVICE LIST**

Philip Andonian, Esq.                    *Attorney for Plaintiff*
CALEBANDONIAN, PLLC
1100 H Street, N.W. Suite 315
Washington, D.C. 20005
Tel.  (202) 953-9850
Fax  (202) 217-4100
E-mail: phil@calebandonian.com

Mark J. Jacobs, Esq.                     *Attorneys for Defendant*
Kelsey Javier, Esq.                      INSPERITY PEO SERVICES
FISHER & PHILLIPS LLP
2050 Main Street, Suite 1000
Irvine, California 92614
Tel.  (949) 851-2424
Fax  (949_ 851-0152
E-mail: mjacobs@fisherphillips.com;
kjavier@fisherphillips.com

David G. Molinari, Esq.                  *Attorneys for Defendan*
FREEMAN MATHIS & GARY, LLP               DRAPER RICHARDS KAPLAN
225 Broadway, Suite 1460                 FOUNDATION
San Diego, CA 92101
Tel: (619) 515-5419
Email: dmolinari@fmglaw.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CROSS-COMPLAINT