**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| VOTE.ORG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:25-cv-01776-SEB-MJD |
| | ) | |
| DEBRA CLEAVER, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S BRIEF SUPPORTING MOTION TO DISMISS UNDER F.R.C.P.
12(b)(2) AND 12(b)(6)**

Defendant, Debra Cleaver, through counsel, submits her Brief supporting her Motion to Dismiss Vote.org's civil action. Cleaver asserts that the Court lacks personal jurisdiction and Vote.org fails to state a claim upon which relief can be granted. Cleaver seeks dismissal under Fed. R. Civ. P. 12(b)(2) and (6) for the reasons set forth herein.

**I. INTRODUCTION**

This case arises from a long-standing dispute between Vote.org and its founder. As the Complaint alleges, the parties previously litigated against one another (in California), and both sides dismissed their claims with prejudice after a walk-away settlement. While Cleaver stopped litigating, this case demonstrates that Vote.org has not followed suit, but instead re-hashes some of the issues previously raised and dismissed (while adding new claims to the mix). Further, this time, Vote.org has filed suit in Indiana despite any Indiana connection to this case. Cleaver is a California resident, and Vote.org is incorporated in California with its principal place of business in Washington, D.C. This Court lacks personal jurisdiction over Cleaver, and the case does not belong in this forum. For this and numerous other reasons detailed below, Vote.org's claims should be dismissed.

## II. FACTUAL BACKGROUND

Defendant Debra Cleaver ("Cleaver") is the founder of Plaintiff nonprofit, Vote.org ("Vote.org"). (Complaint at ¶ 8.) In 2019, Vote.org's Board of Directors voted to remove Cleaver as CEO and terminated her employment with the organization. (Complaint ¶ 9). The Complaint alleges that since then, Cleaver has defamed and disparaged Vote.org and its leadership in an effort to discourage donors and other third parties from continuing to work with Vote.org. (Complaint ¶ 12.) Along with their Defamation claim, Vote.org also brings several other causes of action against Cleaver, including Trademark Infringement, False Association/False Endorsement, Tortious Interference with Contract and with Business Relationships, Unfair Competition, Identity Deception, Theft, Conversion, and Criminal Mischief. (*See* Counts 1 – 10 of Complaint.)

## III. ARGUMENT

### A.  Indiana Lacks Personal Jurisdiction Over Cleaver

This Court lacks personal jurisdiction over Cleaver, a California resident who has not expressly aimed any conduct at Indiana. A motion to dismiss under Rule 12(b)(2) tests whether the court has personal jurisdiction over the defendant. Where the court decides a 12(b)(2) motion without an evidentiary hearing, the plaintiff must make a prima facie case of personal jurisdiction. *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). Indiana's long-arm statute permits courts to exercise personal jurisdiction to the full extent permissible under the Due Process Clause. *See Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 800 (7th Cir. 2014) (quoting *LinkAmerica Corp. v. Cox*, 857 N.E.2d 961, 967 (Ind. 2006)). There are two types of personal jurisdiction: general jurisdiction and specific jurisdiction. Vote.org only alleges this Court has specific jurisdiction over Cleaver.

The Seventh Circuit has enunciated the following components of personal jurisdiction in the context of intentional torts: "(1) intentional conduct (or 'intentional and allegedly tortious' conduct); (2) expressly aimed at the forum state; (3) with the defendant's knowledge that the effects would be felt—that is, the plaintiff would be injured—in the forum state." *Tamburo v. Dworkin*, 601 F.3d 693, 703 (7th Cir. 2010). Express aiming is the "crucial requirement" for establishing personal jurisdiction. *Sheehan v. Breccia Unlimited Co.* (*In re Sheehan*), 48 F.4th 513, 525 (7th Cir. 2022) (quoting *Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Hous. Metroplex, P.A.*, 623 F.3d 440, 445-46 (7th Cir. 2010)). It focuses on "whether the defendant intentionally aimed its conduct at the forum state, rather than on the possibly incidental and constitutionally irrelevant effects of that conduct on the plaintiff." *Mobile Anesthesiologists*, 623 F.3d at 445 n.1. Injury to the plaintiff in the forum state is not enough: "Knowing about a potential for harm in a particular state is not the same as acting in that state—and it takes the latter to permit personal jurisdiction under state law." *Ariel Invs., LLC v. Ariel Cap. Advisors LLC*, 881 F.3d 520, 522 (7th Cir. 2018).

The Complaint's sole paragraph on personal jurisdiction asserts two short, conclusory bases for personal jurisdiction in Indiana. Neither is sufficient. First, the Complaint alleges "As alleged in further detail below, Cleaver made numerous defamatory statements regarding Vote.org and its CEO with the intent of inflicting reputational harm on Vote.org in Indiana and elsewhere." (Complaint ¶ 28.) The Complaint does nothing to explain this allegation further, but rather simply points to the entire rest of the Complaint and its allegations about defamation. But putting aside the Complaint's allegation about an anonymous letter allegedly sent to Indiana, which is the Complaint's second alleged basis for personal jurisdiction, the Complaint does not allege any defamatory statements were purposely sent to Indiana. Instead, the Complaint appears

simply to allege that because Cleaver allegedly made defamatory statements, and because theoretically, someone in Indiana might have heard about them, Vote.org's reputation might have been harmed in Indiana, and personal jurisdiction in Indiana thus exists.

That alleged basis for personal jurisdiction is woefully deficient. For personal jurisdiction to exist, Vote.org would have to allege facts showing Cleaver engaged in intentional conduct, _that was expressly aimed at Indiana_, and with Cleaver's knowledge that Vote.org would be injured in Indiana. The Complaint's allegations, i.e. that Cleaver made defamatory statements, and that third-parties then published those statements in ways that theoretically might have caused Indiana residents to see them, fails to satisfy this standard. (_See_ Complaint ¶¶ 65, 71.)

Further, while the Complaint asserts Cleaver made alleged defamatory statements that were subsequently published in a "national publication," (Complaint ¶ 69-71_; see also Id._ ¶ 65), that allegation is insufficient for several reasons. First, the Complaint does not even allege the publication was viewed by Indiana residents. Second, "'[k]nowing about a potential for harm in a particular state is not the same as acting in that state – and it takes the latter to permit personal jurisdiction[.]' Thus, personal jurisdiction exists only if the defendant has a 'substantial connection' with the forum state that was of his own creation." _Bioconvergence LLC v. Attariwala_, 2020 U.S. Dist. LEXIS 49562, at *15, 2020 WL 1333201 (S.D. Ind. Mar. 23, 2020) (internal citations omitted). Thus, even if a third-party published Cleaver's statements nationally, and even if Indiana residents saw it, that still would not be sufficient, as the publication in Indiana was not an act of Cleaver's. Finally, making a statement with a potential nationwide reach does is not sufficient to establish personal jurisdiction in Indiana. _See Loebe v. Kolfage_, 2015 U.S. Dist. LEXIS 159313, at *4-6 (S.D. Ind. Oct. 27, 2015); _Apex Energy Grp. v. Schweihs_, 2015 U.S. Dist. 127393, at *15, 2015 WL 5613375 (S.D. Ind. Sept. 23, 2015).

The only other basis the Complaint asserts for personal jurisdiction over Cleaver in Indiana is its allegation that "on information and belief, Cleaver also sent an 'anonymous' letter using Vote.org's name and logo to several Indiana residents – a letter that both defamed Vote.org and infringed on its trademarks." (Complaint ¶ 28.) But this allegation is solely made on information and belief, without asserting any basis for that belief, as required. Speculative allegations made on information and belief are not sufficient to demonstrate personal jurisdiction. *See, e.g., Precision Transducer Sys. v. Stfo Trading LLC*, 2009 U.S. Dist. LEXIS 147563, at *11-12 (C.D. Cal. Oct. 15, 2009); *Sahm v. Avco Corp.*, 2023 U.S. Dist. LEXIS 114897, at *10, 2023 WL 4353189 (E.D. Mo. July 5, 2023); *see also Miller v. Nippon Carbon Co.*, 528 F.3d 1087, 1092 (8th Cir. 2008) (conclusory allegations are insufficient to establish personal jurisdiction). Vote.org's bare allegation that Cleaver sent the anonymous letter, without more, cannot be sufficient to establish that Cleaver can be sued in Indiana. For these reasons, Vote.org failed to make a prima facie case for personal jurisdiction over Cleaver.[1]

## B. Vote.org's Trademark Infringement Claim (Count Two) and False

---

[1] For personal jurisdiction to exist, the exercise of jurisdiction also must comport with traditional notions of fair play and substantial justice as required by the Fourteenth Amendment. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Relevant factors include the inconvenience to the defendant, "the forum state's interest in adjudicating the dispute", "the plaintiff's interest in obtaining convenient and effective relief," "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and "the shared interest of the several States in furthering fundamental substantive social policies." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Here, this is not a dispute involving an Indiana resident, or (even ignoring the conclusory nature of the Indiana allegation discussed above) in which the alleged events mainly took place in Indiana. On the contrary, Cleaver is a California Resident, and Vote.org is a resident of California and Washington, D.C. (Complaint ¶¶ 24, 25.) Further, of the numerous alleged acts and alleged defamatory statements, the only alleged connection to Indiana is that the anonymous letter allegedly was sent to, among others, several Indiana residents. This case does not appear to have any other connection to Indiana; the witnesses are not located in Indiana, the acts did not occur in Indiana, and Indiana does not appear to have any significant interest in adjudicating the dispute. Litigating in Indiana also would be inconvenient to Cleaver, who lives far across the country, and adjudicating the case in Indiana would be inefficient given the lack of any real nexus to the state.

**Association/False Endorsement Claim (Count Three) Lack Merit**

Vote.org's claims for Trademark Infringement and False Association/False Endorsement fail as a matter of law for two reasons: 1) the purported violation of the Lanham Act Section 43(a) is based on a noncommercial use, which bars Vote.org's claims; and 2) even if Vote.org's claims were not barred, Vote.org cannot satisfy the likelihood of confusion element as required by the statute.

Vote.org owns common law trademark rights in its tradename "Vote.org." (Complaint at ¶ 32.) 15 U.S.C. § 1125(a), which is the asserted basis for recovery in Counts Two and Three, governs infringement of unregistered marks. *See Two Pesos, Inc v. Taco Cabana, Inc.,* 505 U.S. 763, 768 (1992). The Lanham Act Section 43(a) provides as follows:

> **(1)** Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--
> **(A)** is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person… shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(A).

To prevail on its trademark infringement claim under 15 U.S.C. § 1125(a), Vote.org must establish: 1) that its mark is protectable, and 2) that Cleaver's unauthorized use of the mark was likely to cause confusion among consumers. *CAE, Inc. v. Clean Air Eng'g, Inc.,* 267 F.3d 660, 673-74 (7th Cir. 2001). To violate the Lanham Act, 15 U.S.C. § 1125(a) requires that the alleged infringing use must be "in connection with any goods or services." 15 U.S.C. § 1125(a)(1). Because Vote.org cannot demonstrate that Cleaver used its common law mark "in connection

with any goods or services," Counts Two and Three fail as a matter of law. 15 U.S.C. § 1125(a)(1)(A).

### 1. A Letter Critical of Vote.org's Corporate Spending and Management Is Noncommercial Use and Not Subject to 15 U.S.C. § 1125(a)

To state a claim for violation of the Lanham Act Section 43(a), Vote.org must allege that Cleaver used the Vote.org mark in commerce "in connection with . . . goods or services." 15 U.S.C. § 1125(a)(1)(A). This requirement is commonly referred to as the "commercial use requirement." *Utah Lighthouse Ministry v. Foundation for Apologetic Info. & Research, (FAIR)*, 527 F.3d 1045, 1052 (10th Cir. 2008); *see also Bosley Medical Institute, Inc. v. Kremer*, 403 F.3d 403 F.3d 672, 677 (9th Cir. 2005) (considered whether domain name use was in connection with a sale of goods or services, and if not, then it was noncommercial and not within jurisdiction of the Lanham Act); *Taubman Co. v. Webfeats*, 319 F.3d 770, 774 (6th Cir. 2003) (only consider likelihood of confusion if use is in connection with goods or service.)

Vote.org cannot satisfy the commercial use requirement of Section 43(a) of the Lanham Act. Vote.org's alleged Lanham Act violations are based solely on a letter criticizing Vote.org's CEO, its corporate spending, and mismanagement. (Complaint at ¶¶, 85, 98, Ex. D.) For example, the letter does not suggest an affiliation with Vote.org or any of its purported goods or services but rather states unequivocally it was sent by "concerned former Vote.org supporters who would like to share some information." (Complaint at Ex. D: letter signed as "Former Vote.org Supporters.) The letter then proceeds to question the firing of Cleaver as Vote.org's founder and former CEO and questions the credentials of her replacement. (*Id.*) The remainder of the letter can best be described as a criticism of Vote.org's current CEO, her management and financial decisions. (*Id.*) No reasonable interpretation of the contents of this letter suggest confusion as to the source of goods and services, or endorsement/association by Vote.org. The

Lanham Act's commercial use requirement has never been, and cannot be, interpreted so broadly as to sweep within its scope the fair criticism of Vote.org's CEO as to do so would violate the First Amendment. *See Bosley Medical Institute, Inc. v. Kremer*, 403 F.3d 672, 679 (9th Cir. 2005) (a criticism and opinion about goods or services is not in connection with goods or services under the Lanham Act).

Vote.org concedes the letter is a criticism of its CEO and not about confusion as to the identity of a source of goods or services, false endorsement, or association where it is alleged the letter was intended to "defame[] Vote.org." (Complaint at ¶ 28; Ex. D.)[2] The Complaint allegations and the contents of the letter do not state a use in connection with goods and/or services. The failure to allege a commercial use within the meaning of 15 U.S.C. § 1125(a) is fatal to Counts Two and Three and these counts should be dismissed.

## 2. Vote'org's Complaint Fails to Satisfy the Likelihood of Confusion Element

Even if Vote.org had alleged a commercial use, it cannot survive the likelihood of confusion analysis. The Seventh Circuit's equitable balancing test for determining likelihood of confusion includes the following factors:

> (1)    similarity between the marks in appearance and suggestion; (2) similarity of the products; (3) the area and manner of concurrent use; (4) the degree of care likely to be exercised by consumers; (5) the strength of the plaintiff's mark; (6) whether actual confusion exists; and (7) whether the defendant intended to "palm off" his product as that of the plaintiff.

*CAE, Inc. v. Clean Air Eng'g, Inc.,* 267 F.3d 660, 677-78 (7th Cir. 2001) (citing *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 897-98 (7th Cir. 2001)). "Even though no one factor is decisive, the

---

[2] Vote.org alleged the letter "falsely attacked Vote.org's CEO's professional history and work experience, disparaging her both personally and professionally with an intent to damage Vote.org by discrediting its CEO, falsely stated that Vote.org was 'currently being investigated by the IRS for misappropriating funds,' and falsely stated Vote.org was 'involved in litigation with a former employee.[']" (Complaint at ¶ 64.)

similarity of the marks, the intent of the defendant, and evidence of actual confusion are the 'most important factors' in a likelihood of confusion case." *Id.* To state a claim for false endorsement under the Lanham Act, a plaintiff must show that the terms a defendant used and the representations the defendant made likely caused consumers to believe that plaintiff endorsed defendant's products. *See* 15 U.S.C. § 1125(a)(1)(A); *Jordan v. Jewel Food Stores, Inc.,* 743 F.3d 509, 522 (7th Cir. 2014)). The inquiry focuses on confusion by the customer. *See Bd. of Regents of Univ. of Wis. Sys. v. Phoenix Int'l Software, Inc.,* 653 F.3d 448, 455 (7th Cir. 2011).

Here, it defies logic and all plausibility that an ordinary consumer would read the letter attached to Vote.org's Complaint as Ex. D and be confused as to the source or believe that Vote.org endorsed or was associated with a letter detailing mismanagement and corporate waste by Vote.org's own CEO. Simply put, Vote.org has not alleged, nor can it, that the letter in Ex. D has any nexus whatsoever to any goods and/or services of Vote.org so as to confuse an ordinary consumer as to source, association, or endorsement.

Of the seven factors applied by the 7th Circuit under its likelihood of confusion analysis, only factor 6, whether actual confusion exists, is applicable. Vote.org has not alleged, nor can it, that actual confusion exists as to the source of any goods and/or services, or that consumers believed Vote.org endorsed or was associated with the letter sent by former Vote.org supporters. Accordingly, Counts Two and Three fail as a matter of law and must be dismissed.

### C.  Vote.org's State Law Claims Fail

Vote.org asserts multiple counts against Cleaver under Indiana law. Vote.org asserts factual allegations purportedly supporting these Counts in numbered paragraphs 1 through 74 of its Complaint. *See,* Complaint at ¶ 75 (restating and incorporating by reference into Count 1 the allegations in numbered ¶¶ 1 - 74; *see also,* Id. ¶ 106 (Count 4), ¶ 114 (Count 5), ¶ 121 (Count 6), ¶ 135 (Count 7), ¶ 149 (Count 8), ¶ 162 (Count 9), and ¶ 175 (Count 10).

Vote.org's claims in Counts 1 and 4 through 10 based upon these factual allegations fail because (1) the claims are based on alleged conduct pre-dating the applicable statute of limitations, (2) the claims are based on alleged conduct finally disposed of in a prior lawsuit between the parties, and (3) Vote.org fails to state a claim on which relief can be granted.

**1.  Certain of Vote.org's factual allegations pre-date September 8, 2023, the date the statute of limitations expired for these claims.**

Any claim Vote.org asserts in Counts 1 and 4 through 10 that are based on statements and conduct pre-dating September 8, 2023 are barred by the applicable two-year statutes of limitations.[3] Thus, for example, any claims based on the allegations in paragraphs 44-55 of the Complaint must be dismissed as time-barred.

**2.  Certain of Vote.org's claims have been finally disposed of in a prior lawsuit between Vote.org and Cleaver.**

Dismissal with prejudice in Case No. 22CV016466 bars Vote.Org from bringing another lawsuit against Cleaver based on the same facts alleged in their previous Cross-Complaint. (*See* Defendant's Motion for Judicial Notice of Vote.org Cross-Complaint (filed contemporaneously), Exhibit A, "MJN Cross-Complaint") (*See* Defendant's Motion for Judicial Notice of Request for Dismissal, Exhibit B, "MJN Dismissal".) To the extent Vote.org's causes of actions rely on the same allegations as alleged in the previous Cross-Complaint, they are barred by *res judicata*, specifically issue preclusion. Because the previous litigation between Vote.org and Cleaver occurred in the Superior Court of Alameda County of California (*Id.*), California law pertaining

---

[3] Indiana's applicable statutes of limitations are as follows: defamation, two years, *Hall v. Shaw*, 147 N.E.3d 394, 401 (Ind. Ct. App. 2020); tortious interference with contract, two years, *Graves v. Kovacs*, 990 N.E.2d 972, 978 (Ind. Ct. App. 2013) (citing *C&E Corp. v. Ramco Indus., Inc.*, 717 N.E.2d 642, 644 (Ind. Ct. App. 1999); tortious interference with business relationships, two years, V*ician v. Bingham Greenebaum & Doll*, 219 N.E.3d 121 (Ind. Ct. App. 2023); unfair competition, two years, Indiana Code § 34-11-2-4; and claims under Indiana's Crime Victims Relief Act, two years, *Robertson v. State*, 141 N.E.3d 1224, 1229 (Ind. 2020).

324728462v.1

to *res judicata*/collateral estoppel applies. *Bonnstetter v. City of Chi*. (7th Cir. 2016) 811 F. 3d 969) (where the previous lawsuit occurred in Illinois state court, the Court here applied Illinois law pertaining to *res judicata*.)

Issue preclusion bars re-litigation of issues that were already decided in a prior case involving the same parties or their privies. *Boeken v. Philip Morris USA, Inc*. (2010) 48 Cal.4th 788, 797. The doctrine applies when: (1) the same issue was raised and decided in a prior proceeding; (2) that proceeding resulted in a final judgment on the merits; and (3) the party against whom it is asserted was a party (or in privity) in the prior action. (*Id*.) Here, issue preclusion applies because Vote.org repeats the same factual allegations previously litigated.

Prongs two and three are immediately met. As to prong two, a dismissal with prejudice is a final judgment on the merits for purposes of both claim and issue preclusion. *Boeken*, 48 Cal.4th 788, 793. Vote.org requested, and the court entered, a dismissal of prejudice of its prior Cross-Complaint on May 23, 2024. (*See* MJN Dismissal, Ex. B.) As to prong three, the parties in the two lawsuits remain the same: Debra Cleaver and Vote.org. (*See* MJN Cross-Complaint, Ex. A; *See* Complaint.)

As for the first prong, the "identical issue" requirement addresses whether 'identical factual allegations' are at stake in the two proceedings. *Hernandez v. City of Pomona* (2009) 46 Cal.4th 501, 512) (citing *Lucido v. Superior Court* (1990) 51 Cal.3d 335, 342.) That requirement also is plainly met here. Vote.org's prior Cross-Complaint alleged nearly the same facts now repeated in this action to support its claims for Defamation and Tortious Interference. (*See* Count 1, 4, and 5 of the Complaint.)

To illustrate, both Pleadings allege that Cleaver:

a.  Spread a false narrative about Vote.org leading up to the 2020 mid-term elections. (Cross-Complaint at ¶ 64) (Complaint at ¶ 55.)

b. Promoted the false narrative to donors and partners of the organization that she was improperly terminated. (Cross-Complaint at ¶ 57) (Complaint at ¶ 50(c).)

c. Suggested to existing supporters that Vote.org did not have a succession plan or forward-looking strategy and that all of its staff were planning to leave the organization. (Cross-Complaint at ¶¶ 54, 56.) (Complaint at ¶ 50(b).)

d. Falsely accused Vote.org of financial and governance misconduct. (Cross-Complaint at ¶ 60) (Complaint at ¶ 77.)

e. Tried to "sour relations" between Vote.org and other third parties, "whose cooperation and relationships are crucial to Vote.org realizing its mission." (Cross-Complaint at ¶ 60) (Complaint at ¶ 51(c).)

f. Told donors and partners of Vote.org that it could not continue its work after her removal. (Cross-Complaint at ¶ 53) (Complaint at ¶ 50(c).)

g. Acted solely out of malice and used dishonest, unfair, or improper means by disseminating false and disparaging information about Vote.org. (Cross-Complaint at ¶ 120.) (See Complaint, Count One for Defamation.)

h. Overall, made disparaging and defamatory statements about Vote.org to third parties, including donors, partners. (See Cross-Complaint at ¶ 5) (See Complaint at ¶ 50.)

Because the above allegations essentially nearly identical, final judgment was entered, and the parties remain the same, Vote.org is barred from re-litigating any causes of action based on factual allegations previously raised, including Count 1, 4, and 5 of the Complaint.

### 3. Vote.org's allegations, even if taken as true, fail to support the claims it asserts in Counts 1 and 4 through 10.

#### i. Count 1 - Defamation

Vote.org that stories about it have been published in the national press. (Complaint at ¶ 15.) Vote.org alleges that Cleaver has "made numerous defamatory statements regarding Vote.org," (Complaint at ¶ 76), and that "[t]hese statements constitute defamation *per se* because they impute misconduct by Vote.org with respect to its work as a voting registration and get-out-the vote organization," (Complaint at ¶ 77), or, alternatively "the statements constitute defamation *per quod*," (Complaint at ¶ 77]).

324728462v.1

As framed by Vote.org's Complaint, to state a claim for defamation under Indiana law, Vote.org must allege, among other things, that Cleaver made (1) a communication, (2) about Vote.org with respect to its work as a voting registration and get-out-the vote organization, and (3) the communication imputed to Vote.org misconduct such that it would lower Vote.org's reputation in the community or would discourage others from dealing or associating with Vote.org. *Kelley v. Tanoos*, 865 N.E.2d 593, 596 (Ind. 2007). Importantly, a statement that is not based on readily verifiable facts is not defamatory; instead, it is non-actionable opinion. *Sasser v. State Farms Ins. Co.*, 172 N.E.3d 313, 321-22 (Ind. Ct. App. 2021). Vote.org makes factual allegations that Cleaver defamed it in 25 of the Complaint's paragraphs: 12 - 16, 44, 47 - 55, and 61 - 71.

> 1. *Vote.org makes conclusory allegations that need not be taken as true.*

A court considering a motion to dismiss under Fed. R. Civ. Proc. 12(b)(6) must "take all the factual allegations in the complaint as true," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), but it need not accept the truth of legal conclusions - "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," (Id.) "To survive a motion for judgment on the pleadings, 'a complaint must state a claim to relief that is plausible on its face. . . .' At minimum, a plaintiff is required to support its complaint with some specific facts." *BMO Harris Bank N.A. v. Salin Bank & Trust Co.*, 442 F. Supp. 3d 1075, 1078 (S.D. Ind. 2020).

Of the paragraphs in which Vote.org alleges that Cleaver defamed it, it articulates the allegations as conclusory recitals in nearly half of these paragraphs: 12 -15, 44, 49, 53, - 55, 63, 66, and 69. Under the applicable federal pleading standards, these factual allegations need not be considered true. Because these allegations identify no purportedly specific defamatory communication, they are deficient for pleading a defamation claim and should be disregarded.

> 2. *Vote.org fails to allege the content of the allegedly defamatory*

*communications.*

Central to a defamation claim is the allegedly defamatory communication. Without such communication, there can be no defamation. And, the content of the communication is central to the defamation claim. Without knowing the content of the communication, there can be no way to know whether it can be considered defamatory, whether *per se* or *per quod. Dugan v. Mittal Steel USA Inc.*, 929 N.E.2d 184, 186 (Ind. 2010) (discussing necessity of differentiating among defamation types based on the actual language of the statement); *Britt Interactive LLC v. A3 Media LLC*, 2017 U.S. Dist. LEXIS 73945, at *15-16 (S.D. Ind. May 16, 2017) (a plaintiff must set out the allegedly defamatory statements in the complaint). And, again, "a plaintiff is required to support its complaint with some specific facts." *BMO Harris Bank*, 442 F. Supp. 3d, at 1078. In a defamation claim, the specific facts that must be alleged include the actual content of the allegedly defamatory communication.

Vote.org alleges that Cleaver made statements imputing Vote.org's misconduct with respect to its work as a voting registration and get-out-the vote organization. (Complaint at ¶ 11.) But in numerous instances, Vote.org fails to state the content of the purportedly defamatory communication itself. Instead, Vote.org either makes a mere general conclusory allegation that a defamatory communication was made, or it alleges *characterizations* of the communication it alleges was made, without alleging the actual content of the communication itself. Vote.org does this in eighteen of the twenty-five factual allegation paragraphs that state anything about allegedly defamatory conduct: 12 - 16, 44, 49, 53 - 55, 61 - 63, 66, 67, and 69 - 71.

Several examples from these paragraphs expose the deficiency of these allegations. In paragraphs 15 and 66, Vote.org alleges Cleaver contacted one or more national news organizations to pitch what Vote.org characterizes as a "hit piece," but Vote.org fails to allege the content of these communications, describe how they can be considered "hit pieces," or even

14

define what a "hit piece" is. (Complaint at ¶¶ 15 and 66.) In paragraphs 16 and 67, Vote.org alleges that Cleaver used an email message to impersonate Vote.org and its CEO, while "disparag[ing]" Vote.org, but fails to allege anything about the content of the email or how it defamed Vote.org. (Complaint at ¶ 16.) In paragraph 53, Vote.org alleges that Cleaver submitted a formal complaint to the IRS and characterizes the complaint as alleging "conduct that [Vote.org's CEO and her husband] did not engage in," without stating what Cleaver reported that conduct to be.[4] (Complaint at ¶ 53.) In paragraph 54, Vote.org alleges that Cleaver submitted a proposal to a conference panel that included claims Vote.org characterizes as "derogatory and false," without stating the content of the claims. (Complaint at ¶ 54.) In paragraph 62, Vote.org alleges Cleaver made what it characterizes as "false allegations of intimidation, harassment, personal or political attacks, and personal insults" in a complaint she allegedly made to a Vote.org Partner Organization, without stating the actual content. (Complaint at ¶ 62.)

Vote.org's *mere assertions* that it was defamed and its *characterization* of communications as defamatory without alleging the actual content of these communications are insufficient to state a claim for defamation. Vote.org fails to state the operative facts required to invoke a defamation claim under *Dugan* and fails to meet the federal pleading requirement that it plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

> 3. *The alleged statements cannot reasonably be construed to impute misconduct by Vote.org with respect to its work as a voting registration and get-out-the vote organization.*

---

[4] As for the allegedly defamatory statements in paragraph 53, Vote.org lacks standing to sue Cleaver based on such statements. The Complaint alleges the statements were made to the IRS about Vote.org's CEO and her husband, not about Vote.org itself. Vote.org lacks standing to sue Cleaver for statements made about Vote.org employees in their personal affairs.

324728462v.1

After dispensing with the Vote.org factual allegations that are conclusory, the only remaining factual allegations relevant to Vote.org's Count 1 defamation claim are found in paragraphs 50, 64, 65, and 68.[5] These are the only paragraphs that even arguably contain factual allegations regarding allegedly defamatory statements. But these paragraphs themselves suffer multiple deficiencies rendering them fatal to Vote.org's claim for defamation under Indiana law.

In all defamation cases, the trial court must decide initially if a statement is defamatory. *Rambo v. Cohen*, 587 N.E.2d 140, 145 (Ind. Ct. App. 1992) ("Initially, the determination of whether a communication is defamatory is a question of law for the court."). This Court should dismiss Vote.org's defamation claim because the communications are not defamatory.

Vote.org presents the operative allegations of paragraph 50 in three sub-paragraphs. In paragraph 50.a, Vote.org alleges that "Cleaver told donors and third-party partners of the organization that Vote.org would not be able to continue its planned work with them since Cleaver had been removed [from Vote.org's leadership]." (Complaint at ¶ 50.a.) In paragraph 50.b, Vote.org alleges that Cleaver "plant[ed] seeds of doubt" about Vote.org's future, by suggesting Vote.org did not have a succession plan or forward-looking strategy, and by stating that Vote.org's staff were planning to leave the organization. (Complaint at ¶ 50.b.) In paragraph 50.c, Vote.org alleges that Cleaver "promoted the false narrative that she was improperly removed from her position at Vote.org and wrongfully terminated." (Complaint at ¶ 50.c.)

Even assuming the paragraph 50.a statement is about Vote.org, rather than being about Cleaver's importance to the organization, the statement cannot reasonably be considered defamatory. The paragraph 50.a statement and those in paragraphs 50.b and 50.c neither "impute

---

[5] Vote.org makes allegations suggesting defamatory conduct in paragraph 76, but these are summary restatements of factual allegations made in paragraphs 1 - 74.

misconduct by Vote.org with respect to its work as a voting registration and get-out-the vote organization," nor do they allege any extrinsic circumstances within which "the statements constitute defamation *per quod*," as Vote.org frames its Count 1 claim in paragraph 77. Moreover, these statements are properly considered Cleaver's statements of opinion, which are not defamatory as a matter of law. *Meyer v. Beta Tau House Corp.*, 31 N.E.3d 501, 515 (Ind. Ct. App. 2015) ("For a statement to be actionable, it must be clear that it contains objectively verifiable fact regarding the plaintiff. . . . If the speaker is merely expressing his subjective view, interpretation, or theory, then the statement is not actionable.")

Vote.org alleges in paragraph 64 that Cleaver "sent, or caused to be sent, an 'anonymous letter'." (Complaint at ¶ 64.) The Complaint makes this allegation "on information and belief." (Id.) While pleading "on information and belief" is permitted, the allegation must be accompanied by "sufficient factual detail to support the inference of plausibility." *BMO Harris Bank N.A. v. Salin Bank & Trust Co.*, 442 F. Supp. 3d 1075, 1083 (S.D. Ind. 2020) (citing *Green v. Beth*, 663 Fed. Appx. 471, 474 (7th Cir. 2016) and *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 917, 2013 WL 2992163 (7th Cir. 2013).

Vote.org alleges no factual detail to support its allegation that Cleaver sent the anonymous letter or caused it to be sent. Vote.org does not allege that the letter bore a return address or any other transmittal information indicating Cleaver sent it or cause it to be sent. Vote.org does not allege that the letter bears any hallmarks of Cleaver's communications, or that the letter contains information that Cleaver uniquely knew. Indeed, the letter itself conveys information that appears to have been predominantly gathered from public sources: it references information about or from lawsuits, state charity registrations, a Daily Mail story, a Chronicle of Philanthropy story, an internet posting purportedly made by Vote.org on its own website, and

information about Vote.org's CEO that would be available in Internal Revenue Code information returns filed by Vote.org (which Vote.org is legally required to provide to any person requesting the same). (Complaint at Ex. D.)

Finally, the letter itself states that it is from "a group of concerned former Vote.org supporters." (Id.) Vote.org alleges that it "has registered millions of voters," (Complaint at ¶ 3), "has made over 87 million voter outreach touchpoints," and "powered over 40 million visits to its website," (Complaint at ¶ 4.) Any of those millions of voters, touchpoints, and visitors could have sent the letter or caused it to be sent. Yet, Vote.org asserts "on information and belief" that Cleaver is responsible. Vote.org fails to plead sufficient detail to support that inference. The letter should be disregarded.

In paragraph 65, Vote.org alleges that in July 2024 Cleaver made statements while appearing on a podcast including "that she had been wrongfully terminated, that Vote.org had continued to threaten her with litigation, and that Vote.org told her its plan was to bankrupt her and ruin her life." Vote.org's own allegations establish the truth of Cleaver's statement that it had terminated her employment. (Complaint at ¶ 43.) Cleaver's assertion that her termination was wrongful is Cleaver's opinion as to the nature of the termination and is not defamatory. *Meyer v. Beta Tau House Corp.*, 31 N.E.3d 501, 515 (Ind. Ct. App. 2015). Cleaver's statement about Vote.org's continued threats of litigation also, ironically, appears true given the current civil action. But even absent this civil action, this statement, as well as her statement about Vote.org's plan for her, does not impute misconduct by Vote.org with respect to its work as a

voting registration and get-out-the vote organization. Further, Vote.org fails to allege any extrinsic circumstances within which the statements constitute defamation *per quod*.[6]

In paragraph 68, Vote.org alleges that Cleaver "submitted false and defamatory complaints about Vote.org and its CEO to at least four office of State Attorneys General," and that "[u]pon information and belief a similar complaint was sent to the IRS in the same timeframe." (Complaint at ¶ 68.) Vote.org alleges that these complaints contained false statements and were defamatory under Indiana law. (Complaint at ¶ 76.)

But even if the complaints to the Attorneys General and IRS were not absolutely privileged (and they are, as discussed *infra*), the allegations fail, for multiple reasons. First, yet again, this paragraph provides its own characterizations of the allegedly defamatory statements rather than providing the actual content of the statements themselves. As previously explained, a characterization cannot stand in the place of the actual statements, because the contents of the statements themselves are necessary to state a claim for defamation. Beyond this defect, the statements that Vote.org alleges are defamatory are either true or statements of opinion. In either case, they are not defamatory.

Vote.org asserts that Cleaver "maliciously accused the organization of fraud because" it failed to meet an ambitious voter registration goal in 2024." (Complaint at ¶ 68.a.) Vote.org does not allege that it met its 2024 voter registration goal – on the contrary, Vote.org expressly admits its stated "goal" was to register 8 million voters, (Complaint at ¶ 76.e), but that Vote.org actually

---

[6] Paragraph 65 also is inadequate because it fails to set forth all of the defamatory statements Cleaver allegedly made. Instead, this paragraph alleges the defamation "include[es] but [is] not limited to" the statements set forth. In other words, paragraph 65 claims there are other allegedly defamatory statements that are not specifically alleged as required. *See Britt Interactive LLC v. A3 Media LLC*, 2017 U.S. Dist. LEXIS 73945, at *15-16 (S.D. Ind. May 16, 2017).

only registered 2.2 million (Complaint at ¶ 68.a), far below its target. Thus, Cleaver's statement that Vote.org failed to meet its goal is true, and not defamatory. (*See id.*)

Instead, Vote.org claims the defamatory statement was Cleaver's stated belief that fraud occurred – that Vote.org knew it would not meet goal of 8 million voter registrations, but raised donor funds based on that goal anyway. (Complaint ¶ 68.a.) But Cleaver's perception of Vote.org's intent is her subjective opinion; whether Vote.org had a fraudulent intent is not a readily verifiable fact, and thus Cleaver's statement is a non-actionable opinion. *See Sasser v. State Farms Ins. Co.*, 172 N.E.3d 313, 321-22 (Ind. Ct. App. 2021); *see Sandmann v. N.Y. Times Co.*, 78 F.4th 319, 331-32 (6th Cir. 2023) (statement reflecting speaker's perception of plaintiff's intent was non-actionable opinion); *Jankowicz v. Fox News Network, LLC*, 2024 U.S. Dist. LEXIS 129423, *10-15 (D. Del. July 22, 2024) (statements regarding intent were opinion).

Vote.org alleges that Cleaver falsely accused Vote.org of private inurement by alleging in her complaints that the organization was allocating substantial resources to executive benefits and amenities unrelated to its charitable purpose. (Complaint at ¶ 68.b.) Vote.org explains that "[t]he travel data that Cleaver references includes travel for all Vote.org employees (not only for its CEO) and reflects legitimate expenses related to fundraising for the nonprofit and other work which furthers the charitable mission." (Complaint at ¶ 68.b.) But whether these expenses "legitimately" and sufficiently advance Vote.org's purpose, or not, is a matter of subjective opinion. Thus, the statement is not defamatory. *Meyer v. Beta Tau House Corp.*, 31 N.E.3d 501, 515 (Ind. Ct. App. 2015).

Vote.org alleges that Cleaver falsely attacked its CEO's professional resume – but this is deficient because, again, it fails to state the content of the communication constituting the alleged attack. (Complaint at ¶ 68c.) The same paragraph also alleges Cleaver accused Vote.org of

20

paying "excessive" compensation to its CEO, then explains that its CEO's annual salary is within the range of objectively reasonable compensation for comparable nonprofits and is an "appropriate" salary. (Complaint at ¶ 68.c.) But a statement that something is "excessive" is non-actionable opinion, because "excessive" is a subjective term of degree and approximation. *See Phoenix Trading, Inc. v. Loops LLC*, 732 F.3d 936, 945 (9th Cir. 2013). The statement is not defamatory. *Meyer v. Beta Tau House Corp.*, 31 N.E.3d 501, 515 (Ind. Ct. App. 2015).

Finally, Vote.org alleges that Cleaver falsely stated that a lawsuit against Vote.org was pending. (Complaint at ¶ 68.d.) Vote.org acknowledges there had been such a lawsuit but simply claims the suit had been dismissed at the time of Cleaver's statement. (Complaint ¶ 68.d.) This statement neither "impute[s] misconduct by Vote.org with respect to its work as a voting registration and get-out-the vote organization," nor does it allege any extrinsic circumstances within which "the statements constitute defamation *per quod*," as Vote.org frames its Count 1 claim in paragraph 77. The statement simply is not defamatory.

Vote.org makes conclusory allegations about defamation that need not be taken as true. Vote.org fails to allege the content of the allegedly defamatory communications, rendering the allegations defective. The communications that are alleged with a degree of specificity cannot reasonably be construed to impute misconduct by Vote.org with respect to its work as a voting registration and get-out-the vote organization. Vote.org's allegations fail to state a claim.

Vote.org's defamation claim also fails to the extent it relies on Cleaver's complaints to various Attorneys General and the IRS because these communications are protected by Indiana's absolute privilege for statements made in judicial or quasi-judicial proceedings. Indiana law "has long recognized an absolute privilege that protects all relevant statements made in the course of a judicial proceeding," regardless of truth or motive, in order to prevent chilling legitimate

21

complaints. *Abbott v. Individual Support Home Health Agency, Inc*., 148 N.E.3d 1091, 1093–94 (Ind. Ct. App. 2020) (citing *Hartman v. Keri,* 883 N.E.2d 774, 777 (Ind. 2008)). This privilege extends to quasi-judicial administrative proceedings, including complaints to state licensing boards, consumer-protection bodies, a university's affirmative action office, regulatory agencies, and the Attorney General's office. *Hall v. Shaw,* 147 N.E.3d 394, 400–01 (Ind. Ct. App. 2020); *Abbott*, 148 N.E.3d at 1094–97. Courts have emphasized that denying absolute privilege for such complaints would deter legitimate reports of misconduct. *See Abbott*, 148 N.E.3d at 1095–97. Federal courts likewise have held that reports to regulatory agencies, such as the Indiana State Department of Health, are absolutely privileged. *Doswell v. Trace*, 2016 WL 3685119, at *13 (N.D. Ind. 2016). Further, the Court in *Hall* ruled that defendant's consumer complaint to the Attorney General's office cannot be the basis of a defamation claim because it is protected by absolute privilege, avoiding the chilling effect that retaliatory defamation claims could have. *Hall,* 147 N.E. 3d 394, 401. Cleaver's complaints to multiple Attorneys General fall squarely within this protected category. Her complaint to the IRS also is absolutely privileged. *Abrahams v. Young & Rubicam*, 79 F.3d 234, 240 (2d Cir. 1996) (statements made to the IRS are privileged communications to authorities made "in the course of judicial proceedings"). The Court should dismiss Vote.org's defamation claim to the extent it is based on Cleaver's complaints to Attorneys General and the IRS.

### ii.  Counts 4-6

Vote.org contends that Cleaver committed the intentional torts of tortious interference with contract (Count 4), tortious interference with business relationships (Count 5), and unfair competition (Count 6). The fact allegations underlying these claims, even if accepted as true, fail to satisfy the requisite elements. As a result, these counts must be dismissed.

*1.  Count 4 (Tortious Interference With Contract) and Count 5 (Tortious*

*Interference With Business Relationships) Fail to Allege a Plausible and Sufficient Basis for Relief.*

Under Indiana law, to state a claim for tortious interference with contract, a plaintiff must allege: (1) the existence of a valid and enforceable contract; (2) the defendant's knowledge of the existence of the contract; (3) the defendant's intentional inducement of breach of the contract; (4) the absence of justification; and, (5) damages resulting from the defendant's wrongful inducement of the breach. *Murat Temple Ass'n v. Live Nation Worldwide, Inc.*, 953 N.E.2d 1125, 1132 (Ind. Ct. App. 2011). The elements for tortious interference with a business relationship are similar: (1) the existence of a valid relationship; (2) the defendant's knowledge of the existence of the relationship; (3) the defendant's intentional interference with that relationship; (4) the absence of justification; and, (5) damages resulting from the defendant's wrongful interference with the relationship. *McCollough v. Noblesville Sch.*, 63 N.E.3d 334, 344 (Ind. Ct. App. 2016).

Here, the allegations purportedly forming the basis for tortious interference with contract are presumably set forth in Vote.org's Complaint at paragraphs 110 and 111. Vote.org alleges that Cleaver "attempted to induce the Partner Organization to breach its contractual relationship with Vote.org by making a false and defamatory allegation that Vote.org has violated the partner organization's Code of Conduct," and "most recently, Cleaver, on information and belief, attempted to interfere with Vote.org's employee relationships by impersonating Vote.org in an attempt to convince an employee not to work for Vote.org." (Id.) With respect to the allegations purportedly forming the basis for tortious interference with business relationship, at Complaint paragraph 117, the Vote.org contends that "Cleaver intentionally interfered with Vote.org's economic relationships with actual and potential donors by making false and defamatory statements regarding Vote.org," and that "Cleaver's conduct was intentionally designed to disrupt Vote.org's business relationships with actual and potential donors."

23

To the extent Vote.org relies on Cleaver's allegedly defamatory conduct as the factual predicate for her alleged interference with Vote.org's contracts or business relationships, Cleaver incorporates by reference her arguments against Vote.org's Count 1 defamation claim. Because Vote.org's allegations about Cleaver's defamatory conduct are insufficient to state a claim, the factual predicates Vote.org relies upon for its Counts 4 and 5 tortious interference claims fail. Counts 4 and 5 must therefore fail as well. But disregarding the failure of the factual predicate, Vote.org's allegations fail because they allege, at most, *attempted* tortious interference.

Vote.org fails to allege that tortious interference actually occurred and in fact indicates it did not occur. Specifically, Vote.org alleges that "Cleaver made the false and defamatory complaint in an *attempt* to discredit Vote.org and harm, or *potentially end*, its relationship with the Partner Organization." (Complaint at ¶ 63) (emphasis added). Indeed, Vote.org's Complaint paragraphs 110 and 111 make explicit that Vote.org is alleging attempted tortious interference – the paragraphs explicitly allege that Cleaver "attempted" to interfere.

These allegations, even if taken as true, do not allege actual interference with Vote.org's contracts or business relationships. Under Indiana law, Vote.org must allege an actual interference; Indiana does not recognize a civil tort for *attempted* tortious interference to a contract or business relationship. *See, Winkler v. V.G. Reed & Sons*, 638 N.E.2d 1228, 1235 (Ind. 1994) (affirming dismissal of tortious interference claim because mere attempts at inducement, even if improper, are insufficient to state a claim, since no contractual harm has been realized). Accordingly, Vote.org's Counts 4 and 5 claims fail as a matter of law and must be dismissed.

> 2. *Count 6 (Unfair Competition) Fails to Allege a Plausible and Sufficient Basis for Relief.*

Federal courts have interpreted Indiana's law on unfair competition as an attempt to create confusion as to the source of the unfair competitor's goods. *Westward Coach*

*Manufacturing Co. v. Ford Motor* Co., 388 F.2d 627, 633 (7th Cir. 1968), *cert. denied*, 392 U.S. 927; *Terry v. International Dairy Queen, Inc.*, 554 F. Supp. 1088, 1098 (N.D. Ind. 1983). In alleging unfair competition, the plaintiff is not required to show actual deception, but only that deception is the natural and probable consequence of the tortfeasor's actions. *Hammons Mobile Homes, Inc. v. Laser Mobile Home Transport, Inc.*, 501 N.E.2d 458, 461 (Ind. Ct. App. 1986).

To support its Count 6 (unfair competition) claim, Vote.org contends Cleaver used its name, web address, and its Vote.org marks without authorization while "impersonating Vote.org in an e-mail harassing a newly hired employee and by using Vote.org's name and logo in an 'anonymous' letter to Vote.org donors and stakeholders." (Complaint ¶¶ 122 and 124).

Vote.org's alleged facts lack cognizable information which, even if true, could advance any plausible commission of a tort by Cleaver. The Complaint alleges that, "in summer 2024, on information and belief, Cleaver sent, or caused to be sent, an 'anonymous' letter to individuals with a 'personal or professional affiliation with the Vote.org board or its CEO.' Recipients of the letter included donors, stakeholders, and prospective supporters. The letter allegedly was sent to several recipients in Indiana, including the CEO's parents, the head of an educational organization on whose Board of Directors Vote.org's CEO serves, and several employees of the same organization." ECF 1, ¶ 64 (referring to the letter marked as Exhibit D to the Complaint).

As Cleaver has argued, *supra*, Vote.org fails to allege facts or circumstances supporting that Cleaver "sent or caused to be sent" this letter. It fails to provide facts permitting this Court to reasonably infer Cleaver's culpability for the letter, as required when a plaintiff alleges, as Vote.org does here, a fact "upon information and belief." *See*, *BMO Harris Bank N.A. v. Salin Bank & Trust Co.*, 442 F. Supp. 3d 1075, 1083 (S.D. Ind. 2020).

324728462v.1

Beyond this, the letter itself demonstrates it cannot reasonably be considered to have caused confusion with Vote.org's goods or services, or otherwise. On the contrary, the entire letter repeatedly emphasizes it is _not_ being sent by Vote.org, but rather by former supporters of that organization. The letter's very first sentence conspicuously states "We are a group of concerned former Vote.org supporters." (Complaint at Ex. D, page 1.) It makes multiple statements critical of Vote.org's CEO, its board of directors, and Vote.org itself, such that no reasonable reader would confuse it as coming from Vote.org. It closes with "Respectfully yours, Former Vote.org Supporters."

Vote.org's allegation based upon the alleged anonymous Protonmail email (Complaint at ¶ 67) also fails. Vote.org alleges that the e-mail "used an email address votedotorg@proton.me" and "was sent to harass a newly hired employee of Vote.org and disparage the organization." (Complaint at ¶ 67). As with the anonymous letter, Vote.org alleges facts about the e-mail (that its address ended in "@proton.me") indicating that it was, in fact, _unlikely_ to confuse a Vote.org employee. Moreover, Vote.org's own allegation is that the e-mail was harassing and disparaging, not one causing confusion as to Vote.org's goods or services. (Id.) Count 6 fails to state a claim upon which relief can be granted and must be dismissed.

### iii. Counts 7 – 10 fail because Vote.org fails to allege any crime supporting a claim under Indiana's Crime Victim's Relief Act.

For its Counts 7 – 10, Vote.org asserts four claims under Indiana's Crime Victim's Relief Act ("ICVRA"). Vote.org alleges that Cleaver committed identity deception (Ind. Code § 35–43–5–3.5), theft (Ind. Code § 35–43–4–2), conversion (Ind. Code § 35–43–5–3), and criminal mischief (Ind. Code § 35–43–1–2). Specifically, Vote.org alleges that "on information and belief, Cleaver knowingly or intentionally used Vote.org's CEO's identifying information, including her name and association with Vote.org, with the intent to harm or defraud Vote.org,

by engaging in the foregoing conduct, including impersonating Vote.org's CEO in an email harassing a newly hired employee of Vote.org." (*See,* Complaint at ¶ 136.) Vote.org also alleges that "Cleaver knowingly or intentionally exerted unauthorized control over the Vote.org Marks with intent to deprive Vote.org of a part of their value and use by making unauthorized use of the Vote.org Marks for her own benefit and to pursue a personal vendetta, which resulted in a pecuniary loss for Vote.org." (*See* Complaint at ¶¶ 151, 163, and 176.)

Vote.org fails to specify in the factual allegations supporting Counts 7 through 10 where any of the alleged criminal conduct occurred. But it alleges the purported perpetrator, Cleaver, resides in California. (Complaint at ¶ 25.) It alleges the purported victim (itself) is incorporated in California and the District of Columbia with its principal place of business in Washington, D.C. (Id. at ¶ 24.) Vote.org fails to allege where the letter was created or from where it was mailed. But based upon its allegations about Cleaver's place of residence, the logical alleged inference is that the letter was created in California. Vote.org alleges the email originated from a Swiss based electronic communications service. (Complaint at ¶ 67.) It alleges the email was directed to a Vote.org employee without specifying the location of this employee. (Id.)

Vote.org's allegations support the conclusion that there is no true Indiana nexus permitting it to invoke the ICVRA, that there was, in fact, no violation of Indiana law, and that Vote.org's allegations fail to state a claim under the ICVRA. *See Koger v. State*, 513 N.E.2d 1250, 1257 (Ind. Ct. App. 1987) (holding that a burglary committed in Ohio could not be used as a predicate act under Indiana RICO, since a burglary committed in Ohio was not a violation of Indiana law). The ICVRA is a remedial civil statute that creates a cause of action, under Indiana law, only when someone suffers a pecuniary loss as a result of perpetrators acting in violation of Indiana law. Vote.org fails to allege such violation. Counts 7 through 10 must be dismissed.

Count 7 (identity deception) requires Vote.org to prove, among other things, that Cleaver used Vote.org's identifying information to profess to be another person. (Ind. Code § 35–43–5–3.5.) But the only material fact Vote.org alleges to support its claim is that Cleaver directed the allegedly impersonating email described in Complaint paragraph 67 to a Vote.org employee. As noted *supra*, Vote.org alleges no fact establishing that this email has any nexus with Indiana. On the contrary, again, Vote.org acknowledges its principal place of business is Washington, D.C., not Indiana, (Complaint at ¶ 24), and Vote.org does not allege its employee was located in Indiana at the time of the alleged email.  Accordingly, Vote.org has failed to allege any criminal act under the ICVRA. Count 7 must be dismissed.

Count 8 (theft) requires Vote.org to prove, among other things, that Cleaver knowingly or intentionally exerted unauthorized control over property of another person with intent to deprive the other person of any part of its value or use. (Ind. Code § 35–43–4–2.).  Count 9 (conversion) occurs when the defendant "knowingly or intentionally exerts unauthorized control over the property of another person." (Ind. Code § 35-43-4-3(a).)  Conversion is a lesser-included-offense to theft, and thus if Vote.org cannot establish conversion, its theft claim also automatically fails. *See Dillinger, LLC v. Electronic Arts, Inc.*, 795 F. Supp. 2d 829, 839 (S.D. Ind. 2011).

Vote.org's claims for conversion and theft fail, among other reasons, because Vote.org has not alleged Cleaver "exerted control" over Vote.org's marks. "That element requires a defendant 'to obtain, take, carry, drive, lead away, conceal, abandon, sell, convey, encumber, or possess property, or to secure, transfer, or extend a right to property.'" *Id.* (quoting Ind. Code § 35-43-4-1). Critically, "*merely using another's trademark without permission . . . doesn't constitute any of these activities.*" *Id.* (emphasis added); *see Doe v. Netflix, Inc.*, 2023 U.S. Dist. LEXIS 98011, at *29, 2023 WL 3848379 (S.D. Ind. June 6, 2023) (same). That is because such

unauthorized use is not appropriation of plaintiff's property for the defendant's own use and benefit "in exclusion and defiance of the owner's rights." *Heckler & Koch, Inc. v. Coharie Arms, Inc.*, 2010 U.S. Dist. LEXIS 23460, at *6, 2010 WL 987747 (S.D. Ind. Mar. 12, 2010).

Here, Vote.org simply alleges Cleaver used Vote.org's mark without permission. Vote.org alleges Cleaver sent an anonymous letter with Vote.org's mark and sent the impersonating email discussed *supra*. Vote.org does not allege this unauthorized use of its mark was in exclusion and defiance of Vote.org's rights (nor could it do so). Vote.org was able to continue using and receiving value from its mark despite Cleaver's alleged use of it. Vote.org has failed to allege any criminal act under the ICVRA. Counts 8 and 9 must be dismissed.

Finally, Count 10 (criminal mischief) requires Vote.org to prove, among other things, that Cleaver damaged or defaced Vote.org's property when Cleaver allegedly used Vote.org's marks in the anonymous letter or email. Ind. Code § 35–43–1–2. But Vote.org's allegations do not support the conclusion that Cleaver damaged or defaced any property in any manner (never mind doing so in Indiana). In fact, the allegations Vote.org asserts in its other counts alleging that Cleaver used its marks to impersonate Vote.org or its CEO and to confuse others that Cleaver was Vote.org depend upon the Vote.org marks not being damaged or defaced to achieve the alleged impersonation or confusion.

The factual allegations contained in Counts 7 through 10 fail to state a claim under Indiana law. These counts must be dismissed under Fed. R. Civ. P. 12(b)(6).

## CONCLUSION

For the foregoing reasons, Cleaver respectfully asks the Court to grant her motion to dismiss.

324728462v.1

Respectfully submitted,

/s/ Justin G. Hazlett

Justin G. Hazlett
Attorney No. 22046-49
justin.hazlett@wilsonelser.com
Thomas J. Flynn
Attorney No. 35642-71
thomas.flynn@wilsonelser.com
WILSON ELSER MOSKOWITZ
EDELMAN & DICKER LLP
301 Pennsylvania Parkway
Suite 210
Indianapolis, IN 46280
(317) 908-8916 (tel)
(317) 660-2357 (fax)

324728462v.1

Certificate of Service

I certify that on November 17, 2025 a copy of the foregoing document was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system. A copy of the foregoing was also served on the following parties via email to their counsel:

Kaylin Oldham Cook
McCarter & English
10 E Main Street
Suite 200
Carmel, IN 46032
317-810-5495 (tel)
Email: kcook@mccarter.com

Vanessa Roberts Avery
McCarter & English
CityPlace I
185 Asylum Street
Hartford, CT 06103
860-275-6700 (tel)
Email: vavery@mccarter.com

Zachary A. Myers
10 E Main St
Ste 200
Carmel, IN 46032
317-810-5500 (tel)
Email: zmyers@mccarter.com

/s/ Justin G. Hazlett
Justin G. Hazlett

324728462v.1