# EXHIBIT A

1  PHILIP ANDONIAN (SBN 222243)
2  CALEBANDONIAN PLLC
   1100 H Street, N.W., Ste. 315
3  Washington, D.C. 20005
   Tel: (202) 953-9850
4  Fax: (202) 217-4100
   Email: phil@calebandonian.com
5

**ELECTRONICALLY FILED**
Superior Court of California,
County of Alameda
**08/18/2022 at 02:00:05 PM**
By: Xian-xii Bowie,
Deputy Clerk

6  Attorneys for Plaintiff
   DEBRA CLEAVER
7

8              SUPERIOR COURT OF CALIFORNIA

9                    COUNTY OF ALAMEDA

10

11 DEBRA CLEAVER,                          )
                                           )  Case No.: 22CV016466
12           Plaintiff,                     )
                                           )  **COMPLAINT FOR DAMAGES**
13                                          )  **AND EQUITABLE RELIEF FOR:**
                                           )
14                                          )  **(1) WRONGFUL TERMINATION**
15 vs.                                      )  **(WHISTLEBLOWER**
                                           )  **RETALIATION)**
16 VOTE.ORG, INSPERITY PEO SERVICES,        )  **(2) BREACH OF CHARITABLE**
   ANDREA HAILEY, SARAH JACKEL,             )  **TRUST**
17 JULIA RHODES DAVIS,                      )  **(3) REMOVAL FROM OFFICE AND**
   CHRISTY REMY CHIN,                       )  **BAR FROM REELECTION**
18 SWATI MYLARAVAPU,                        )  **(4) CONSPIRACY TO BREACH**
19 RUPA BALASUBRAMANIAN,                    )  **CHARITABLE TRUST**
   MAISHA LEEK, and                         )  **(5) AIDING AND ABETTING**
20 DRAPER RICHARDS KAPLAN FOUNDATION, )  **BREACH OF CHARITABLE TRUST**
                                           )
21           Defendants.                    )
                                           )
22                                          )  **JURY TRIAL DEMANDED**
                                           )
23 _____)

24      Plaintiff Debra Cleaver hereby files this Complaint and alleges the following:

25                              **I.**
                          **INTRODUCTION**
26

27      1.    This case is about a vengeful board of directors retaliating against one of its own

28 when she threatened to expose fiduciary malfeasance at a prominent California nonprofit, and

                                        1

COMPLAINT FOR WRONGFUL TERMINATION AND BREACH OF CHARITABLE TRUST

that board's mismanagement, private inurement, and wasting of charitable resources in the name of self-interest over the public good.

2.      Plaintiff Debra Cleaver is the original CEO and founder of Vote.org (which began as Long Distance Voter and was renamed in or around 2016), one of the largest and most respected voter-turnout organizations in the country.  Cleaver served as the organization's chief executive and director from its creation in or around 2008 until her abrupt and unlawful termination on or about August 22, 2019.

3.      In or around June 2019, Cleaver learned, to her dismay, that her fellow board members, the Individual Defendants in this case,[1] had gone behind her back as the organization's CEO to authorize an unprecedented severance agreement for a senior employee overseeing Vote.org's engineering team who had resigned voluntarily from the organization after Cleaver raised legitimate questions about his performance, which was within her exclusive power as CEO under the organization's then-existing bylaws.

4.      This improper and unauthorized agreement, which was made in writing and signed without authority by Defendant Davis acting on behalf of all Individual Defendants, was a departure from the organization's past practice of not offering severance packages – in particular severance payouts – to employees who had voluntarily separated from the organization.  This, in turn, caused harm to the organization by creating problematic precedent.

_____

[1] References in this Complaint to the "Individual Defendants" shall mean Defendants Hailey, Jackel, Chin, Davis, Balasubramanian, Maylaravapu, and Draper Richards Kaplan Foundation only.  References to the "Defendants" shall mean all Defendants collectively.

COMPLAINT FOR WRONGFUL TERMINATION AND BREACH OF CHARITABLE TRUST

5.    The unauthorized severance payout, worth more than $40,000 in total, was misappropriated from Vote.org's charitable funds, and thus caused financial harm to Vote.org by diverting resources from the organization's charitable mission.

6.    As the organization's CEO as well as one of its directors, Cleaver owed fiduciary duties of care and loyalty to the organization (as did the Individual Defendants).

7.    Thus, after learning about the unauthorized severance agreement and payout, Cleaver informed the Individual Defendants of her concerns and told them she intended to report the misuse of organizational funds to the California Attorney General and the Internal Revenue Service and would take remedial measures to mitigate the violation by reconstituting the entire board of directors.

8.    The Individual Defendants did not react well to this news.

9.    On or about August 22, 2019, at a hastily and improperly noticed meeting, the Individual Defendants took a series of actions to protect their own interests in response to Cleaver's plan to report them, which caused further harm to Vote.org and to Cleaver personally:

    a.    they voted to strip Cleaver and her co-founder of their right to appoint directors, as prescribed by the bylaws in existence at the time;

    b.    they voted to give each of themselves signing authority on behalf of the organization (at the time, only the CEO had such authority) in a transparent attempt to ratify the improper severance agreement after the fact; and

    c.    they abruptly fired Cleaver as CEO and removed her as a director for the sole purpose of retaliating against her and impeding her efforts to report their wrongdoing.

3

COMPLAINT FOR WRONGFUL TERMINATION AND BREACH OF CHARITABLE TRUST

10. Tellingly, the board fired Cleaver without a succession plan, which would be expected had the move been for legitimate reasons. As a result, Vote.org floundered without a CEO for more than two months during a critical period ahead of the 2020 election cycle and suffered significant reputational harm in the aftermath of Cleaver's departure.

11. Cleaver's sudden termination also shocked and alarmed Vote.org's biggest donors. Almost immediately, because of Cleaver's removal, two individuals retracted their pledged donation of $4 million to Vote.org, two others retracted pledged donations of $100,000 each, and one donor removed Vote.org as a beneficiary from his will.

12. A donor bloc representing 60% of the organization's total donations contacted the Individual Defendants and demanded an explanation for Cleaver's separation from the organization and for the organization's strategic plan moving forward.

13. Rather than take seriously this influential group representing millions of dollars of funding, the Individual Defendants ignored their concerns, refused to provide an explanation for Cleaver's improper termination, and refused to explain their succession plan.

14. Although the Individual Defendants assured the donors they would find a qualified replacement for Cleaver and that Vote.org would remain in capable hands, they promoted Defendant Hailey to CEO – an unusual move that should have prompted increased vetting since Hailey was an existing director who stood to gain personally from the appointment.

15. Unfortunately, it does not appear Defendant Hailey was properly vetted, as even a cursory search of publicly available records reveals that she was unqualified to be CEO of a major multi-million-dollar nonprofit like Vote.org.

16. Since Cleaver's termination, the Individual Defendants and Defendant Leek have continued to run afoul of their fiduciary obligations and continue to harm Vote.org. This

4

COMPLAINT FOR WRONGFUL TERMINATION AND BREACH OF CHARITABLE TRUST

includes inflicting reputational harm by diluting the organization's prominent brand and financial harm by misdirecting or misappropriating hundreds of thousands of dollars in donations to non-operational causes – including excessive compensation – that appear to serve no charitable purpose.

17.    This lawsuit now follows.

## II.
## JURISDICTION AND VENUE

18.    Jurisdiction is proper because all claims herein arise under the laws of the State of California, including, but not limited to, provisions of the California Code of Civil Procedure, the California Corporations Code, and the California Labor Code.  Venue is proper because Vote.org is a California nonprofit public benefit corporation headquartered in Oakland and all parties were at all relevant times played integral roles in Vote.org's operations.

## III.
## PARTIES

### Plaintiff

19.    Plaintiff Debra Cleaver founded Vote.org – then called Long Distance Voter – in or around 2008 and served as its first CEO and one of the original members of its board of directors.

20.    Cleaver worked at Long Distance Voter/Vote.org as the organization's chief executive and director from its inception until she was fired on or about August 22, 2019.  For more than a decade, Cleaver toiled for little or no pay and grew the organization to the prominent brand it remains today.

COMPLAINT FOR WRONGFUL TERMINATION AND BREACH OF CHARITABLE TRUST

21.     Cleaver was – and still is – a prolific fundraiser who personally secured or received commitments for millions of dollars in donations for Vote.org's operations and helped bring national attention to the organization's mission.

22.     As the organization's CEO, Cleaver had sole authority over the day-to-day management of the organization, including all personnel decisions, as clearly stated in the organization's then-existing bylaws.

23.     On or about August 22, 2019, Cleaver was abruptly, unjustifiably, and unlawfully fired as CEO and removed as a director after the Individual Defendants learned that Cleaver had uncovered abuses of fiduciary duties and financial mismanagement and threatened to report this misconduct to state and federal authorities.

### Defendants

24.     Defendant Vote.org is a California nonprofit public benefit corporation headquartered in Oakland.  Vote.org is a non-partisan voter-turnout organization that reaches millions of potential voters each year through grassroots outreach.  On or about August 22, 2019, Vote.org, acting through its board of directors, wrongfully terminated Debra Cleaver in retaliation for her threat to report the Individual Defendants' abuses of fiduciary duties and financial mismanagement to state and federal authorities.

25.     Defendant Insperity PEO Services was and remains Vote.org's professional employer organization ("PEO"), which performs all human-resources functions on behalf of Vote.org.  In this capacity, Insperity was and remains the direct employer of all Vote.org employees, including Cleaver in her previous capacity as Vote.org's CEO.  On or about August 22, 2019, Insperity took the necessary steps to process Cleaver's termination.

COMPLAINT FOR WRONGFUL TERMINATION AND BREACH OF CHARITABLE TRUST

26.     Defendant Andrea Hailey is a former director and the current CEO of Vote.org, and is Cleaver's immediate successor after Cleaver was wrongfully fired.  Hailey worked in concert with the other Individual Defendants to unlawfully terminate Cleaver in retaliation for her whistleblower activity and engaged in an ongoing course of misconduct as a Vote.org director before and after Cleaver's termination.

27.     Defendant Sarah Jackel was at all relevant times Vote.org's General Counsel and secretary of Vote.org's board.  Jackel worked in concert with the other Individual Defendants to unlawfully terminate Cleaver in retaliation for her whistleblower activity and engaged in an ongoing course of misconduct as a Vote.org director before and after Cleaver's termination.

28.     Defendant Christy Remy Chin is a director and treasurer of the Vote.org board.  Chin also is a partner at Defendant Draper Richards Kaplan Foundation,[2] which entered into a $300,000 grant agreement with Vote.org in or around December 2017.  As a condition of that grant agreement, Draper Richards Kaplan demanded – and received – a seat on Vote.org's board and designated Chin to serve in that role.  Chin worked in concert with the other Individual Defendants to unlawfully terminate Cleaver in retaliation for her whistleblower activity and engaged in an ongoing course of misconduct as a Vote.org director before and after Cleaver's termination.

29.     Defendant Julia Rhodes Davis is a director and current chair of the Vote.org board.  Davis worked in concert with the other Individual Defendants to unlawfully terminate Cleaver in retaliation for her whistleblower activity and engaged in an ongoing course of misconduct as a Vote.org director before and after Cleaver's termination.

---

[2] https://www.Vote.org/team/ (last visited August 17, 2022)

7

30.    Defendant Rupa Balasubramanian is a director on the Vote.org board. Balasubramanian worked in concert with the other Individual Defendants to unlawfully terminate Cleaver in retaliation for her whistleblower activity and engaged in an ongoing course of misconduct as a Vote.org director before and after Cleaver's termination.

31.    Defendant Swati Mylaravapu is a director on the Vote.org board.  In or about April 2019, while serving as a Vote.org director, Mylaravapu also accepted a position as the national campaign finance chair for then-presidential candidate Pete Buttigieg, which potentially ran afoul of the organization's bylaws provision prohibiting partisan political activity and compromised Vote.org's critical non-partisan status.  Mylaravapu worked in concert with the other Individual Defendants to unlawfully terminate Cleaver in retaliation for her whistleblower activity and engaged in an ongoing course of misconduct as a Vote.org director before and after Cleaver's termination.

32.    Defendant Maisha Leek is a director on the Vote.org board.  Leek was appointed after Cleaver's termination and has been a director on Vote.org's board at all relevant times with respect to the allegations in this Complaint of fiduciary misconduct after Cleaver's departure.

33.    Defendant Draper Richards Kaplan Foundation is a global venture philanthropy firm supporting early stage, high impact social enterprises.[3]  In or around December 2017, Draper Richards Kaplan and Vote.org entered into a grant agreement under which Draper Richards Kaplan gave Vote.org $300,000 in conditional funding.  As an express condition of the funding, Draper Richards Kaplan demanded – and received – a seat on Vote.org's board. Defendant Christy Remy Chin served as Draper Richards Kaplan's board designee.

_____

[3] https://www.drkfoundation.org/about/ (last visited August 17, 2022)

8

# IV.
## MATERIAL FACTS

**Debra Cleaver Creates and Successfully Leads Vote.org For More Than a Decade**

34.    Plaintiff Debra Cleaver has a long and dedicated history in the voter-registration and voter-turnout movement, beginning in 2004 when she and others formed a small organization focused on the arduous task of door-to-door voter registration in targeted markets around the country.

35.    In 2008, Cleaver recruited a group of friends and colleagues to start a new entity to help voters navigate the complicated absentee-ballot process across the states.  The group, which they named Long Distance Voter, expanded its mission to voter registration generally and eventually became Vote.org, one of the country's most prominent and influential nonpartisan voter-registration and get-out-the-vote ("GOTV") organizations.

36.    Cleaver incorporated Long Distance Voter/Vote.org in California and was the organization's principal officer, general partner, grantor, owner, and trustor.  Cleaver used her home addresses as Long Distance Voter/Vote.org's primary place of business, and she and others contributed personal funds to the organization's startup and ongoing operational costs.

37.    Cleaver also handled most of the administrative functions associated with the organization.  She built the organization's first website – no small feat given the group's substantial online presence – which had more than half a million hits by Election Day 2008, the organization's first year in business.

38.    In or around May 2008, Cleaver filed with the California Secretary of State Long Distance Voter's first Statement of Information, which listed Cleaver as Long Distance Voter's CEO and registered agent for service of process, and listed Cleaver's home address as Long Distance Voter's principal place of business.

9

39.     In or around July 2009, Long Distance Voter adopted its first corporate bylaws. These bylaws established, among other things, the original directors of the organization, which included Cleaver.  Again, Cleaver's home address was listed in the bylaws as Long Distance Voter's principal place of business.

40.     In or around August 2009, Cleaver filed Long Distance Voter's IRS Form 1023 seeking federal tax-exempt status.  Cleaver was listed on the Form 1023 as Long Distance Voter's CEO and primary point of contact, and Cleaver's home address was listed as Long Distance Voter's principal place of business.

41.     The IRS granted Long Distance Voter tax-exempt status in or around April 6, 2011, retroactive to its incorporation date in 2008.

42.     In or around November 2009, Cleaver moved from Los Angeles, California, to San Francisco, California.  Cleaver amended Long Distance Voter's various corporate documents to reflect this change of address because her home address remained Long Distance Voter's principal place of business.

43.     In or around November 2011, Cleaver filed Long Distance Voter's paperwork for tax-exempt status in the State of California.  Cleaver was listed on this paperwork too as Long Distance Voter's primary point of contact and her home address in San Francisco was listed as the organization's principal place of business.

44.     The State of California granted Long Distance Voter tax-exempt status in or around March 1, 2012, retroactive to the organization's incorporation in or around 2008.

45.     In or around February 2014, Cleaver filed with the California Secretary of State Long Distance Voter's second Statement of Information.  Cleaver again was listed as Long

COMPLAINT FOR WRONGFUL TERMINATION AND BREACH OF CHARITABLE TRUST

Distance Voter's CEO and registered agent for service of process, and Cleaver's home address again was listed as Long Distance Voter's principal place of business.

46.    In or around September 2015, Long Distance Voter's board of directors adopted and ratified new corporate bylaws for the organization.  These bylaws, among other things, gave sole discretion to Cleaver as CEO over all of Vote.org's internal personnel decisions, and these bylaws remained in effect from that time through at least August 22, 2019, when Cleaver was unlawfully terminated from the organization.

47.    In or around December 2015, Long Distance Voter entered into a purchase and sales agreement for the domain name "Vote.org" for $100,000, which Cleaver personally guaranteed.

48.    In or around January 2016 – almost a decade after she started the organization – Cleaver became the organization's first paid employee, earning an annual salary of $100,000 as its CEO.

49.    In or around March 2016, Long Distance Voter officially changed its name to Vote.org by filing amended articles of incorporation with the California Secretary of State.

50.    Beginning in or around April 2016, the Vote.org website went live and all traffic from "longdistancevoter.org" was redirected permanently to "vote.org."

51.    In 2016, Cleaver was accepted into the prestigious tech accelerator Y Combinator. She was one of the only solo founders and one of only three nonprofit founders in her Y Combinator class.

52.    That same year, Cleaver raised almost $2 million for Vote.org and piloted the then-novel use of "peer-to-peer text messages" as a successful voter mobilization tactic.

11

53.     In or around May 2018, Cleaver filed with the California Secretary of State Long Distance Voter/Vote.org's third Statement of Information.  Cleaver again was listed as the organization's CEO and registered agent for service of process, and Cleaver's home address again was listed as the organization's principal place of business.

54.     In 2018, Cleaver personally raised almost $12 million for Vote.org and ran one of the country's largest and most successful GOTV campaigns.

55.     That same year, Vote.org reached millions of potential voters through a combined campaign of physical billboards (more than 3,000 throughout the country), print and online advertisements (full-page, color pieces appeared on the backs of nearly every college newspaper in the country), and nearly 50 million peer-to-peer text messages sent by more than 900 temporary consultants managed by Cleaver.

56.     Pop star Taylor Swift mentioned Vote.org in social-media posts and Vote.org garnered substantial favorable press coverage, with more than 900 media pieces capturing an estimated 52.2 million views.

57.     By all accounts, Cleaver's performance as CEO of the organization was stellar. Indeed, in January 2019, only seven months before her abrupt termination, the Individual Defendants gave Cleaver a strong and very positive performance review, with the Individual Defendants rating Cleaver more favorably in many areas than Cleaver rated herself.

**The Individual Defendants Enter Into an Unauthorized Severance Agreement With a Departing Vote.org Employee in Violation of the Organization's Bylaws and Against Cleaver's Express Instructions and Wishes**

58.     Under Vote.org's then-existing bylaws, Cleaver, as CEO of the organization, had sole discretion over the organization's internal personnel decisions, including all decisions

COMPLAINT FOR WRONGFUL TERMINATION AND BREACH OF CHARITABLE TRUST

regarding the hiring, retention, and termination of organization employees.  In contrast, the organization's directors had no role whatever in such decisions.

59.     In or around May 2019, Vote.org employed an engineering manager, "J.L.," who was a senior employee and part of Vote.org's leadership.  J.L. was responsible for the organization's four-person engineering team, which built and maintained the Vote.org website and its online tools and features, which were critical to Vote.org's mission.

60.     In or around May 23, 2019, J.L. approached Cleaver about a promotion to vice president of engineering – a position that would command greater responsibility and pay.  At that time, J.L. had been a full-time employee at Vote.org for approximately two years and Vote.org was his first full-time job as an engineer.

61.     Although Cleaver initially responded favorably to J.L.'s request, she ultimately decided against it after a closer review of Vote.org's engineering work revealed that the engineering team under J.L.'s leadership was substantially underperforming (nearly a 50% decline from the previous year) to the detriment of the organization.

62.     After considerable deliberation, Cleaver, in her sole discretion as CEO, decided to not promote J.L. to vice president, although she did make available to J.L. executive-leadership and engineering-management coaches to develop a clear improvement plan moving forward.

63.     J.L. did not react well to Cleaver's decision.  On or around June 4, 2019, J.L. told Cleaver he was resigning from the organization – a statement he would reiterate two more times, on or about June 5, 2019, and again on or about June 24, 2019 – and demanded a severance package including several months of salary and six months of healthcare coverage.

13

COMPLAINT FOR WRONGFUL TERMINATION AND BREACH OF CHARITABLE TRUST

64.    Cleaver made clear to J.L. that Vote.org did not and would not offer a severance package to an employee that voluntarily resigned – a decision well within the scope of her authority as CEO.

65.    Even though the Vote.org directors had no authority under the bylaws to interfere in a purely internal personnel matter, between on or about June 4, 2019, and August 22, 2019, the Individual Defendants inexplicably did just that with respect to J.L.'s employment.

66.    Defendant Chin called Cleaver at least four times during this period to discuss J.L.'s employment status with Vote.org.  Chin did so in her capacity as a director of Vote.org even though in that role she had no authority over Cleaver's decisions regarding purely internal personnel matters.

67.    Defendant Hailey called Cleaver at least one time during this period to discuss J.L.'s employment status with Vote.org.  Hailey did so in her capacity as a director of Vote.org even though in that role she had no authority over Cleaver's decisions regarding purely internal personnel matters.

68.    Defendant Mylaravapu called Cleaver at least one time during this period to discuss J.L.'s employment status with Vote.org.  Mylaravapu did so in her capacity as a director of Vote.org even though in that role she had no authority over Cleaver's decisions regarding purely internal personnel matters.

69.    Defendant Balasubramanian called Cleaver at least one time during this period to discuss J.L.'s employment status with Vote.org.  Balasubramanian did so in her capacity as a director of Vote.org even though in that role she had no authority over Cleaver's decisions regarding purely internal personnel matters.

COMPLAINT FOR WRONGFUL TERMINATION AND BREACH OF CHARITABLE TRUST

70.    Defendant Davis called Cleaver at least one time during this period to discuss J.L.'s employment status with Vote.org.  Davis did so in her capacity as a director of Vote.org even though in that role she had no authority over Cleaver's decisions regarding purely internal personnel matters.

71.    J.L. was aware that Defendants Hailey, Chin, Mylaravapu, Balasubramanian, and Davis had spoken to Cleaver in their capacities as board members about his employment status with Vote.org and that they were attempting to intervene in the internal personnel matter on his behalf.

72.    The interference by Defendants Hailey, Chin, Mylaravapu, Balasubramanian, and Davis undermined Cleaver's authority as CEO, weakened her standing within the organization, and ultimately harmed the organization by leading to an unauthorized severance agreement with J.L. and creating the circumstances that led to Cleaver's unlawful termination and removal.

73.    Nevertheless, on or about June 24, 2019, J.L. emailed Cleaver and Defendant Davis regarding his separation from the organization.  His email said nothing about a severance package upon his resignation and he indicated he would leave the organization effective July 5, 2019:

J████ L█████████                                                Tue, Jun 25, 2019 at 8:20 AM
To: Debra Cleaver <debra@vote.org>, Julia Rhodes Davis <juliarhodesdavis@gmail.com>

Debra/Julia,

I appreciate that the board would like Debra and I to go to mediation, however at this point I think it's in everyone's best interest that I give my remaining two weeks notice - my last day at  Vote.org  will be July 5th.

If you need any of my time beyond the next two weeks, I will require a contract that outlines the following:

1) that I am being laid off
2) the time frame extension needed beyond the next two weeks
3) and a severance package that begins after the extension ends and that includes 3 months of severance and 6 months of Cobra.

Thank you for your time and effort on this, I know it hasn't been easy for anyone involved.

J████ 

15

COMPLAINT FOR WRONGFUL TERMINATION AND BREACH OF CHARITABLE TRUST

J.L. further stated in the same email that *if* the organization needed his services beyond July 5, he and Vote.org would need to execute a "contract" to memorialize those terms, and only then would a "severance package" be on the table.  Cleaver accepted J.L.'s resignation as proposed, effective July 5.

74.     That same day, Cleaver met with the Individual Defendants at a properly convened meeting to report on J.L.'s status.  At this meeting, Cleaver made clear to them that J.L. had voluntarily resigned and that the organization would *not* be providing severance compensation.

75.     Moreover, Cleaver explained to the Individual Defendants that a severance package would not be in the organization's best interests because it would divert critical operational funds to an employee who simply had quit and would set problematic precedent going forward.  It also could create the appearance of disparate treatment of J.L., a white male, and former employees of color who had separated on similar terms without additional compensation.

76.     More to the point, Cleaver said specifically that she viewed a severance package under those circumstances as a breach of charitable trust and a violation of IRS prohibitions against private inurement, which in turn would jeopardize Vote.org's tax-exempt status and expose the Individual Defendants to personal liability.

77.     At the conclusion of the meeting, Cleaver believed the matter to be resolved.

78.     However, between on or about June 24, 2019, and June 28, 2019, the Individual Defendants met without Cleaver's knowledge or participation to discuss J.L.'s employment status despite having communicated to Cleaver at the June 24 meeting that they would not interfere further with her sole discretion over decisions regarding J.L.'s employment.

16

79.     The Individual Defendants met in their capacity as directors of Vote.org and specifically excluded Cleaver from these meetings even though Cleaver also served as a Vote.org director and thus was entitled to be present.

80.     During this time, the Individual Defendants negotiated directly with J.L. and agreed to a severance package with a new separation date as well as a lump-sum payout and three months of healthcare coverage under COBRA.  The Individual Defendants did so without Cleaver's knowledge, participation, or authorization – and indeed went against her express instructions to the contrary – and did so in violation of the organization's bylaws and to Vote.org's detriment.

81.     On or about June 28, Defendants Davis and Jackel, with the knowledge and consent of the other Individual Defendants, and without Cleaver's knowledge or authorization, prepared and presented to J.L. a written severance agreement that included approximately $40,000 in a lump-sum payout and three months of health-insurance coverage under COBRA worth an additional $3,000.  The agreement also untruthfully stated that J.L. had been terminated.  The severance agreement was not on Vote.org letterhead and Defendant Davis purported to sign on behalf of the organization despite having no authority to do so.

82.     Cleaver did not authorize the severance agreement or payout and the Individual Defendants knew this when they offered it to J.L.

83.     At the time, Defendant Jackel was both Vote.org's General Counsel and the secretary of the Vote.org board.  As General Counsel, Jackel was responsible for the legal integrity of all contracts entered into by Vote.org.  As board secretary, Jackel was responsible for noticing board meetings, preparing minutes, and documenting motions.  Jackel violated her fiduciary obligations as both General Counsel and corporate secretary by preparing the severance

17

COMPLAINT FOR WRONGFUL TERMINATION AND BREACH OF CHARITABLE TRUST

agreement for Davis to sign because Jackel knew that only Cleaver, as CEO, had signing

authority under the bylaws; that there had not been a properly noticed board meeting to discuss

the agreement; and that J.L. had resigned and was not entitled to a severance package in the first

instance.

84.     It is irrefutable that Cleaver was unaware of what the Individual Defendants were

doing behind her back because on or about July 1, 2019, at 2:30 p.m., Cleaver emailed

Defendant Insperity to notify Insperity of J.L.'s voluntary resignation from the organization and

said nothing of a severance agreement or payout:

**Terminating employee**
12 messages

**Debra Cleaver** ▮▮▮▮▮@▮▮▮.▮▮▮                                    Mon, Jul 1, 2019 at 2:30 PM
To: Tori Haight <▮▮▮▮.▮▮▮▮▮@▮▮▮▮▮▮.▮▮▮>, ▮▮▮▮▮▮ ▮▮▮▮▮▮ <▮▮▮▮▮▮▮
Cc: Magdalen Sangiolo <▮▮▮▮▮▮▮@▮▮▮▮▮.▮▮▮>

    Hi Natalie and Tori,

    (I wasn't sure which of you handles this, so trying you both.)

    Employee Ja▮▮▮.d▮▮▮▮s leaving vote.org. He resigned. His last day is Friday 7/5. We also need a mutual
    nondisparagment agreement.

    What are the steps to make this happen?

    I can also forward you his resignation email for your records.

    Thanks,

    --
    Debra Cleaver
    Founder, Vote.org
    ▮▮▮▮▮▮▮▮▮▮▮▮

85.     Later that same day, at 5:39 p.m., Defendant Davis emailed Cleaver, copying the

other Individual Defendants, and revealed to her for the first time that the Individual Defendants

had negotiated with J.L. behind her back and had "proposed a separation agreement," which

18

COMPLAINT FOR WRONGFUL TERMINATION AND BREACH OF CHARITABLE TRUST

included approximately $40,000 in a lump-sum payout and three months of healthcare coverage:

On Jul 1, 2019, at 5:39 PM, Julia Rhodes Davis <███████████@████████ wrote:

> Hi Debra,
> Given the timing of everything (vacations, holidays, etc) we wanted to update you about where things stand with J████ departure. The board feels it is imperative to make as smooth a transition as possible.
>
> The board has negotiated an end date with J███ of July 19 with an announcement date of July 9. We have proposed a separation agreement with a mutual non disparagement agreement and the extension of notice and departure in exchange of 3 months of pay and 3 months of cobra.
>
> Given you were out on Friday and Sarah's vacation this week, the board felt it important to make sure the team was going to be managed appropriately through the transition and this was the best course of action. You all will be together at netroots right after j███ notice to the team which is  a good opportunity to manage their concerns. We look forward to talking through this and further next steps for building vote.org's capacity on Friday's call.
>
> Julia, Christy, Swati, Rupa, and Andrea
> --
> Julia Rhodes Davis
> ████████████

Cleaver had not authorized and indeed did not even know about these actions and was shocked by the email.  Cleaver immediately responded and informed the Individual Defendants that she did not approve of or accept the severance agreement:

On Mon, Jul 1, 2019 at 17:47 Debra Cleaver ██████@████████ wrote:
> Julia. This is not the boards decision. He resigned in writing three times. This is inappropriate. I do not accept this and am shocked  and hurt that the board would do this.
>
> This is a violation of our bylaws. Ja███ last day will be July 5 as per his resignation.

86.    Rather than take seriously Cleaver's objection, Defendant Mylaravapu derided Cleaver's reaction as "emotional" and "knee-jerk":

19

COMPLAINT FOR WRONGFUL TERMINATION AND BREACH OF CHARITABLE TRUST

From: **Swati Mylavarapu** <■■■■■■■■■■>
Date: Mon, Jul 1, 2019 at 3:32 PM
Subject: Re: Update on J■■■'s transition and next steps
To: Julia Rhodes Davis <■■■■■■■■■■>
Cc: Debra Cleaver <■■■■■@vote.org>, Board <■■■■@vote.org>, Sarah Jackel <■■■■@vote.org>

Debra

The tone of your email is unacceptable.  It is disrespectful and flippant.

I can't believe that you intend to offend and alienate members of your Board. I want to call out that, in fact, that is the effect that your exchanges over the last week plus are having.

Julia is presenting a point of view that is held across your Board of Directors, not an isolated opinion.  We are all deeply concerned about J■■■'s departure, and feel strongly that he ought to be exited in a way that enables his support and input in the future to be of help to the team. His resignation does not mean that the door to VDO must close permanently and rudely; the opportunity to have him depart with goodwill is beneficial to the VDO team and longer term health.

I would strongly encourage you to step away from emotional, knee-jerk responses and think through what the appropriate course of action for you and the health of you team might be at this juncture.  That's what we ought to discuss on our call, which we can hopefully prioritize and make happen sooner rather than later.

87.     Even after Cleaver raised objections about the severance agreement, Defendant Davis, without authority, executed the agreement with J.L.

88.     On or about July 6, 2019, Cleaver notified Defendant Insperity that she had not authorized the severance agreement and pointed out that J.L. had resigned and had not been terminated (as the agreement incorrectly stated) out of concern that, among other things, the Individual Defendants had changed the language to allow J.L. to collect unemployment to which he plainly was not entitled since he in fact had resigned.

89.     Notwithstanding Cleaver's objections, Defendant Insperity eventually accepted and took the necessary steps to process the improper severance agreement with J.L.

90.     Even amid the internal turmoil the Individual Defendants had created, Cleaver successfully found a replacement for J.L. only a few weeks later, by on or about August 6, 2019. Whereas J.L. had no prior engineering employment before his tenure with Vote.org, his replacement came with undergraduate and graduate degrees in computer science and some 20 years of experience working with and leading other engineering teams.

COMPLAINT FOR WRONGFUL TERMINATION AND BREACH OF CHARITABLE TRUST

91.     At a properly convened board meeting on or about that same day, Cleaver informed the Individual Defendants that J.L.'s position had been filled by a highly qualified replacement and reiterated her objections to the unauthorized severance agreement and the improper actions the Individual Defendants had taken behind her back.

92.     Notably, Cleaver told the Individual Defendants at this meeting that she intended to report Vote.org to the California Attorney General and the Internal Revenue Service for misappropriation of more than $40,000 in charitable funds and that she intended to demonstrate remedial action by reconstituting the full board.

93.     Indeed, given the Individual Defendants' serious violation of the organization's bylaws, violations of their fiduciary obligations to Vote.org, and the financial harm they caused the organization, Cleaver requested that each of the Individual Defendants resign from the board to demonstrate remedial action by the organization, which each Individual Defendant agreed to do.

94.     Shortly thereafter, however, the Individual Defendants convened an improper meeting without notifying or including Cleaver, who, as a member of the board, was entitled to participate.  At this meeting, the Individual Defendants, working in concert, agreed to disregard Cleaver's request for their resignations, determined to hire counsel for their personal protection, and jointly agreed to terminate Cleaver to undermine her efforts to report their malfeasance to the authorities.

95.     Within days of that unauthorized meeting, the Individual Defendants hired legal counsel to represent them in their individual capacities and used Vote.org funds to pay for that representation.

COMPLAINT FOR WRONGFUL TERMINATION AND BREACH OF CHARITABLE TRUST

**The Individual Defendants Unlawfully Terminate Cleaver as CEO and Remove Her as Director In Retaliation For Her Promise to Report Their Misconduct**

96.     On or about August 22, 2019, the Individual Defendants convened an improperly noticed virtual board meeting with the predetermined purpose of firing Cleaver.

97.     The Individual Defendants also agreed to strip Cleaver and her co-founder of their right to appoint directors to the Vote.org board (as the existing bylaws prescribed) and to amend the organization's bylaws to give each director signing authority on behalf of the organization – a transparent effort to ratify the unauthorized severance agreement with J.L.  Although Cleaver logged on to the meeting at exactly 11:00 a.m., the prearranged start time, the meeting already was in progress and the Individual Defendants were in the process of voting on the resolution to change the bylaws.

98.     During the short meeting, Cleaver renewed her objections to the Individual Defendants' unauthorized conduct regarding J.L.'s severance agreement and reminded them that a prominent donor had committed to making a $4 million donation to Vote.org – what would have been the largest single gift in the organization's history – contingent on Cleaver remaining at the organization as its CEO and director.  Cleaver previously had told the Individual Defendants of this potential donation and its conditions.

99.     Notwithstanding Cleaver's reminder about the contingent donation and her restated objections to the Individual Defendants' improper actions with respect to J.L.'s unauthorized severance agreement, the Individual Defendants voted to terminate Cleaver as CEO and remove her as director effective immediately, and announced the news that same day.

100.    As Vote.org's PEO, Defendant Insperity thereafter took the necessary steps to process Cleaver's termination from the organization.

COMPLAINT FOR WRONGFUL TERMINATION AND BREACH OF CHARITABLE TRUST

**Cleaver's Improper Termination Creates Significant Fallout for Vote.org**

101.    Although the Individual Defendants purported to terminate Cleaver for a legitimate purpose, they were not prepared on a basic human-resources level and Cleaver did not receive her final paycheck the day she was fired, as is required by law, which cost the organization additional money in subsequent penalties.

102.    The Individual Defendants also disparaged Cleaver to hundreds, if not thousands, of donors and organizational partners by announcing that she had been terminated as CEO without any explanation even though they knew her termination was retaliation for Cleaver's promise to report their malfeasance to the authorities.

103.    Despite repeated requests by donors and organizational partners, the Individual Defendants refused to disclose publicly any reason or basis for Cleaver's termination.

104.    The Individual Defendants eventually did agree to tell at least one donor why they had fired Cleaver, but did so on the express condition that the donor not disclose the reason to anyone, including other donors or even Cleaver herself.  Notably, when that donor heard from the Individual Defendants their purported reason for Cleaver's termination, the donor filed a complaint with the California Attorney General alleging many of the same allegations contained in this Complaint.

105.    Although the Individual Defendants purported to fire Cleaver for legitimate reasons, Cleaver still retained access to her internal organizational documents, all of Vote.org's online accounts – including bank accounts – as well as personal identifying information for thousands of Vote.org donors and millions of voters for weeks after she was terminated.  Cleaver also remained listed as the organization's CEO on corporate documents throughout the entire 2020 election campaign.

COMPLAINT FOR WRONGFUL TERMINATION AND BREACH OF CHARITABLE TRUST

106.    The Individual Defendants also failed to have in place a clear succession plan when they fired Cleaver, something that would have been expected if the move had been for legitimate reasons.  As a result, the organization was without a CEO for nearly two months in the lead-up to the all-important 2020 election cycle.  Indeed, during this period, Vote.org erected GOTV billboards in Mississippi that advertised the wrong election date.

107.    The fallout from Cleaver's termination outside the organization was immediate. Dozens of partners and prominent donors reached out immediately about the shocking news and expressed alarm at the abrupt decision.

108.    Within weeks, a group of major donors representing nearly sixty percent of Vote.org's total donations wrote to the Individual Defendants and demanded answers about Cleaver's termination.  Two of those donors who previously had pledged a $4 million contribution immediately notified the Individual Defendants of their intention to not make the contribution until the situation was satisfactorily explained; they never made the donation.  Two other donors rescinded commitments of $100,000 each; those donations also were never made. Another donor removed from his will a provision naming Vote.org as a beneficiary of a $1 million gift.

109.    These rescinded financial commitments caused substantial financial harm to Vote.org and were the direct result of ongoing breaches of the Individual Defendants' fiduciary obligations to the organization.

110.    The group of influential donors was so concerned about the abrupt upheaval at the organization that eventually it demanded several seats on Vote.org's board in a last-ditch attempt to stabilize the chaotic situation.  One donor even went as far as filing a complaint with the California Attorney General alleging many of the same claims contained in this Complaint.

COMPLAINT FOR WRONGFUL TERMINATION AND BREACH OF CHARITABLE TRUST

111.    Rather than address the donors' concerns or respond to their request for a voice on the board, the Individual Defendants ignored them and instead began an internal campaign at Vote.org of unlawfully instructing Vote.org staff to not speak with anyone about Cleaver's separation and cajoling staff to provide legitimate justification for Cleaver's termination (which did not exist).

112.    Although the Individual Defendants had assured the donors they would do a nationwide search for a qualified replacement for Cleaver, they undertook no such search despite previously having worked with an external recruiting firm to fill another position at Vote.org.

113.    Instead, the Individual Defendants elevated Defendant Hailey to the position of CEO despite Hailey's lack of qualifications for that role and despite the fact that she was an existing director.  This decision caused further financial and reputational harm to Vote.org and constituted an ongoing breach of the Individual Defendants' fiduciary duties to the organization.

114.    Hiring a qualified CEO is one of the core responsibilities of any board of directors.  In as much as the Individual Defendants chose an insider to replace Cleaver, they should have exercised extra diligence, not less or no diligence at all.

115.    The Individual Defendants either failed to do any diligence or simply disregarded what they learned about Defendant Hailey before naming her CEO.

116.    An examination of publicly available records reveals that Defendant Hailey has a documented history of financial issues, including multiple tax liens and civil court judgements against her and evictions for nonpayment of rent.  Indeed, in February 2019 – just months before she was appointed acting CEO of Vote.org – Hailey was sued in the Superior Court for the District of Columbia for nearly $28,000 in unpaid rent at a $7,000 per month property in D.C.'s exclusive Georgetown neighborhood.

COMPLAINT FOR WRONGFUL TERMINATION AND BREACH OF CHARITABLE TRUST

117.    Hailey's lack of relevant professional experience also should have raised questions about her qualifications to become Vote.org's CEO, much less the successor to the organization's founder.

118.    In public statements, Hailey frequently bolsters her credentials with reports of her work for scores of political campaigns, including two presidential campaigns.[4]  However, a review of Congressional and presidential campaign disbursements, which are reported quarterly by the Federal Election Commission,[5] shows that Hailey spent six months on *one* Congressional campaign in 2006.  There are no records showing that Hailey was employed by any other Congressional campaign or any presidential campaign over the past 20 years.

119.    Hailey also does not appear to have any corporate leadership experience, much less experience running a multi-million-dollar organization like Vote.org.[6]

120.    Despite these obvious red flags, Hailey was appointed acting CEO of Vote.org just months after Cleaver's termination, a position that was made permanent shortly thereafter.

121.    A good-faith national search for a qualified replacement for Cleaver – Vote.org's founder and longtime CEO – would have yielded more qualified candidates than Hailey.  Yet, the Individual Defendants offered Hailey the job within two months without any such search, and issued her a starting salary of $190,000, which was substantially higher than Cleaver's salary

---

[4] *E.g.*, https://thefulcrum.us/voting/vote-org-andrea-hailey (claiming to have worked "staffing or consulting for well over 50 congressional and state-level campaigns and two presidential candidates"); https://civicengagementfund.org/our-vision-1 (claiming a career that "spans over 40 federal and state campaigns"); https://www.huffpost.com/author/andrea-hailey (same); https://ash.harvard.edu/speakers (same) (all websites last visited August 17, 2022).

[5] www.fec.gov (last visited August 17, 2022)

[6] https://www.vote.org/team/ (last visited August 17, 2022)

26

COMPLAINT FOR WRONGFUL TERMINATION AND BREACH OF CHARITABLE TRUST

when Cleaver was terminated, and roughly $70,000 more than any other Vote.org staff member, including the organization's COO.

**Ongoing Fiduciary Breaches by the Individual Defendants and Defendant Leek**

122.    In the period following Cleaver's termination and removal as director, the Individual Defendants and Defendant Leek have continued to make decisions that have negatively impacted Vote.org financially and reputationally and constitute ongoing breaches of their fiduciary duties to the organization, including continuing to approve Hailey's excessive salary as CEO.

123.    Vote.org's publicly available IRS Form 990s for 2018, 2019, and 2020 – which the Individual Defendants and Defendant Leek filed after Cleaver was terminated – also reveal troubling financial details suggesting further and ongoing breaches of these directors' fiduciary duties:

    a.  The 2018 Form 990 does not disclose a large severance agreement the organization gave to an employee who was terminated for cause;

    b.  The 2019 Form 990 shows the organization spent approximately $130,000 in "miscellaneous expenses," approximately $233,000 in "data acquisition costs," more than $370,000 in "unspecified costs," and approximately $100,000 in legal fees.  All of these expenses – close to $1 million in total – were incurred in the four months in 2019 after Cleaver was terminated.

    c.  The 2019 Form 990 also falsely indicates that all board meeting minutes were taken and approved within the required timelines, which was not true.  And while the Individual Defendants and Defendant Leek did report the bylaw amendment stripping Cleaver and her co-founder of their right to appoint

COMPLAINT FOR WRONGFUL TERMINATION AND BREACH OF CHARITABLE TRUST

directors, it conspicuously does not mention the significant amendment giving each board member signing authority.

d.  The 2020 Form 990 shows that the organization spent approximately $490,000 in management-related "PR expenses" and that the organization ended the year with more than $7 million on hand, a shocking surplus given the magnitude and scope of the organization's mission regarding the 2020 election cycle.  Indeed, there is no credible basis for a charitable organization like Vote.org underspending donated funds to this degree.

e.  The 2020 Form 990 also indicates that the Individual Defendants and Defendant Leek reviewed and approved Hailey's CEO compensation based on relevant market data, which falsely represents the level of diligence they conducted in selecting her as Cleaver's replacement.

124.    There appears to be no legitimate basis for these substantial expenses and reporting anomalies, and the Individual Defendants and Defendant Leek have refused to provide audited financials upon request despite their legal obligation to do so.

125.    These anomalies reveal further and ongoing fiduciary misconduct by the Individual Defendants and Defendant Leek.

126.    The Individual Defendants and Defendant Leek have engaged in additional instances of questionable conduct in the wake of Cleaver's termination.  For example, Vote.org put in place a number of billboards in Mississippi in 2019 that instructed voters to vote on the incorrect date.

127.    An elderly donor made an accidental contribution of $7,500 to the organization, which Defendant Hailey refused to return when the donor pointed out the mistake.

COMPLAINT FOR WRONGFUL TERMINATION AND BREACH OF CHARITABLE TRUST

128.     The Individual Defendants and Defendant Leek also used Vote.org funds to pay for legal counsel in connection with the unauthorized severance agreement and Cleaver's improper termination.  This included counsels' efforts to stop Cleaver from discussing her wrongful discharge from Vote.org.

**V.**
**CLAIMS FOR RELIEF**

**FIRST CAUSE OF ACTION**
**(Against the Individual Defendants, Vote.org, and Insperity)**

**Retaliatory Discharge in Violation of California's**
**Whistleblower Statute**
**(Cal. Lab. Code § 1102.5)**

129.     The Plaintiff realleges and incorporates by reference each and every paragraph of this Complaint as if set forth here in full.

130.     As described more fully in this Complaint, on or about June 28, Defendants Davis and Jackel, with the knowledge and approval of the other Individual Defendants, and without Cleaver's knowledge or authorization, prepared and presented to J.L. a severance agreement that included approximately $40,000 in a lump-sum payout and three months of healthcare coverage under COBRA.

131.     As described more fully in this Complaint, Cleaver did not authorize the severance agreement or payout – which was her sole decision as the organization's CEO – and the Individual Defendants knew this when they offered it to J.L.

132.     As described more fully in this Complaint, the unauthorized severance payment was an improper expenditure of Vote.org's charitable funds that caused financial harm to the organization and that constituted a breach of the Individual Defendants' fiduciary duties.

29

COMPLAINT FOR WRONGFUL TERMINATION AND BREACH OF CHARITABLE TRUST

133.    As described more fully in this Complaint, when Cleaver learned about the unauthorized agreement and payout, she told the Individual Defendants she did not authorize or approve of the severance agreement and payout and informed them that they had overstepped their authority under the organization's bylaws and were violating their fiduciary obligations to Vote.org.

134.    As described more fully in this Complaint, Cleaver also told the Individual Defendants that she would be reporting the payout to the California Attorney General and the Internal Revenue Service as an improper expenditure of Vote.org's charitable donations.

135.    In response, the Individual Defendants – working in concert – decided to fire Cleaver in retaliation for her promise to report and with the intent to diminish her credibility and impede her efforts.

136.    As described more fully in this Complaint, the Individual Defendants fired Cleaver in their roles as directors of Vote.org on behalf of the organization.

137.    Defendant Insperity, as Vote.org's PEO, took the necessary steps to process Cleaver's termination.

138.    As a direct result of the willful, wrongful, and retaliatory termination by the Individual Defendants, Vote.org, and Insperity, Cleaver suffered monetary and reputational harm.

## SECOND CAUSE OF ACTION
### (Against the Individual Defendants and Defendant Leek)

### Breach of Charitable Trust
### (Cal. Corp. Code § 5142)

139.    The Plaintiff realleges and incorporates by reference each and every paragraph of this Complaint as if set forth here in full.

30

COMPLAINT FOR WRONGFUL TERMINATION AND BREACH OF CHARITABLE TRUST

140.    As described more fully in this Complaint, the Individual Defendants and Defendant Leek breached their duties to exercise reasonable care and to act with undivided loyalty to the organization as directors, which caused financial and reputational harm to Vote.org.

141.    As described more fully in this Complaint, the Individual Defendants interfered with Cleaver's handling of J.L.'s employment at Vote.org even the though the Vote.org board had no authority under the bylaws to become involved with a purely internal personnel decision.

142.    As described more fully in this Complaint, the interference by the Individual Defendants undermined Cleaver's authority as CEO, weakened her standing within the organization, and ultimately harmed the organization by creating the circumstances surrounding her unlawful termination and removal.

143.    As described more fully in this Complaint, the Individual Defendants improperly negotiated directly with J.L. for a new separation date and a severance package without Cleaver's knowledge, participation, or authorization, and did so contrary to the organization's bylaws and against the organization's best interests.

144.    As described more fully in this Complaint, the Individual Defendants specifically authorized – without right – a severance agreement with J.L. that included approximately $40,000 in a lump-sum payout and three months of healthcare coverage under COBRA, even though J.L. had voluntarily resigned his position and had explicitly acknowledged that he was not entitled to a severance payout.

145.    As described more fully in this Complaint, the Individual Defendants did this knowing that Cleaver had not authorized the severance agreement or payout, and indeed that she explicitly had admonished that such an agreement and payout was not proper or in Vote.org's

COMPLAINT FOR WRONGFUL TERMINATION AND BREACH OF CHARITABLE TRUST

best interests.  The unauthorized severance agreement and payout caused financial harm to Vote.org.

146.    As described more fully in this Complaint, Cleaver told the Individual Defendants she did not authorize or approve of the severance agreement and payout and that the Individual Defendants had overstepped their authority under the organization's bylaws and were violating their fiduciary obligations to the organization.

147.    As described more fully in this Complaint, Cleaver also told the Individual Defendants she would be reporting the payout to the California Attorney General and the Internal Revenue Service as an improper expenditure of Vote.org's charitable donations.  In response, the Individual Defendants – working in concert – decided to fire Cleaver in retaliation for her promise to report and with the intent to diminish her credibility and impede her efforts.

148.    As described more fully in this Complaint, the Individual Defendants' hasty termination of Cleaver caused a significant donor bloc representing nearly sixty percent of Vote.org's total contributions to express alarm and demand accountability from the Individual Defendants.

149.    As described more fully in this Complaint, the Individual Defendants ignored the donors' concerns; as a result, two donors who previously had pledged a $4 million contribution rescinded their commitment, two other donors rescinded commitments of $100,000 each, and another donor removed Vote.org as a beneficiary in his will.  Yet another donor reported the Individual Defendants and Defendant Leek to the California Attorney General alleging many of the same claims contained in this Complaint.

150.    This fallout, which the Individual Defendants directly caused through their improper conduct, caused substantial financial and reputational harm to Vote.org.

COMPLAINT FOR WRONGFUL TERMINATION AND BREACH OF CHARITABLE TRUST

151.    As described more fully in this Complaint, the Individual Defendants replaced Cleaver – Vote.org's founder and successful leader for more than a decade – with Defendant Hailey, an existing board member with insufficient professional experience and a very recent history of financial problems.  This caused further harm to Vote.org and constituted a breach of the Individual Defendants' fiduciary duties to the organization.

152.    As described more fully in this Complaint, the Individual Defendants undertook no diligence before appointing Hailey as CEO and approved an inflated salary that was not based on an objective market analysis and that was substantially higher than Cleaver's pay when she was terminated.  The decision to elevate Hailey to CEO and her excessive salary caused financial and reputational harm to Vote.org and resulted in a private inurement to Hailey.  These actions also constituted breaches of the Individual Defendants' fiduciary duties to the organization.

153.    As described more fully in this Complaint, the Individual Defendants also voted to change the organization's existing bylaws, which previously gave signing authority to the CEO only – including at the time Defendant Davis improperly entered into a severance agreement with J.L. – to permit *all* directors to sign documents and checks on behalf of the organization.

154.    As described more fully in this Complaint, this change diluted accountability and oversight and made it easier for fraud and mismanagement to occur, and was a transparent attempt to retroactively authorize the Individual Defendants' improper severance agreement and payout with J.L.  The change in the bylaws caused harm to Vote.org and constituted a breach of the Individual Defendants' fiduciary duties to the organization.

155.    As described more fully in this Complaint, in the period following Cleaver's termination and removal as director, the Individual Defendants and Defendant Leek have

COMPLAINT FOR WRONGFUL TERMINATION AND BREACH OF CHARITABLE TRUST

continued to make decisions that have negatively impacted Vote.org financially and reputationally, including spending hundreds of thousands of dollars of charitable funds on unjustified expenses that do not appear to be programmatic and refusing to provide audited financials upon request even though they are legally required to do so.

### THIRD CAUSE OF ACTION
**(Against the Individual Defendants and Defendant Leek)**

**Removal From Office and Bar From Reelection**
**(Cal. Corp. Code § 5223)**

156.    The Plaintiff realleges and incorporates by reference each and every paragraph of this Complaint as if set forth here in full.

157.    As described more fully in this Complaint, the Individual Defendants breached their duties to act with reasonable care and undivided loyalty to Vote.org as directors, which caused financial and reputational harm to the organization.

158.    As described more fully in this Complaint, the Individual Defendants interfered with Cleaver's handling of J.L.'s employment at Vote.org even the though the Vote.org board had no authority under the bylaws to become involved with purely internal personnel decisions.

159.    As described more fully in this Complaint, the interference by the Individual Defendants undermined Cleaver's authority as CEO, weakened her standing within the organization, and ultimately harmed the organization by creating the circumstances surrounding her unlawful termination and removal.

160.    As described more fully in this Complaint, the Individual Defendants improperly negotiated directly with J.L. for a new separation date and a severance package without Cleaver's knowledge, participation, or authorization, and did so contrary to the organization's bylaws and against the organization's best interests.

COMPLAINT FOR WRONGFUL TERMINATION AND BREACH OF CHARITABLE TRUST

161.    As described more fully in this Complaint, the Individual Defendants specifically authorized – without right – a severance agreement with J.L. that included approximately $40,000 in a lump-sum payout and three months of healthcare coverage under COBRA, even though J.L. had voluntarily resigned his position and had explicitly acknowledged that he was not entitled to a severance payout.

162.    As described more fully in this Complaint, the Individual Defendants did this knowing that Cleaver had not authorized the severance agreement or payout, and indeed that she explicitly had admonished that such an agreement and payout was not proper or in Vote.org's best interests.  The unauthorized severance agreement and payout was in violation of Vote.org's bylaws and caused financial harm to Vote.org.

163.    As described more fully in this Complaint, Cleaver told the Individual Defendants she did not authorize or approve of the severance agreement and payout and that the Individual Defendants had overstepped their authority under the organization's bylaws and were violating their fiduciary obligations to the organization.

164.    As described more fully in this Complaint, Cleaver also made clear she would be reporting the payout to state and federal authorities as an improper expenditure of Vote.org's charitable donations.  In response, the Individual Defendants – working in concert – decided to fire Cleaver in retaliation for her promise to report and with the intent to diminish her credibility and impede her efforts.

165.    As described more fully in this Complaint, the Individual Defendants' hasty termination of Cleaver caused a significant donor bloc representing nearly sixty percent of Vote.org's total contributions to express alarm and demand accountability from the Individual Defendants.

COMPLAINT FOR WRONGFUL TERMINATION AND BREACH OF CHARITABLE TRUST

166.    As described more fully in this Complaint, the Individual Defendants ignored the donors' concerns; as a result, two donors who previously had pledged a $4 million contribution rescinded their commitment, two other donors rescinded commitments of $100,000 each, and another donor removed Vote.org as a beneficiary in his will.  Yet another donor reported the Defendants' conduct to the California Attorney General alleging many of the same claims contained in this Complaint.

167.    This fallout, which the Individual Defendants directly caused through their improper conduct, caused substantial financial and reputational harm to Vote.org.

168.    As described more fully in this Complaint, the Individual Defendants replaced Cleaver – Vote.org's founder and successful leader for more than a decade – with Defendant Hailey, an existing board member, who had insufficient professional experience and a very recent history of financial problems.  This caused further harm to Vote.org and constituted an ongoing breach of the Individual Defendants' fiduciary duties to the organization.

169.    As described more fully in this Complaint, the Individual Defendants undertook no diligence before appointing Hailey as CEO and approved an inflated salary that was not based on an objective market analysis and was substantially higher than Cleaver's pay when she was terminated.  The decision to elevate Hailey to CEO and her excessive salary caused financial and reputational harm to Vote.org and resulted in a private inurement to Hailey.  These actions also constituted a breach of the Individual Defendants' fiduciary duties to the organization.

170.    As described more fully in this Complaint, the Individual Defendants also voted to change the organization's existing bylaws, which previously gave signing authority to the CEO only – including at the time Defendant Davis improperly entered into a severance

COMPLAINT FOR WRONGFUL TERMINATION AND BREACH OF CHARITABLE TRUST

agreement with J.L. – to permit *all* directors to sign documents and checks on behalf of the organization.

171.    As described more fully in this Complaint, this change diluted accountability and oversight and made it easier for fraud and mismanagement to occur, and was a transparent attempt to retroactively authorize the Individual Defendants' improper severance agreement and payout with J.L.  The change in the bylaws caused harm to Vote.org and constituted a breach of the Individual Defendants' fiduciary duties to the organization.

172.    As described more fully in this Complaint, the Individual Defendants and Defendant Leek used Vote.org's operational funds to pay for personal legal representation related to their unauthorized severance agreement with J.L., their unlawful and retaliatory termination of Cleaver, and their ongoing fiduciary misconduct.  This constituted a conflict of interest between the Individual Defendants, Defendant Leek, and Vote.org and an ongoing breach of the Individual Defendants' and Defendant Leek's fiduciary duties to the organization.

173.    As described more fully in this Complaint, in the period following Cleaver's termination and removal as director, the Individual Defendants and Defendant Leek have continued to make decisions that have negatively impacted Vote.org financially and reputationally, including spending hundreds of thousands of dollars of charitable funds on unjustified expenses that do not appear to be programmatic and potentially constitute private inurement to the Individual Defendants and refusing to provide audited financials upon request even though they are legally required to do so.

COMPLAINT FOR WRONGFUL TERMINATION AND BREACH OF CHARITABLE TRUST

## FOURTH CAUSE OF ACTION
### (Against the Individual Defendants and Defendant Leek)

### Conspiracy to Commit Breach of Charitable Trust

174.    The Plaintiff realleges and incorporates by reference each and every paragraph of this Complaint as if set forth here in full.

175.    As described more fully in this Complaint, between on or about June 4, 2019, and August 22, 2019, the Individual Defendants worked in concert to go behind Cleaver's back to offer J.L. an unauthorized severance agreement and payout; to amend Vote.org's bylaws to provide retroactive cover for their unauthorized agreement with J.L.; and to fire Cleaver and remove her as a director.

176.    As described more fully in this Complaint, Defendant Chin called Cleaver at least four times during this period to discuss J.L.'s employment status with Vote.org even though she had no authority over Cleaver's decisions regarding purely internal personnel matters.

177.    As described more fully in this Complaint, Defendant Hailey called Cleaver at least one time during this period to discuss J.L.'s employment status with Vote.org even though she had no authority over Cleaver's decisions regarding purely internal personnel matters.

178.    As described more fully in this Complaint, Defendant Mylaravapu called Cleaver at least one time during this period to discuss J.L.'s employment status with Vote.org even though she had no authority over Cleaver's decisions regarding purely internal personnel matters.

179.    Defendant Balasubramanian called Cleaver at least one time during this period to discuss J.L.'s employment status with Vote.org even though she had no authority over Cleaver's decisions regarding purely internal personnel matters.

COMPLAINT FOR WRONGFUL TERMINATION AND BREACH OF CHARITABLE TRUST

180.    Defendant Davis called Cleaver at least one time during this period to discuss J.L.'s employment status with Vote.org even though she had no authority over Cleaver's decisions regarding purely internal personnel matters.

181.    As described more fully in this Complaint, the Individual Defendants were aware of and actively supported each other's efforts to interfere in Cleaver's decision regarding J.L's employment with Vote.org.

182.    As described more fully in this Complaint, the interference by Hailey, Chin, Mylaravapu, Balasubramanian, and Davis undermined Cleaver's authority as CEO, weakened her standing within the organization, and ultimately harmed the organization by leading to an unauthorized severance agreement and payout with J.L. and creating the circumstances that led to Cleaver's unlawful termination and removal.

183.    As described more fully in this Complaint, on or about June 28, Defendants Davis and Jackel, with the knowledge and approval of the other Individual Defendants, and without Cleaver's knowledge or authorization, prepared and presented to J.L. an unauthorized severance agreement that included approximately $40,000 in a lump-sum payout and three months of healthcare coverage under COBRA worth another $3,000.

184.    As described more fully in this Complaint, Cleaver did not authorize the severance agreement or payout and the Individual Defendants knew this when they offered it to J.L.  The severance agreement was not on Vote.org letterhead and Defendant Davis purported to sign on behalf of the organization despite having no authority to do so.

185.    As described more fully, the unauthorized severance payment was an improper expenditure of Vote.org's charitable funds that caused financial harm to the organization and constituted a breach of the Individual Defendants' fiduciary duties to the organization.

COMPLAINT FOR WRONGFUL TERMINATION AND BREACH OF CHARITABLE TRUST

186.     As described more fully in this Complaint, Cleaver told the Individual Defendants she did not authorize or approve of the severance agreement and payout and that the Individual Defendants had overstepped their authority under the organization's bylaws and were violating their fiduciary obligations to the organization.

187.     As described more fully in this Complaint, Cleaver also told the Individual Defendants she would be reporting the payout to the California Attorney General and the Internal Revenue Service as an improper expenditure of Vote.org's charitable donations, and that she would be reconstituting the full board of directors as a remedial measure.

188.     As described more fully in this Complaint, the Individual Defendants – working in concert – decided to fire Cleaver in retaliation for her promise to report and with the intent to diminish her credibility and impede her efforts.

189.     As described more fully in this Complaint, the Individual Defendants and Defendant Leek used Vote.org's operational funds to pay for personal legal representation related to their unauthorized severance agreement with J.L., their unlawful and retaliatory termination of Cleaver, and their ongoing fiduciary misconduct.  This constituted a conflict of interest between the Individual Defendants, Defendant Leek, and Vote.org, and an ongoing breach of the Individual Defendants' and Defendant Leek's fiduciary duties to the organization.

190.     As described more fully in this Complaint, in the period following Cleaver's termination and removal as director, the Individual Defendants and Defendant Leek have continued to make decisions that have negatively impacted Vote.org financially and reputationally, including spending hundreds of thousands of dollars of charitable funds on unjustified expenses that do not appear to be programmatic and refusing to provide audited financials upon request even though they are legally required to do so.

COMPLAINT FOR WRONGFUL TERMINATION AND BREACH OF CHARITABLE TRUST

## FIFTH CAUSE OF ACTION

**(Against the Individual Defendants and Defendant Leek)**

### Aiding and Abetting Breach of Charitable Trust

191.    The Plaintiff realleges and incorporates by reference each and every paragraph of this Complaint as if set forth here in full.

192.    As described more fully in this Complaint, between on or about June 4, 2019, and August 22, 2019, the Individual Defendants worked in concert to go behind Cleaver's back to offer J.L. an unauthorized severance agreement and payout; to amend Vote.org's bylaws to provide retroactive cover for their unauthorized agreement with J.L.; and to fire Cleaver and remove her as a director.

193.    As described more fully in this Complaint, Defendant Chin called Cleaver at least four times during this period to discuss J.L.'s employment status with Vote.org even though she had no authority over Cleaver's decisions regarding purely internal personnel matters.

194.    As described more fully in this Complaint, Defendant Hailey called Cleaver at least one time during this period to discuss J.L.'s employment status with Vote.org even though she had no authority over Cleaver's decisions regarding purely internal personnel matters.

195.    As described more fully in this Complaint, Defendant Mylaravapu called Cleaver at least one time during this period to discuss J.L.'s employment status with Vote.org even though she had no authority over Cleaver's decisions regarding purely internal personnel matters.

196.    Defendant Balasubramanian called Cleaver at least one time during this period to discuss J.L.'s employment status with Vote.org even though she had no authority over Cleaver's decisions regarding purely internal personnel matters.

COMPLAINT FOR WRONGFUL TERMINATION AND BREACH OF CHARITABLE TRUST

197.    Defendant Davis called Cleaver at least one time during this period to discuss J.L.'s employment status with Vote.org even though she had no authority over Cleaver's decisions regarding purely internal personnel matters.

198.    As described more fully in this Complaint, the Individual Defendants were aware of and actively supported each other's efforts to interfere in Cleaver's decision regarding J.L's employment with Vote.org.

199.    As described more fully in this Complaint, the interference by Hailey, Chin, Mylaravapu, Balasubramanian, and Davis undermined Cleaver's authority as CEO, weakened her standing within the organization, and ultimately harmed the organization by leading to an unauthorized severance agreement and payout with J.L. and creating the circumstances that led to Cleaver's unlawful termination and removal.

200.    As described more fully in this Complaint, on or about June 28, Defendants Davis and Jackel, with the knowledge and approval of the other Individual Defendants, and without Cleaver's knowledge or authorization, prepared and presented to J.L. an unauthorized severance agreement that included approximately $40,000 in a lump-sum payout and three months of healthcare coverage under COBRA worth another $3,000.

201.    As described more fully in this Complaint, Cleaver did not authorize the severance agreement or payout and the Individual Defendants knew this when they offered it to J.L.  The severance agreement was not on Vote.org letterhead and Defendant Davis purported to sign on behalf of the organization despite having no authority to do so.

202.    As described more fully, the unauthorized severance payment was an improper expenditure of Vote.org's charitable funds that caused financial harm to the organization and constituted a breach of the Individual Defendants' fiduciary duties to the organization.

COMPLAINT FOR WRONGFUL TERMINATION AND BREACH OF CHARITABLE TRUST

203.    As described more fully in this Complaint, Cleaver told the Individual Defendants she did not authorize or approve of the severance agreement and payout and that the Individual Defendants had overstepped their authority under the organization's bylaws and were violating their fiduciary obligations to the organization.

204.    As described more fully in this Complaint, Cleaver also told the Individual Defendants she would be reporting the payout to the California Attorney General and the Internal Revenue Service as an improper expenditure of Vote.org's charitable donations, and that she would be reconstituting the full board of directors as a remedial measure.

205.    As described more fully in this Complaint, the Individual Defendants – working in concert – decided to fire Cleaver in retaliation for her promise to report and with the intent to diminish her credibility and impede her efforts.

206.    As described more fully in this Complaint, the Individual Defendants and Defendant Leek used Vote.org's operational funds to pay for personal legal representation related to their unauthorized severance agreement with J.L., their unlawful and retaliatory termination of Cleaver, and their ongoing fiduciary misconduct.  This constituted a conflict of interest between the Individual Defendants, Defendant Leek, and Vote.org, and an ongoing breach of the Individual Defendants' and Defendant Leek's fiduciary duties to the organization.

207.    As described more fully in this Complaint, in the period following Cleaver's termination and removal as director, the Individual Defendants and Defendant Leek have continued to make decisions that have negatively impacted Vote.org financially and reputationally, including spending hundreds of thousands of dollars of charitable funds on unjustified expenses that do not appear to be programmatic and refusing to provide audited financials upon request even though they are legally required to do so.

COMPLAINT FOR WRONGFUL TERMINATION AND BREACH OF CHARITABLE TRUST

## VI.
## RELIEF SOUGHT

WHEREFORE, the Plaintiff respectfully requests this Court to enter judgment in her favor and grant relief against the Defendants as follows:

(1) Order the removal of the Individual Defendants and Defendant Leek as directors of Vote.org for breaching their fiduciary duties to the organization and bar them from reelection;

(2) Order the reinstatement of the Plaintiff as director and CEO of Vote.org, as well as the appointment of new board members to be determined later;

(3) Order the Individual Defendants and Defendant Leek to pay restitution to Vote.org, including lost donations, in an amount to be determined at trial;

(4) Order the Defendants to pay damages to the Plaintiff, including backpay and punitive damages, in an amount to be determined at trial;

(5) Award the Plaintiff reasonable attorneys' fees; and

(6) Grant any additional relief as the Court deems just and proper.

## VII.
## JURY DEMAND

The Plaintiff demands a trial by jury by the maximum number of jurors permitted by law.

Dated: August 18, 2022

Respectfully Submitted,

Philip Andonian (SBN 222243)
CALEBANDONIAN PLLC
1100 H Street, N.W. – Ste. 315
Washington, D.C. 20005
Tel: (202) 953-9850
Fax: (202) 217-4100
Email: phil@calebandonian.com

*Counsel for Plaintiff Debra Cleaver*

44

COMPLAINT FOR WRONGFUL TERMINATION AND BREACH OF CHARITABLE TRUST