# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| VOTE.ORG, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 1:25-cv-01776-SEB-MJD |
| DEBRA CLEAVER, | ) | |
| | ) | |
| *Defendant*. | ) | |
| | ) | |

**OPPOSITION TO CLEAVER'S MOTIONS TO DISMISS**

# TABLE OF CONTENTS

Page


STATEMENT OF THE ISSUES .......... x

ARGUMENT .......... 1

I. This Court Has Personal Jurisdiction Over Cleaver. .......... 1

A. Legal Standard .......... 1

B. Cleaver's intentional and tortious conduct was expressly aimed at Indiana and Cleaver knew her conduct would cause injury to Vote.org in Indiana. .......... 3

1. Mailing Letters to Indiana Residents .......... 3

2. Soliciting Publication in the National Press and Doxing .......... 4

C. The anonymous nature of the Indiana Letter is of no matter. .......... 6

D. This Court's exercise of personal jurisdiction over Cleaver will not offend traditional notions of fair play and substantial justice. .......... 7

II. Venue is Proper in this Court .......... 8

III. Transfer to Another Federal District is Unwarranted .......... 11

A. Legal Standard .......... 11

B. Convenience requires the case remain in this District. .......... 12

C. The interests of justice require the case to remain in this District. .......... 13

IV. The Complaint Properly States Claims for Relief. .......... 14

A. Cleaver's conduct falls within the applicable statutes of limitations. .......... 14

1. The doctrine of continuing harm applies. .......... 14

2. Even if the continuing harm doctrine did not apply, the discovery rule applies. .......... 14

3. Even if the two-year statute of limitations barred defamation claims based on statements made before September 8, 2023, Cleaver's statute of limitations arguments still fail. .......... 15

B. Issue preclusion does not bar Vote.org's complaint. .......... 16

C. The complaint is legally sufficient. .......... 16

D. Vote.org properly states a defamation claim against Cleaver. .......... 17

1. Vote.org's defamation allegations are stated with specificity and are not conclusory. .......... 17




ME1\59294636.v1

2. Vote.org properly states claims for defamation *per se* and defamation *per quod*. ....18

3. Cleaver's false statements of fact are not subject to the opinion privilege. ....21

4. Because Cleaver's statements are false, truth is not an available defense. ....22

5. Cleaver's false statements about Vote.org to various government agencies are not protected by any privilege. ....22

E. Vote.org properly states federal trademark claims against Cleaver. ....24

1. The complaint sufficiently alleges Vote.org's use of its Marks in commerce. ....24

2. The complaint sufficiently alleges that Cleaver's use of Vote.org's Marks is likely to cause confusion. ....26

F. Vote.org properly states tortious interference claims against Cleaver. ....28

G. Vote.org properly states a claim for unfair competition against Cleaver. ....29

H. Vote.org properly states claims based on Cleaver's violations of Indiana's criminal laws. ....30

1. Vote.org alleges violations of Indiana law that occurred in Indiana, giving rise to relief under Indiana's criminal code and Indiana's Crime Victims Relief Act. ....30

2. Using trademarks without permission gives rise to theft and conversion claims. ....30

3. Vote.org states a plausible claim for relief as to criminal mischief. ....31

CONCLUSION ....32

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**


*Abrahams v. Young & Rubicam*,
79 F.3d 234 (2d Cir. 1996) .......... 23, 24

*Abrahams v. Young & Rubicam, Inc.*,
793 F. Supp. 404 (D. Conn. 1992) .......... 24

*Advanced Tactical Ordnance Systems, LLC v. Real Action Paintball, Inc.*,
751 F.3d 796 (7th Cir. 2014) .......... 2

*Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*,
503 F.3d 544 (6th Cir. 2007) .......... 5

*Ajabu v. Hamilton Cnty. Prosecutor's Off.*,
2017 WL 468243 (S.D. Ind. Feb. 2, 2017) .......... 15

*American Diabetes Ass'n v. Nat'l Diabetes Ass'n*,
533 F. Supp. 16 (E.D. Pa. 1981), *aff'd without op.*, 681 F.2d 804 (3rd Cir. 1982) .......... 25, 26

*Applied Ballistics, Inc. v. Sheltered Wings, Inc.*,
2024 WL 1991446 (S.D. Ind. May 6, 2024) .......... 8

*Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for Western Dis. of Texas*,
571 U.S. 49 (2013) .......... 8

*AutoZone, Inc. v. Strick*,
543 F.3d 923 (7th Cir. 2008) .......... 27

*Beckman v. Regina Caeli, Inc.*,
752 F. Supp. 3d 1346, 1371 (N.D. Ga. 2024) .......... 24

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 17

*Bd. of Regents of Univ. of Wis. Sys. v. Phoenix Int'l Software, Inc.*,
653 F.3d 448 (7th Cir. 2011) .......... 27

*Bosley Medical Institute, Inc. v. Kremer*,
403 F.3d 672 (9th Cir. 2005) .......... 26

*Brach Van Houten Holding, Inc. v. Save Brach's Coal. for Chicago*,
856 F. Supp. 472 (N.D. Ill. 1994) .......... 25




ME1\59294636.v1

*Britt Interactive LLC v. A3 Media LLC*,
2017 U.S. Dist. LEXIS 73945 (S.D. Ind. May 16, 2017) ....17

*Burger King v. Rudzewicz*,
471 U.S. 462 (1985) ....7,8

*Calder v. Jones*,
462 U.S. 783 (1984) ....2

*Campbell v. Campbell*,
262 F. Supp. 3d 701, 705-06 (N.D. Ill. 2017) ....4

*Cancer Research Institute. Inc. v. Cancer Research Society, Inc.*,
694 F. Supp. 1051 (S.D.N.Y. 1988) ....26

*Cent. States, Se. & Sw. Areas Pension Fund v. Phencorp Reinsurance Co.*,
440 F.3d 870 (7th Cir. 2006) ....2

*Coffey v. Van Dorn Iron Works*,
796 F.2d 217 (7th Cir. 1986) ....11

*Cottman Transmission Systems, Inc. v. Martino*,
36 F.3d 291, 295 (3d Cir. 1994) ....9

*Deb v. SIRVA, Inc.*,
832 F.3d 800 (7th Cir. 2016) ....8, 9

*Doe v. Lee*,
2019 WL 247536 (N.D. Ill. Jan. 17, 2019) ....10

*Doe v. Netflix, Inc.*,
2023 U.S. Dist. LEXIS 98011 (S.D. Ind. June 6, 2023) ....31

*Doe v. New York*,
2012 WL 4503409 (E.D.N.Y. Sept. 28, 2012) ....10

*Farr v. St. Francis Hosp. & Health Ctrs.*,
2007 WL 2793396 (S.D. Ind. Sept. 26, 2007), *aff'd*, 570 F.3d 829 (7th Cir. 2009) .... 17, 18

*Filippo v. Lee Publications, Inc.*,
485 F. Supp. 2d 969 (N.D. Ind. 2007) ....21

*Erickson v. Pardus*,
551 U.S. 89 (2007) ....21

*Gibson v. City of Chicago*,
910 F.2d 1510 (7th Cir. 1990) ....16

*Greenberg v. Miami Children's Hosp. Research Inst., Inc.*,
208 F. Supp. 2d 918 (N.D. Ill. 2002) ... 3

*Haber Land Co. Ltd., v. Am. Steel City Ind. Leasing, Inc.*,
388 F. Supp. 3d 1050 ... 17

*Hart v. Amazon.com, Inc.*,
191 F. Supp. 3d 809 (N.D. Ill. 2016), *aff'd*, 845 F.3d 802 (7th Cir. 2017) ... 27, 28

*Hildebrand v. Hildebrand*,
736 F. Supp. 1512 (S.D. Ind. 1990) ... 14

*Honest Abe Roofing Franchise, Inc. v. Lesjon Holdings*,
705 F. Supp. 3d 872 (S.D. Ind. 2023) ... 9

*Illinois v. Hemi Grp. LLC*,
622 F.3d 754 (7th Cir. 2010) ... 2

*Internal Med. Nephrology, Inc. v. Fresenius Bio-Med. Applications of Indiana, Inc.*,
2020 WL 13881703 (S.D. Ind. Aug. 28, 2020) ... 20

*Leapers, Inc. v. Trams, Inc.*,
203 F. Supp. 3d 969 (S.D. Ind. 2016) ... 30, 31

*Lunatrex, LLC v. Cafasso*,
674 F. Supp. 2d 1060 (S.D. Ind. 2009) ... 10

*Maremont v. Susan Fredman Design Grp., Ltd*,
772 F. Supp. 2d 967 (N.D. Ill. 2011) ... 28

*Martin v. Wendy's Int'l, Inc.*,
183 F. Supp. 3d 925 (N.D. Ill. 2016) ... 26, 27

*Master Tech Prods., Inc. v. Smith*
181 F. Supp. 2d 910, 914 (N.D. Ill. 2002) ... 9

*McFreen v. Alcatel-Lucent USA, Inc.*,
2014 WL 6997843 (S.D. Ind. Dec. 10, 2014) ... 14, 15

*Millennium Products, Inc. v. Gravity Boarding Co., Inc.*,
127 F. Supp. 2d 974 (N.D. Ill. 2000) ... 11

*Moore v. At&T Latin Am. Corp.*,
177 F. Supp. 2d 785, 789 (N.D. Ill. 2001) ... 9

*Morton Grove Pharms., Inc. v. Nat'l Pediculosis Ass'n, Inc.*,
525 F. Supp. 2d 1039 (N.D. Ill. 2007) ... 11

*NBA Props. v. HANWJH*,
46 F.4th 614 (7th Cir. 2022) .......... 7, 8

*Nelson v. Sandoz Pharm. Corp.*,
288 F.3d 954 (7th Cir. 2002) .......... 15

*Neurology and Pain Management Associates, P.C. v. Bunin*,
2021 WL 230275 (N.D. Ind. 2021) .......... 14

*Noble Roman's, Inc. v. French Baguette, LLC*,
684 F. Supp. 2d 1065 (S.D. Ind. 2010) .......... 1, 2

*Pinello v. Andreas Stihl Ag & Co. KG*,
2008 WL 6332393 (S.D.N.Y. Apr. 21, 2008) .......... 11

*Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*,
338 F.3d 773 (7th Cir. 2003) .......... 2

*Radiance Found., Inc. v. N.A.A.C.P.*,
786 F.3d 316 (4th Cir. 2015) .......... 25

*Robillard v. Knutson*,
2025 WL 1895986 (E.D. Wis. July 9, 2025) .......... *passim*

*Rsch. Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*,
626 F.3d 973 (7th Cir. 2010) .......... 12

*Saeed & Little, LLP v. Casey*,
2024 U.S. Dist. LEXIS 202661 (S.D. Ind. Sep. 24, 2024) .......... 2

*Scotch Whiskey Ass'n v. Barton Distilling Co.*,
489 F.2d 809 (7th Cir. 1973) .......... 25

*Slep-Tone Ent. Corp. v. Coyne*,
41 F. Supp. 3d 707 (N.D. Ill. 2014) .......... 25

*Smith v. Indiana Packers Corp.*,
2020 WL 2468118 (S.D. Ind. May 13, 2020) .......... 9

*Soares v. Meeks*,
2022 WL 18278646 (S.D. Ind. Nov. 21, 2022), *dismissed* 2023 WL 9226943 (7th Cir. Jan. 26, 2023) .......... 16, 17

*Steel Warehouse of Wisconsin, Inc. v. Leach*,
154 F. 3d 712 (7th Cir. 1998) .......... 2

*Steele v. Bulova Watch Co.*,
344 U.S. 280 (1952) .......... 25

*Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)).
487 U.S. 22 (1988)....12

*Tamburo v. Dworkin*,
601 F.3d 693 (7th Cir. 2010)....2

*Taylor & Francis Grp., PLC v. McCue*,
145 F. Supp. 2d 627 (E.D. Pa. 2001)....9, 11

*United We Stand America, Inc. v. United We Stand, America New York, Inc.*,
128 F.3d 86 (2d Cir. 1997)....25

*Vangheluwe v. Got News, LLC*,
365 F. Supp. 3d 850 (E.D. Mich. 2019)....5

*Westward Coach Mfg. Co. v. Ford Motor Co.*,
388 F.2d 627 (7th Cir. 1968)....29

*Wine and Canvas Development, LLC v. Weisser*,
886 F. Supp. 2d 930 (S.D. Ind. 2012)....2, 3

**State Cases**

*Abbott v. Individual Support Home Health Agency, Inc.*
148 N.E.3d 1091, 1093-94 (Ind. Ct. App. 2020)....22, 23

*Boeken v. Philip Morris USA, Inc.*
(2010) 48 Cal. 4th 788....21

*Brockman v. Kravic*,
779 N.E.2d 1250 (Ind. Ct. App. 2002)....3, 4, 8, 13

*Burks v. Rushmore*,
534 N.E.2d 1101 (Ind. 1989)....14

*Dugan v. Mittal Steel USA Inc.*,
929 N.E.2d 184 (Ind. 2010)....19, 20

*Gradus–Pizlo v. Acton*,
964 N.E.2d 865 (Ind. Ct. App. 2012)....14

*Hall v. Shaw*,
147 N.E.3d 394 (Ind. Ct. App. 2020)....23

*Hartman v. Keri*,
883 N.E.2d 774 (Ind. 2008)....23

*Hoffman v. Roberto*,
578 N.E.2d 701 (Ind. Ct. App. 1991)....3

*Kelley v. Tanoos*,
865 N.E.2d 593 (Ind. 2007) .......... 19, 20

*Koger v. State*,
513 N.E.2d 1250 (Ind. Ct. App. 1987) .......... 30

*LinkAmerica Corp. v. Albert*,
857 N.E.2d 961 (Ind. 2006) .......... 3

*Lloyd v. Kuznar*,
180 N.E.3d 353 (Ind. Ct. App. 2021) .......... 22

*Mart v. Hess*,
703 N.E.2d 190, 192-93 (Ind. Ct. App. 1998) .......... 3, 4

*McQueen v. Fayette County Sch. Corp.*,
711 N.E.2d 62 (Ind. Ct. App. 1999) .......... 19, 21

*Mullen v. Cogdell*,
643 N.E.2d 390 (Ind. Ct. App. 1994) .......... 4

*Schrader v. Eli Lilly and Co.*,
639 N.E.2d 258 (Ind. 1994) .......... 19

*Thompson v. Crestbrook Ins. Co.*
(2022) 81 Cal. App. 5th 115 .......... 16

*Winkler v. V.G. Reed & Sons*,
638 N.E.2d 1228 (Ind. 1994) .......... 29

*Yao v. State*,
975 N.E.2d 1273 (Ind. 2012), *as amended* (Jan. 6, 2025) .......... 30, 31, 32

**Federal Statutes**

15 U.S.C. § 1125 .......... 24, 25, 26

15 U.S.C. § 1127 .......... 24, 25

28 U.S.C. § 1391 .......... 8, 9, 10

28 U.S.C. § 1404 .......... 11

28 U.S.C. § 1406 .......... 11

**State Statutes**

I.C. § 35-43-2-1 .......... 30

I.C. § 35-43-1-2 .......... 31

**Rules**

Fed. R. Civ. P. 8 .......... 15, 19, 28

Fed. R. Civ. P. 12 .......... 1, 8, 11, 16, 28

## STATEMENT OF THE ISSUES

1. The Court may exercise personal jurisdiction over Cleaver because her intentional and tortious conduct was expressly aimed at Indiana and Cleaver knew her conduct would cause Vote.org injury in Indiana.

2. Venue is proper in the Southern District of Indiana where a substantial part of the events giving rise to Vote.org's claims and injuries occurred.

3. The Court should retain this case in the Southern District of Indiana—Vote.org's chosen forum and a forum where Cleaver has full access and resources to litigate.

4. Cleaver's conduct falls within the statutory period and is, therefore, not barred by the statute of limitations.

5. Issue preclusion does not bar Vote.org's claims, which are based in whole or in part on conduct *following* the dismissal of Cleaver's prior action against Vote.org.

6. Vote.org's complaint, which details ten separate counts and the exact factual basis for each count, is legally sufficient.

7. Vote.org properly states a claim for defamation because it has pled that Cleaver made disparaging, verifiably-false statements that were not shielded by any privilege.

8. Vote.org properly states a federal trademark claim where it has alleged that Cleaver used its Marks in commerce and in a manner that was likely to cause confusion.

9. Vote.org states a claim of tortious interferences as it has alleged that Cleaver intentionally and unjustifiably interfered with Vote.org's contracts and business relationships.

10. Vote.org states a claim for unfair competition where it has pled that Cleaver has created confusion through the use of Vote.org's Marks and impersonated Vote.org's CEO in communications to Vote.org employees.

11. Vote.org properly states claims based in violations of Indiana's criminal laws.

**OPPOSITION TO CLEAVER'S MOTIONS TO DISMISS**

Plaintiff Vote.org opposes Defendant Debra Cleaver's ("Cleaver") Motions to Dismiss (collectively, the "Motions"). [Def.'s Mot. Dismiss, ECF No. 16, Def.'s Mot. Dismiss, ECF No. 18].

Faced with irrefutable evidence of her deliberate, malicious, and illegal efforts to "destroy" Vote.org and its reputation—by defaming the organization and its individual leaders, and misleading donors, prospective donors, and supporters to lead them away from Vote.org to the fledgling competitor that she created in 2019—Cleaver attempts to justify her actions as, somehow, lawful and beyond the reach of this Court. She uses her Motions to recast herself as the victim in a transparent and calculated attempt to deflect from her own misconduct. Her attempts must fail.

Cleaver's intentional, unrelenting attacks were directed to Vote.org's mission-critical work in all fifty states, including Indiana. Cleaver knew Vote.org's CEO was an Indiana resident, that the CEO's parents and other Vote.org supporters were also Indiana residents, and that her malicious acts would reach them. By purposefully directing her illegal conduct to Indiana to harm Vote.org, Cleaver herself created contacts with Indiana sufficient to establish personal jurisdiction. And because Cleaver makes no true legal argument in opposition to Vote.org's claims, this Court must deny Cleaver's Motion.

**ARGUMENT**

**I. This Court Has Personal Jurisdiction Over Cleaver.**

**A. Legal Standard**

Rule 12(b)(2) governs the dismissal of a claim for lack of jurisdiction over the person or entity. *See* Fed. R. Civ. P. 12(b)(2). "In considering a motion advanced under Rule 12(b), the Court examines the sufficiency of the plaintiff's complaint as opposed to the merits of the lawsuit, and directs dismissal only if it appears to a certainty that the plaintiff can establish no basis for asserting personal jurisdiction." *Noble Roman's, Inc. v. French Baguette, LLC*, 684 F. Supp. 2d 1065, 1069 (S.D.

Ind. 2010) (emphasis added). Federal procedure does not require that a plaintiff's complaint include facts alleging personal jurisdiction. *See Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) (*citing Steel Warehouse of Wisconsin, Inc. v. Leach*, 154 F.3d 712, 715 (7th Cir. 1998)).

"Because the Lanham Act does not have a special federal rule for personal jurisdiction," the Court should "look to the law of the forum for the governing rule," which permits courts to exercise personal jurisdiction to the full extent under the Due Process Clause. *Advanced Tactical Ordnance Systems, LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 800 (7th Cir. 2014), *as corrected* (May 12, 2014). *See also Saeed & Little, LLP v. Casey*, 2024 U.S. Dist. LEXIS 202661, at *8 (S.D. Ind. Sep. 24, 2024) (internal citation omitted). Without an evidentiary hearing, Vote.org "need only make out a prima facie case of personal jurisdiction" and every inference must be drawn in favor of Vote.org. *Purdue Rsch. Found.*, 338 F.3d at 782 (internal citation omitted). *See also Cent. States, Se. & Sw. Areas Pension Fund v. Phencorp Reinsurance Co.*, 440 F.3d 870, 878 (7th Cir. 2006) (internal citations and quotation marks omitted) (stating the same).

This Court has specific personal jurisdiction over Cleaver. For specific personal jurisdiction, "the relevant contacts are those that center on the relations among [Cleaver], the forum, and the litigation" and "the relation between [Cleaver] and the forum must arise out of contacts that [Cleaver herself] creates with the forum." *Advanced Tactical Ordnance Sys., LLC*, 751 F.3d at 801 (cleaned up). When a plaintiff alleges intentional torts, "the inquiry focuses on whether the conduct underlying the claims was purposefully directed at the forum state." *Tamburo v. Dworkin*, 601 F.3d 693, 702 (7th Cir. 2010). *See also Illinois v. Hemi Grp. LLC*, 622 F.3d 754, 758–59 (7th Cir. 2010) (noting the Seventh Circuit has declined to adopt a separate test for internet-based torts stating "the principles articulated [in *Calder v. Jones*, 462 U.S. 783 (1984)] can be applied to cases involving tortious conduct committed over the Internet") (*citing Tamburo*, 601 F.3d at 703)). Importantly, "[a] single contact with the forum state may satisfy the standard of minimum contacts if the contact produces a substantial

connection with the forum state and the connection is related to the lawsuit." *Wine and Canvas Development, LLC v. Weisser*, 886 F. Supp. 2d 930, 939 (S.D. Ind. 2012) (*citing LinkAmerica Corp. v. Albert*, 857 N.E.2d 961, 967 (Ind. 2006)). Vote.org has satisfied its burden.

### B. Cleaver's intentional and tortious conduct was expressly aimed at Indiana and Cleaver knew her conduct would cause injury to Vote.org in Indiana.

#### 1. Mailing Letters to Indiana Residents

First, Vote.org alleges Cleaver mailed a letter infringing on its trademarks to multiple recipients in Indiana, including Vote.org's CEO's parents, the head of an educational organization in Indiana on whose Board of Directors Vote.org's CEO serves, and several employees of that educational organization (the "Indiana Letter"). *See* Compl., ECF No. 1, at ¶¶ 28, 64. Mailing letters to Indiana residents in Indiana containing defamatory statements and trademark infringement is expressly aiming her conduct at Indiana.

"Generally," while "telephonic exchanges and mail correspondence from a foreign defendant outside the forum state to individuals within the forum state are insufficient to provide a basis for the exercise of personal jurisdiction under due process analysis," there is an exception when the telephone exchange or mail correspondence constitutes an intentional tort. *Greenberg v. Miami Children's Hosp. Research Inst., Inc.*, 208 F. Supp. 2d 918, 926 n.6 (N.D. Ill. 2002).

For example, in *Mart v. Hess*, the Indiana Court of Appeals held that a Hawaii resident's mailing and faxing of defamatory and harassing letters to Indiana constituted acts done in Indiana, subjecting the defendant to jurisdiction in Indiana. *See* 703 N.E.2d 190, 192-93 (Ind. Ct. App. 1998). The Court of Appeals determined that, in a defamation action, "the place of the tort is generally considered the place of publication, i.e., where the defamatory material is communicated to a third party." *Id.* at 192 (*citing Hoffman v. Roberto*, 578 N.E.2d 701, 705 (Ind. Ct. App. 1991)). *See also Brockman v. Kravic*, 779 N.E.2d 1250, 1259 (Ind. Ct. App. 2002) (finding personal jurisdiction over psychologist who mailed three letters to Indiana and voluntarily inserted himself in legal proceedings

being conducted in an Indiana court). The Court of Appeals recognized that "the law is clear that an ordinarily insignificant contact with a state becomes constitutionally significant when it gives rise to the claim involved in the lawsuit." *Id.* (*citing Mullen v. Cogdell*, 643 N.E.2d 390, 398 (Ind. Ct. App. 1994)).

Similarly, in *Campbell v. Campbell*, the Northern District of Illinois determined it had personal jurisdiction over a defendant that acted intentionally in composing and sending emails to Illinois. *See* 262 F. Supp. 3d 701, 705–06 (N.D. Ill. 2017). There, the Court stated "[defendant] sent the emails directly to Inland, which is located in Illinois. And defendant knew (or at least intended) that plaintiff would be injured in Illinois," therefore, it could exercise personal jurisdiction over the defendant. *Id.* In the *Campbell* case, one of the emails stated "[a] good fate for you would be panhandling on the streets of Chicago. Then you could compete with rats like you." *Id.* at 706. The *Campbell* Court held the purpose of this message, among others, "was clearly to bring the plaintiff into disrepute with her employer and to get her fired." *Id.*

Here, Cleaver intentionally sent the Indiana Letter with the goal of defaming Vote.org and diverting donations away from Vote.org, either in a malicious attempt to harm Vote.org, or to benefit her own competing organization. *See* Compl, ECF No. 1, at ¶¶ 64, 73, 87. By sending the Indiana Letter, Cleaver expressly aimed her conduct at Indiana, injuring Vote.org. As a result of this conduct, the Court has specific personal jurisdiction over Cleaver in Indiana.

**2. Soliciting Publication in the National Press and Doxing**

Second, as alleged, Cleaver expressly aimed her tortious conduct at Indiana through her solicitations of reporters to write "hit pieces" that she knew would reach Indiana readers. But for Cleaver's premeditated and successful scheme to gin up damaging stories attacking Vote.org, there would have not been any published articles that reached Indiana and its residents with her defamatory statements regarding Vote.org, its CEO, and other leadership, nor would there have



ME1\59294636.v1

been infringement on Vote.org's trademarks in Indiana. *See* Compl., ECF No. 1, at ¶ 15 ("Cleaver contacted a reporter at a national news organization to pitch yet another 'hit piece' against Vote.org and its CEO, in conjunction with her false and defamatory submissions to government agencies.").

But not only did Cleaver ensure a hit piece reached Indiana, she also expressly aimed her conduct towards Vote.org's CEO, an Indiana resident, by "doxing" her and publicizing her contact information. Cleaver's doxing—another one of her harassment tactics— exposes her to personal jurisdiction in Indiana.

"'[D]oxing' (sometimes spelled 'doxxing') is short for 'dropping documents' and "involves 'using the Internet to source out and collect someone's personal and private information and then publicly releasing that information online.'" *Vangheluwe v. Got News, LLC*, 365 F. Supp. 3d 850, 858 (E.D. Mich. 2019) (internal citations omitted). "The 'goal of doxxing is typically retribution, harassment or humiliation'"—which is exactly what Vote.org alleges Cleaver has done and continues to do. *Id.* (internal citations omitted). *See also* Compl., ECF No. 1, at ¶ 60 ("Cleaver doubled down on her smear campaign, which continues to this day."); *id.* at ¶ 67 (the email [sent by Cleaver] was "sent to harass a newly hired employee of Vote.org and disparage the organization"). It is reasonable to infer that Cleaver's statements were intended to cause some action in Indiana against Vote.org, or "catch the eye of those most able to make contact with" Vote.org's CEO, i.e., citizens of Indiana, satisfying the constitutional minimum for personal jurisdiction. *Vangheluwe*, 365 F. Supp. 3d at 861. *See also id.* (*citing Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007) (stating plaintiff's burden for establishing personal jurisdiction, without evidentiary hearing, is "relatively slight") (internal citation omitted)).

In a constituent complaint authored by Cleaver and sent to the offices of the New York Attorney General (the "Constituent Complaint"), which was published by the national media organization in conjunction with the July 2025 hit piece, Cleaver redacted her own contact

information but publicized personal contact information of multiple Vote.org staff and Board members, including Vote.org's CEO.[1] *See* Res. Mot. Judicial Notice, ECF No. 20, at Ex. E, p. 18 (personally naming Vote.org's CEO and stating she lives in the Southern District of Indiana); *id.* at p. 32.

**C. The anonymous nature of the Indiana Letter is of no matter.**

Instead of denying she sent the Indiana Letter, Cleaver attempts to divert attention by arguing that Vote.org cannot establish personal jurisdiction over her pursuant to allegations made upon information and belief. Cleaver avoids the easiest solution: if she did not send the Indiana Letter, she could simply submit an affidavit to this Court under penalty of perjury stating she did not send, or cause the Indiana Letter to be sent. It is telling that Cleaver did not do so. Instead, she cites to nonprecedential case law seeking to terminate this case at the pleadings stage and avoid any accountability for her actions. Taking the complaint in the light most favorable to Vote.org, the allegations regarding the Indiana Letter establish a *prima facie* case for personal jurisdiction.

Specifically, the Indiana Letter contains hallmarks of Cleaver's communications and advances the same themes of Cleaver's years-long campaign to "destroy" Vote.org. The allegations in the Indiana Letter are the exact same allegations Cleaver has made against Vote.org and its board members since the filing of her frivolous employment action in 2023 (the "Dismissed Employment Action."). As one example, the Indiana Letter, sent in 2024, tracks, almost word for word, Cleaver's allegations in the Dismissed Employment Action (from 2023) and Cleaver's statements in the defamatory Constituent Complaint (from 2025). *See* Res. Mot. Judicial Notice, ECF No. 20, Ex. A, at ¶ 168 (Cleaver alleging in Dismissed Employment Action that Vote.org's CEO "had insufficient

---

1 Cleaver's issuance of the Constituent Complaint is not subject to reasonable dispute and Vote.org requests this Court take judicial notice of the same. *See* Res. Mot. Judicial Notice, ECF No. 20. A copy of the Constituent Complaint is publicly available at https://www.politico.com/f/?id=00000198-0b75-d1ba-a7ba-fbf5790d0000 (last accessed December 1, 2025).

professional experience and a very recent history of financial problems."); *id.* at Ex. E, pp. 12-14 (Cleaver's Constituent Complaint alleging "[Vote.org's CEO] Lacks Relevant Prior Professional Experience"). *Compare* Res. Mot. Judicial Notice, ECF No. 20 *with* Compl., ECF No. 1, at Ex. D, p. 1 (Indiana Letter stating "[Vote.org CEO's] past misconduct, combined with her lack of relevant experience, renders [her] unqualified to be CEO of any organization.").

Even if the caselaw Cleaver relies on applied, the almost identical language in the Indiana Letter compared to communications and documents confirmed to have been written by Cleaver demonstrate more than a *prima facie* case that Cleaver authored the Indiana Letter, establishing this Court's personal jurisdiction over her. Alternatively, should the Court wish to further establish personal jurisdiction based on the Indiana Letter, which Cleaver does not dispute is sufficient to establish personal jurisdiction, Vote.org should be permitted to conduct limited, jurisdictional discovery and participate in an evidentiary hearing regarding the sending of the Indiana Letter.

**D. This Court's exercise of personal jurisdiction over Cleaver will not offend traditional notions of fair play and substantial justice.**

Because Cleaver aimed her intentional and tortious conduct at Indiana and Indiana residents, the exercise of personal jurisdiction over her will not offend traditional notions of fair play and substantial justice. Vote.org has established Cleaver's minimum contacts with Indiana, which permits this Court to look at other factors to determine whether asserting personal jurisdiction over her would comport with fair play and substantial justice. *See NBA Props. v. HANWJH*, 46 F.4th 614, 627 (7th Cir. 2022) (*citing Burger King v. Rudzewicz,* 471 U.S. 462, 476 (1985)). These factors include: the burden on Cleaver, Indiana's interest in adjudicating the dispute, Vote.org's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of the underlying dispute, and the shared interest of the several states in furthering fundamental substantive social policies. *See id.* (internal citations omitted). Because Cleaver has purposefully directed her activities at Indiana, it is her burden to "present a compelling case that the

presence of some other considerations would render jurisdiction unreasonable." *Id.* (*citing Burger King*, 471 U.S. at 477). Cleaver has failed to satisfy that burden.

"Indiana has a significant interest in protecting its citizens from defamatory or libelous material that is published in Indiana." *Brockman*, 779 N.E.2d at 1259. Vote.org's interest in obtaining convenient and effective relief in Indiana is strong, particularly because its involvement with Cleaver in Indiana was completely involuntary. Cleaver directed the hit pieces to Indiana, disclosed personal contact information of an Indiana resident, and mailed the Indiana Letter to multiple Indiana residents. Cleaver quickly obtained Indiana counsel, and is well-versed in electronic means of communication. *See* Compl., ECF No. 1, at Exs. A-C. Moreover, Vote.org has staff and contractors nationwide and expects some witnesses will be required to travel regardless of whether this matter was brought in California, Indiana, or Washington, DC. Resolving Vote.org's claims in Indiana would not offend notions of fair play and substantial justice.

## II. Venue is Proper in this Court

There are several reasons why venue is proper in this Court. "The purpose of venue statutes is to prevent litigation from being conducted in a forum that is inconvenient to the defendant or unfair because the forum lacks a sufficient connection with the events giving rise to the claim." *Robillard v. Knutson*, 2025 WL 1895986, at *3 (E.D. Wis. July 9, 2025). "If venue is proper under 28 U.S.C. § 1391, the case may not be dismissed under Rule 12(b)(3)." *Applied Ballistics, Inc. v. Sheltered Wings, Inc.*, 2024 WL 1991446, at *1 (S.D. Ind. May 6, 2024) (*citing Atl. Mar. Const. Co., Inc. v. U.S. Dist. Court for Western Dis. of Texas*, 571 U.S. 49, 56 (2013)). Under Rule 12(b)(3), "the district court assumes the truth of the allegations in the plaintiff's complaint, *unless* contradicted by the defendant's affidavits." *Deb v. SIRVA, Inc.*, 832 F.3d 800, 808 (7th Cir. 2016) (emphasis in original) (internal citation omitted). "Rule 12(b)(3) is a somewhat unique context of dismissal in that a court may look beyond the mere allegations of a complaint as the exclusive basis for its decision." *Id.* (internal

citation omitted). Because Cleaver did not submit any affidavits with her Motion, this Court must assume as true all allegations in Vote.org's complaint. *See id.* Finally, "[v]enue must be proper as to each claim in a multi-count action." *Smith v. Indiana Packers Corp.*, 2020 WL 2468118, at *2 (S.D. Ind. May 13, 2020).

Because the Lanham Act does not have its own venue rules, venue in this case is governed by the general venue statute, 28 U.S.C. § 1391. Pursuant to the general venue statute, a civil action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(2). The "focus of § 1391 is the nexus between the facts and the cause of action, not the defendant and the cause of action." *Robillard*, 2025 WL 1895986, at *3 n.4 (*citing Moore v. At&T Latin Am. Corp.*, 177 F. Supp. 2d 785, 789 (N.D. Ill. 2001)). *See also Master Tech Prods., Inc. v. Smith*, 181 F. Supp. 2d 910, 914 (N.D. Ill. 2002) (stating test for venue under § 1391 "looks not to the defendant's contacts with the forum, but the location of the events giving rise to the cause of action").

For venue to be proper under Section 1391(b), "the majority of the events giving rise to the claim need not have taken place in a particular district, . . . so long as a substantial portion of the events occurred there." *Robillard*, 2025 WL 1895986, at *7 (*citing Honest Abe Roofing Franchise, Inc. v. Lesjon Holdings*, 705 F. Supp. 3d 872, 881 (S.D. Ind. 2023) (internal quotation marks omitted)). Outside of receiving deference, where the plaintiff resides, or in a trademark infringement action, where the trademark resides, is not relevant to a venue analysis. *See Taylor & Francis Grp., PLC v. McCue*, 145 F. Supp. 2d 627, 629–30 (E.D. Pa. 2001) (*citing Cottman Transmission Systems, Inc. v. Martino*, 36 F.3d 291, 295 (3d Cir. 1994)).

As alleged by Vote.org, and unchallenged by Cleaver via affidavit, a substantial part of the events giving rise to Vote.org's claims and injuries occurred in this District. Vote.org alleges Cleaver

intentionally and expressly aimed her tortious conduct at Indiana, defamed Vote.org in Indiana, infringed on Vote.org's trademarks in Indiana, and interfered with Vote.org's relationships in Indiana, including by impersonating and doxing Vote.org's CEO, an Indiana resident. *See* Compl., ECF No. 1, at ¶¶ 64, 67, 68, 69-71. Although Vote.org has felt the effects of Cleaver's vindictive smear campaign throughout the country, a substantial portion of Vote.org's injuries have been felt in Indiana, satisfying the venue test under Section 1391(b). Indeed, venue is proper in this District because the events giving rise to Vote.org's claims, which all involve reputational harm, occurred in Indiana. *See Doe v. Lee*, 2019 WL 247536, at *3 (N.D. Ill. Jan. 17, 2019) ("Venue is proper in the Northern District of Illinois because the events giving rise to Plaintiff's defamation claim, i.e., the reputational harm suffered, occurred in Illinois.") (internal citations and quotation marks omitted). Moreover, to the extent Vote.org was harmed in another federal district, such harm does not preclude venue being proper in this District. While Cleaver argues venue could be proper elsewhere, that does not make venue improper here. *See Lunatrex, LLC v. Cafasso*, 674 F. Supp. 2d 1060, 1070 (S.D. Ind. 2009) ("Here, the plaintiffs' claims arise at least in substantial part from events occurring in Indiana. Defendants correctly point out that venue would also be proper elsewhere . . . The fact that venue also would have been proper in other districts does not make it improper in this one.").

Cleaver appears to conflate the standard for personal jurisdiction with that for venue. She argues Vote.org only alleges that her conduct was related to Indiana in two general ways. *See* Def.'s Br. Supp. Mot. Dismiss, ECF No. 19 at p. 5. While Cleaver's activities are not irrelevant to the venue inquiry, consideration of where the harm to Vote.org occurred is of more importance. *See Doe v. New York*, 2012 WL 4503409, at *4 (E.D.N.Y. Sept. 28, 2012) ("Defendants, however, appear to conflate the statutory standard for venue, which focuses on the location where events occurred, with the standard for personal jurisdiction, which focuses on whether a defendant has made a deliberate contact. . . .") (cleaned up). Moreover, Cleaver argues venue is inappropriate because Vote.org is at

home in California and Washington, DC. But where Vote.org or its trademarks reside is immaterial to the venue inquiry. *See Taylor & Francis Grp., PLC*, 145 F. Supp. 2d at 629–30. Venue is proper in this District and Cleaver's Rule 12(b)(3) motion must be denied.

**III. Transfer to Another Federal District is Unwarranted.**

There is no valid reason to grant Cleaver's request to transfer this case to the Northern District of California. Vote.org's choice of forum should receive the deference to which it is entitled.

**A. Legal Standard**

Regardless of whether transfer is under 28 U.S.C. section 1404 or section 1406, courts will typically consider the same types of factors to determine if transfer is proper. *See Pinello v. Andreas Stihl Ag & Co. KG*, 2008 WL 6332393, at *1 (S.D.N.Y. Apr. 21, 2008) ("Courts generally consider the same factors when deciding whether to transfer pursuant to § 1404(a) or § 1406(a)."). "A plaintiff's choice of forum is generally given substantial weight . . . [u]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Morton Grove Pharms., Inc. v. Nat'l Pediculosis Ass'n, Inc.*, 525 F. Supp. 2d 1039, 1044 (N.D. Ill. 2007). As the party seeking transfer, Cleaver has the burden of demonstrating that a transferee court, here the Northern District of California, is "clearly more convenient." *Millennium Products, Inc. v. Gravity Boarding Co., Inc.*, 127 F. Supp. 2d 974, 980 (N.D. Ill. 2000) (*citing Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-20 (7th Cir. 1986)).

This Court is vested with discretion "to weigh all relevant factors and to determine if, on balance, the action would proceed more expeditiously and the ends of justice be better served if transfer were effected." *Robillard*, 2025 WL 1895986, at *8 (internal citation omitted). "The statutory language guides the court's evaluation of the particular circumstances of each case and is broad enough to allow the court to take into account all factors relevant to convenience and/or the interests of justice. The statute permits a 'flexible and individualized analysis' and affords district

courts the opportunity to look beyond a narrow or rigid set of considerations in their determinations." *Rsch. Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010) (*citing Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)).

"With respect to the convenience evaluation, courts generally consider the availability of and access to witnesses, and each party's access to and distance from resources in each forum" as well as the "location of material events and the relative ease of access to sources of proof." *Id.* "Where the balance of convenience is a close call, merely shifting inconvenience from one party to another is not a sufficient basis for transfer." *Robillard*, 2025 WL 1895986, at *6 (cleaned up). The "interests of justice" factor is a separate element

> that relates to the efficient administration of the court system. For this element, courts look to factors including docket congestion and likely speed to trial in the transferor and potential transferee forums; each court's relative familiarity with the relevant law; the respective desirability of resolving controversies in each locale; and the relationship of each community to the controversy . . . The interest of justice may be determinative, warranting transfer or its denial even where the convenience of the parties and witnesses points toward the opposite result.

*Rsch. Automation, Inc.*, 626 F.3d at 978 (internal citations omitted).

**B. Convenience requires the case remain in this District.**

Consideration of all the convenience factors tips the scales in Vote.org's favor. The Court should give Vote.org's choice of forum the deference to which it is entitled. Cleaver being a California resident does not negate this outcome. The convenience standard concerns whether Cleaver has the access and resources to litigate the case in Indiana. Cleaver does not identify any disparities except that she is an individual and Vote.org is a non-profit corporation. *See* Def.'s Br. Supp. Mot. Dismiss, ECF No. 19, at p. 8. Yet, Cleaver has obtained counsel in Indiana and, in the age of the internet and with modern technological advancements, the access to sources of proof is a neutral factor. *See* Appearances, ECF Nos. 13, 16. *See also Robillard*, 2025 WL 1895986, at *10 (citing case law establishing access to sources of proof is neutral factor considering modern technology).

But even if Cleaver did identify any real disparities, disparities between the parties is not the test. Vote.org interprets Cleaver's unsupported transfer arguments as allegations of mere inconvenience *to her* and "merely shifting inconvenience from one party to another is not a sufficient basis for transfer." *Robillard*, 2025 WL 1895986, at *6 (cleaned up).

As to the remaining factors, as stated above, the material events occurred in Indiana, supporting denial of transfer, and Vote.org expects witnesses to be required from across the country, not just Indiana, rendering the factor neutral at best.

**C. The interests of justice require the case to remain in this District.**

Analysis of the factors supporting the interests of justice element require the case remain in this District. The Southern District of Indiana's uniform case management plan dictates dispositive motions must be filed within 12 months from filing, absent special circumstances. This District's ability to bring the matter to trial expeditiously supports denial of transfer.[2] As to the remaining interests of justice factors, this District is best suited to retain this case. While both the Northern District of California and this District will equally understand Vote.org's Lanham Act claims, this District, as an Indiana court, will have the most familiarity with Indiana law and Vote.org's remaining state law claims. And with intentional torts, Indiana has an overwhelming interest in protecting Hoosiers from defamatory material published in Indiana. *See Brockman*, 779 N.E.2d at 1259 ("Indiana has a significant interest in protecting its citizens from defamatory or libelous material that is published in Indiana."). In sum, Cleaver cannot carry her burden to show transfer is necessary and this case should remain in Indiana.

---

[2] *See* https://www.insd.uscourts.gov/sites/insd/files/Uniform%20CMP%20-%20Revised%2010-7-24.pdf (last accessed December 2, 2025).

## IV. The Complaint Properly States Claims for Relief.

### A. Cleaver's conduct falls within the applicable statutes of limitations.

#### 1. The doctrine of continuing harm applies.

Vote.org alleges a continuous course of conduct including actions that occurred as recently as July 2025. *See* Compl., ECF No. 1, at ¶¶ 66–71. The doctrine of continuing harm

> applies where an entire course of conduct combines to produce an injury. When this doctrine attaches, the statutory limitations period begins to run at the ***end*** of the continuing wrongful act. In order to apply the doctrine, the plaintiff must demonstrate that the alleged injury-producing conduct was of a continuous nature. The doctrine of continuing wrong is not an equitable doctrine; rather, it defines when an act, omission, or neglect took place.

*Gradus–Pizlo v. Acton*, 964 N.E.2d 865, 871 (Ind. Ct. App. 2012) (emphasis added). Therefore, to the extent Cleaver has ceased her tortious conduct, the earliest the statute of limitations could have commenced was July 2025, well within the two-year statutes of limitations cited by Cleaver and only two months before the filing of this lawsuit.

#### 2. Even if the continuing harm doctrine did not apply, the discovery rule applies.

Even if the continuing harm doctrine did not apply, it is axiomatic that a statute of limitations period does not commence until the damage is "ascertained or ascertainable by due diligence." *Hildebrand v. Hildebrand*, 736 F. Supp. 1512, 1517 (S.D. Ind. 1990). *See also Burks v. Rushmore*, 534 N.E.2d 1101, 1104 (Ind. 1989) (applying discovery rule to defamation claims); *Neurology and Pain Management Associates, P.C. v. Bunin*, 2021 WL 230275, at *13 (N.D. Ind. 2021) (concluding that claims "accrued when [plaintiff] became aware of the interference or damage that was caused by the interference"). "The discovery rule provides that the cause of action accrues and the statute of limitations begins to run, when the plaintiff knew or, in the exercise of ordinary diligence, could have discovered, defendant's tortious conduct." *McFreen v. Alcatel-Lucent USA, Inc.*, 2014 WL 6997843, at *2 (S.D. Ind. Dec. 10, 2014) (internal citation and quotation marks omitted).

The discovery rule is objective, but "the date upon which a plaintiff discovered facts which, in the exercise of ordinary diligence, should lead to the discovery of [causation] and the resulting injury, is often a question of fact," which "cannot be resolved by a motion to dismiss." *Id.* (*citing Nelson v. Sandoz Pharm. Corp.*, 288 F.3d 954, 966 (7th Cir. 2002) (cleaned up)).

Vote.org filed a cross-claim against Cleaver in her Dismissed Employment Action on May 9, 2023. *See* Compl., ECF No. 1, at ¶ 58. It is reasonable to conclude that Vote.org did not discover the extent of Cleaver's misconduct until after the filing of the cross-claim and discovery regarding the same. Moreover, Vote.org continued to learn of the strategic and expansive scope of Cleaver's misconduct, including the intentional nature, well into 2024, which, under the discovery rule, would mean the statute of limitations could not have begun running until then. *See* Compl., ECF No. 1, at ¶¶ 61-65 (allegations of Cleaver's egregious misconduct in 2024). Regardless, whether the discovery rule applies is a question of fact, and at this stage the complaint must be viewed in the light most favorable to Vote.org. *See Nelson*, 288 F.3d at 966. *See also Ajabu v. Hamilton Cnty. Prosecutor's Off.*, 2017 WL 468243, at *1 (S.D. Ind. Feb. 2, 2017) ("In ruling on a motion to dismiss, the Court views the complaint in the light most favorable to the plaintiff, accepting all well-pleaded factual allegations as true and drawing all reasonable inferences from those allegations in favor of the plaintiff.").

#### 3. Even if the two-year statute of limitations barred defamation claims based on statements made before September 8, 2023, Cleaver's statute of limitations arguments still fail.

Vote.org specifically alleges facts it believes establishes a claim for defamation under Rule 8. *See* Compl., ECF No. 1, at ¶¶ 75-81. *See also* F. R. Civ. P. 8(a)(2) (requiring a pleading to only contain a "short and plain statement of the claim showing that the pleader is entitled to relief"). Notably, the allegations in paragraphs 78-81 of the complaint all concern conduct after September 8, 2023. Therefore, even if the continuing harm doctrine and the discovery rule did not apply, Cleaver's statute of limitations arguments fail.

**B. Issue preclusion does not bar Vote.org's complaint.**

Cleaver's issue preclusion argument is meritless. As set forth in the complaint, "Cleaver has pursued a personal vendetta against Plaintiff Vote.org and its leadership for six years, ever since she was unanimously replaced by Vote.org's Board of Directors in 2019." Compl., ECF No. 1, at p. 1. Once the Dismissed Employment Action concluded, "Vote.org thought the matter was finished. However, Cleaver doubled down on her smear campaign . . . ." Compl., ECF No. 1, at ¶ 60. Thus, despite Cleaver's ongoing tortious conduct, each and every count of the complaint is based in whole or in part on Cleaver's conduct after the Dismissed Employment Action concluded in May 2024. *See* Compl., ECF No. 1, at ¶¶ 61-71. The dismissal of her prior lawsuit did not confer Cleaver forward-looking immunity from accountability for future unlawful conduct. Issue preclusion may only apply when "identical factual allegations" are at stake. *Thompson v. Crestbrook Ins. Co.* (2022) 81 Cal. App. 5th 115, 126 (internal citation and quotation marks omitted) ("The identical issue requirement addresses whether identical factual allegations are at stake in the two proceedings, not whether the ultimate issues or dispositions are the same."). As set forth in the complaint, Cleaver's misconduct continued years after the Dismissed Employment Action, giving rise to facts that cannot have been at stake in the prior proceeding. She cannot hide behind issue preclusion to avoid liability.

**C. The complaint is legally sufficient.**

"A Rule 12(b)(6) motion 'test[s] the legal sufficiency of the complaint' rather than 'the merits of the lawsuit.'" *Soares v. Meeks*, 2022 WL 18278646, at *1 (S.D. Ind. Nov. 21, 2022), *dismissed* 2023 WL 9226943 (7th Cir. Jan. 26, 2023) (*citing Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990)). Like with a Rule 12(b)(2) motion, this Court must accept all non-conclusory facts in the complaint as true and draw all reasonable inferences for Vote.org. *See id.* (*citing Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007)). This Court may only grant Cleaver's 12(b)(6) motion if the complaint "lacks enough facts to state a claim to relief that is plausible on its face such that [Vote.org's claims] have

not been nudged . . . across the line from conceivable to plausible." *Id.* at *2 (*citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (internal quotation marks omitted)). Vote.org's 185-paragraph, ten-count complaint is replete with facts demonstrating that the organization is entitled to relief after suffering Cleaver's unlawful barrage of attacks for nearly six years. Each count of the complaint properly states a claim for relief. Cleaver's attempt to litigate the factual merits of the complaint at the pleadings stage must be rejected.

### D. Vote.org properly states a defamation claim against Cleaver.

#### 1. Vote.org's defamation allegations are stated with specificity and are not conclusory.

Contrary to Cleaver's arguments, Vote.org's defamation claim satisfies the pleading standard. To properly state a claim for relief for defamation, Vote.org must make factual allegations that plausibly state an entitlement to relief to a degree that rises above the speculative level. *See Haber Land Co. Ltd., v. Am. Steel City Ind. Leasing, Inc.*, 388 F. Supp. 3d 1050, 1052-53 (cleaned up). Cleaver's "alleged defamatory statements need not be recited verbatim in order to satisfy the requirements of notice pleading." *Farr v. St. Francis Hosp. & Health Ctrs.*, 2007 WL 2793396, at *4 (S.D. Ind. Sept. 26, 2007), *aff'd*, 570 F.3d 829 (7th Cir. 2009). Instead, Vote.org must only "provide some context as to when and how the allegedly defamatory statement was made 'to allow the defendant to form an appropriate response.'" *Britt Interactive LLC v. A3 Media LLC*, 2017 U.S. Dist. LEXIS 73945, at *15-16 (S.D. Ind. May 16, 2017) (*citing Farr* 2007 WL 2793396, at *4).

In paragraph 76 of its complaint, Vote.org identifies eight examples of specific defamatory statements made by Cleaver. Each one is supported with context within the complaint that allows Cleaver more than enough information to form a response. Paragraph 76(a) alleges Cleaver falsely stated Vote.org violated one of its Partner Organization's Code of Conduct. *See* Compl., ECF No. 1, at ¶ 76(a). In paragraph 61, Vote.org also alleges Cleaver filed a formal complaint against Vote.org with a Partner Organization full of "false allegations of intimidation, harassment, personal or

political attacks, and personal insults." Compl., ECF No. 1, at ¶¶ 61-62. Unless Cleaver has submitted so many complaints to partner organizations of Vote.org that she cannot remember them, paragraphs 61, 62, and 76(a) should be more than sufficient notice to allow her to form an appropriate response to the complaint. *See Farr*, 2007 WL 2793396, at *4.

Paragraphs 76(e) – (h) allege specific statements Cleaver made in her false and defamatory constituent complaints to the offices of at least four state Attorneys General. *See* Compl., ECF No. 1, at ¶ 76(e) – (h). Paragraph 68 alleges exactly when Cleaver submitted the complaints to the Attorneys General and paragraph 70 alleges Cleaver provided a copy of the Constituent Complaint sent to the office of the New York Attorney General to a reporter. *See* Compl., ECF No. 1, at ¶¶ 68, 70. Although Vote.org did recite some of the defamatory statements from the complaints verbatim, Vote.org was not required to do so and Cleaver is clearly on notice as to where the alleged defamatory statements were made. *See Farr*, 2007 WL 2793396, at *4.

Paragraph 76(d) alleges Cleaver stated Vote.org's plan was to bankrupt Cleaver and ruin her life. *See* Compl., ECF No. 1, at ¶ 76(d). Paragraph 65 provides Cleaver with the exact context of her defamatory statement regarding Vote.org's alleged plans: during her July 2024 appearance on a podcast, widely available online. *See* Compl., ECF No. 1, at ¶ 65. Finally, paragraph 76(a) and (b) outline verbatim statements from the Indiana Letter, attached to the complaint. *See* Compl., ECF No. 1, at Ex. D; *id.* at ¶ 76(b)-(c).

The complaint plausibly states an entitlement to relief that rises above mere speculation. The complaint is properly pled, and has put Cleaver on notice with more than enough information to form an appropriate response. *See Farr*, 2007 WL 2793396, at *4.

### 2. Vote.org properly states claims for defamation *per se* and defamation *per quod.*

As pled in the complaint, Cleaver's false statements are defamation *per se* and defamation *per quod*. *See* Compl., ECF No. 1, at ¶ 77 ("These statements constitute defamation *per se* because they

impute misconduct by Vote.org with respect to its work as a voting registration and [GOTV] organization. Alternatively, the statements constitute defamation *per quod*."). Yet, throughout Cleaver's attempts to invalidate the defamation claim against her, she seems to attach some importance to her belief that her statements do not impute misconduct with respect to Vote.org's work to register and turn out voters.

First, Vote.org is entitled to plead in the alternative, pleading both defamation *per se* and *per qoud*. *See* Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."). Indeed, Vote.org practically must plead in the alternative because the elements of defamation *per se* and *per quod* are the same: "[t]o maintain an action for either per se or per quod defamation the plaintiff must demonstrate (1) a communication with defamatory imputation; (2) malice; (3) publication; and (4) damages." *Kelley v. Tanoos*, 865 N.E.2d 593, 596-97 (Ind. 2007) (*citing Schrader v. Eli Lilly and Co.*, 639 N.E.2d 258, 261 (Ind. 1994)). The only difference is that a communication is defamatory *per se* "if it imputes (1) criminal conduct; (2) a loathsome disease; (3) misconduct in a person's trade, profession, office, or occupation; or (4) sexual misconduct." *Id.* at 596 (internal citation omitted).

Second, extrinsic circumstances—such as Cleaver's termination and concentrated, years' long smear campaign—are only important if the words used in the defamatory statements "are not defamatory in themselves, but become so only when understood in the context of extrinsic evidence," which means the statements are considered defamatory *per quod*. *Dugan v. Mittal Steel USA Inc.,* 929 N.E.2d 184, 186 (Ind. 2010) (*citing McQueen v. Fayette County Sch. Corp.*, 711 N.E.2d 62, 65 (Ind. Ct. App. 1999). Yet, there is no requirement Vote.org plead extrinsic circumstances to support its claim for defamation *per quod*.

Regardless, Cleaver's false statements that Vote.org is being investigated by the IRS for misappropriating funds, has a CEO with a history of past misconduct, violated a partner organization's code of conduct, wanted to ruin someone's life, used donors' dollars under false pretenses, uses funds in a manner unrelated to its charitable purpose, pays its CEO excessive compensation, and is being sued by former employees certainly "impute misconduct in its trade, profession, office, or occupation." Moreover, Cleaver's false and defamatory statements about Vote.org's CEO, in connection with her work duties, also constitute defamation of the organization itself. *See Kelley*, 865 N.E.2d at 596. *See also Internal Med. Nephrology, Inc. v. Fresenius Bio-Med. Applications of Indiana, Inc.*, 2020 WL 13881703, at *7 (S.D. Ind. Aug. 28, 2020) (considering statements regarding the quality of a company's employees as defamatory statements about the company). Each of these false statements suggest Vote.org is misusing charitable funds and directing its focus away from using "technology, data, and strategic outreach to ensure that every eligible American has the information and access they need to cast a ballot and exercise their right to vote." Compl. ECF No. 1, at ¶ 2. *See also Dugan*, 929 N.E.2d at 187 (providing examples of occupational misconduct which qualify as defamation *per se*: "the plaintiff alleges that defendant Komorowski stated to other employees that the plaintiff was 'stealing time, working on a 'scheme with her boss . . . allegedly an attempt to defraud the Company' . . . As statements imputing . . . occupational misconduct, these alleged statements clearly qualify for consideration as defamation per se.") (internal citation omitted).

Therefore, extrinsic circumstances are unnecessary. Regardless, Vote.org's 185-paragraph complaint is replete with examples of extrinsic circumstances which demonstrate the defamatory nature of Cleaver's statements, giving rise to a claim for defamation *per quod*.[3]

---

[3] Notably, Cleaver does not provide any argument in opposition to Vote.org's allegation that Cleaver falsely stated Vote.org was subject to a pending lawsuit. *See* Def.'s Br. Supp. Mot. Dismiss, ECF No. 17, at p. 17. Falsely stating Vote.org is subject to pending litigation suggests misconduct in its mission and otherwise implies a negative connotation regarding Vote.org. And stating a lawsuit is pending when it is not is a categorically false statement.

**3. Cleaver's false statements of fact are not subject to the opinion privilege.**

Cleaver's statements are verifiable as false, and therefore, actionable as defamation. To determine if a statement is actionable defamation or an expression of opinion, "the dispositive question is whether a reasonable fact finder could conclude that the statement implies facts which may be proven true or false." *McQueen*, 711 N.E.2d at 66 (internal citations omitted). *See also Filippo v. Lee Publications, Inc.*, 485 F. Supp. 2d 969, 980 (N.D. Ind. 2007) ("[A] statement that on first blush appears to constitute an opinion may still be legally defamatory if a reasonable fact finder could conclude that the statement implies facts which may be proven true or false.") (cleaned up).

For example, Cleaver's statement that she was wrongfully terminated is readily verifiable as false. Cleaver's claims in the Dismissed Employment Action were dismissed with prejudice, which is considered a final judgment on the merits. *See* Mot. Judicial Notice, ECF No. 15, at Ex. D. *See Boeken v. Philip Morris USA, Inc.*, (2010) 48 Cal. 4th 788, 797 (establishing a dismissal with prejudice is final judgment on merits for purposes of issue and claim preclusion). Moreover, Cleaver's malicious statements regarding Vote.org's CEO's allegedly excessive compensation, Vote.org's alleged plans to bankrupt and sue her and ruin her life, and Vote.org's allegedly fraudulent voter registration goal are more than statements of opinion and are similarly verifiable as false. Extrinsic resources, including those cited by Cleaver in her constituent complaints to Attorneys General, outline factors to assess corporate compensation for nonprofit organizations. *See* Res. Mot. Judicial Notice, ECF No. 20, at Ex. E, p. 18. (alleged compensation tracker appearing to be from "charitableadvisors.org").

And Vote.org's registration of more 18-year-olds in 2025 than in any previous election cycle verifiably demonstrates Vote.org's ongoing efforts to meet its charitable mission. *See* Compl., ECF No. 1, at ¶ 6. It is also reasonable to conclude whether Vote.org had a "plan" to sue, bankrupt, and ruin Cleaver's life is verifiable as true or false. Unlike individuals, whose internal thoughts and

predictions cannot be verified as true or false, Vote.org's "intentions" are well documented in its corporate records, where it is evident Vote.org had no "plans" to ruin Cleaver's life.

### 4. Because Cleaver's statements are false, truth is not an available defense.

In its complaint, Vote.org alleges "Cleaver falsely and maliciously accused [Vote.org] of fraud because it failed to meet an ambitious voter registration goal in 2024" and that Cleaver falsely stated that "Vote.org's ambitious goal to register eight million voters in 2024 was 'deception, calculated and sustained' using 'public trust and charitable status to raise millions of dollars under false pretenses.'" Compl., ECF No. 1, at ¶¶ 68(a) and 77(e). The defamatory statement is not about the ultimate number of voters registered by Vote.org in 2024; the defamatory statement is that Cleaver brazenly accused Vote.org of fraud and deception *because* Vote.org did not meet its ambitious and admirable voter registration goal in 2024. While, "[t]ruth is an absolute defense to a claim of defamation," there is nothing true in Cleaver's statements implying fraudulent conduct and her reliance on the truth defense is misplaced. *Lloyd v. Kuznar*, 180 N.E.3d 353, 365 (Ind. Ct. App. 2021).

### 5. Cleaver's false statements about Vote.org to various government agencies are not protected by any privilege.

Cleaver's false statements about Vote.org to Attorneys General and the Internal Revenue Service ("IRS") were not made in a judicial or quasi-judicial context, and as such are not entitled to any related privilege, and the case law cited by Cleaver is inapposite.

Cleaver first cites to *Abbott v. Individual Support Home Health Agency, Inc.* for the proposition that complaints made to a state agency are statements made in a quasi-judicial context. In *Abbott*, the Indiana Court of Appeals concluded that complaints made by home health care employees as a part of a formal procedure to the Indiana State Department of Health were protected by absolute privilege. *See* 148 N.E.3d 1091, 1093-94 (Ind. Ct. App. 2020). In making its decision, the Court of Appeals emphasized that employees were mandated to make such complaints and faced significant



ME1\59294636.v1

deterrents for making false complaints, as well as the critical need to protect vulnerable individuals suffering from illness or disability. *Id.* at 1097. The *Abbott* Court further noted that those complaints were part of a formal process that initiated an investigation with the opportunity for a response. *Id.*

Unlike in *Abbott*, no formal process commenced with the filing of Cleaver's unsworn constituent complaints and, indeed, there are no deterrents, other than litigation, for her making false complaints. If so, this lawsuit would not be necessary. Like citizens reporting suspected criminal activity to law enforcement, who only "enjoy only a qualified privilege, which subjects them to the risk of retaliatory civil litigation for malicious or unfounded charges," Cleaver did not commence a formal process or subject herself to any real deterrents for making false complaints. *See Hartman v. Keri*, 883 N.E.2d 774, 778 (Ind. 2008) (internal citation and quotation marks omitted). While Cleaver believes, incorrectly, that her baseless packets sent to governmental agencies *created* a formal process, there is no such process initiated simply by sending documents to a state attorney general or the IRS—and then immediately sending those same documents to the national press.[4] Therefore, there is significantly less concern here with "preserving the due administration of justice." *Id.* at 777 (stating reason for absolute privilege is "the necessity of preserving the due administration of justice") (internal citation and quotation marks omitted).

Finally, Cleaver contends that the Second Circuit's decision in *Abrahams v. Young & Rubicam*, 79 F.3d 234, 240 (2d Cir. 1996) indicates that complaints made to the IRS are protected by the absolute privilege. However, in that case, the Second Circuit affirmed the decision of the district court, which concluded that statements made to the Grand Jury, United States Attorney's Office, and the IRS during formal judicial proceedings were protected by the absolute privilege rule. *See*

---

[4] Cleaver cites to *Hall v. Shaw*, 147 N.E.3d 394, 400–01 (Ind. Ct. App. 2020) for the proposition that consumer complaints made to the Indiana Attorney General's office are protected by absolute immunity. While this is the holding of the *Hall* decision, the Indiana Court of Appeals had no contrary arguments to consider, because the plaintiff did not dispute the lower court's decision concluding the same. *Id.*

*generally id. See also Abrahams v. Young & Rubicam, Inc.*, 793 F. Supp. 404, 407 (D. Conn. 1992). Notably, the Second Circuit did not assign the same absolute privilege to the defendant's statements made when initially engaging in informal discussions with those same bodies. *See Abrahams*, 79 F.3d at 240. Thus Cleaver's reliance on *Abrahams* is misguided.

Moreover, other courts have explicitly held statements to the IRS are not subject to absolute privilege. In *Beckman v. Regina Caeli, Inc.*, the Court determined statements made to the IRS could not be characterized "as being made in official court documents or within acts of legal process," especially when there were no allegations that "[the defendant] filed the allegedly false tax documents in connection with a judicial or even a quasi-judicial proceeding." 752 F. Supp. 3d 1346, 1371 (N.D. Ga. 2024). Like the statements made in *Beckman*, there are no allegations Cleaver made her defamatory statements to the IRS in connection with any formal proceeding. Instead, Vote.org alleges Cleaver made an informal constituent complaint to the IRS. *See* Compl., ECF No. 1, at ¶ 68. Therefore, no privilege applies to Cleaver's statements made to the Attorneys General and the IRS.

### E. Vote.org properly states federal trademark claims against Cleaver.

#### 1. The complaint sufficiently alleges Vote.org's use of its Marks in commerce.

Vote.org's Lanham Act claims are based on Cleaver's use of "Vote.org" and the Vote.org logo (collectively, "Vote.org's Marks") in the Indiana Letter. Vote.org has used its Marks for several years in commerce—in connection with goods, services, and Vote.org's overall charitable mission, including the solicitation of donations. *See* Compl., ECF No. 1, at ¶¶ 32, 64. *See also id.* at Ex. D.

To state a claim for relief under Section 43(a) of the Lanham Act, Vote.org must allege Cleaver used Vote.org's Marks in commerce. *See* 15 U.S.C. § 1125(a)(1)(A) (requiring trademark to be used in commerce "in connection with . . . goods or services" to bring Section 43(a) claim). For the purposes of Section 43(a) claim, a trademark shall be deemed to be used in commerce or "services when [the mark] is used or displayed in the sale or advertising of services and the services

are rendered in commerce . . . ." 15 U.S.C. § 1127. "The Supreme Court has held that the term 'use in commerce' should be construed broadly '[i]n the light of the broad jurisdictional grant in the Lanham Act.'" *Slep-Tone Ent. Corp. v. Coyne*, 41 F. Supp. 3d 707, 713 (N.D. Ill. 2014) (*citing Steele v. Bulova Watch Co.*, 344 U.S. 280, 286 (1952)). *See also Scotch Whiskey Ass'n v. Barton Distilling Co.*, 489 F.2d 809, 812 (7th Cir. 1973) (noting that *Steele* "upheld a broad concept of 'commerce'"). Although Section 43(a) refers to sales of goods and services literally, the "use in connection with the sale of goods and services" requirement of the Lanham Act does not require any actual sale of goods and services. *See United We Stand America, Inc. v. United We Stand, America New York, Inc.*, 128 F.3d 86, 90 (2d Cir. 1997) (holding the same) (*citing* 15 U.S.C. § 1127).

The complaint plainly establishes Cleaver used Vote.org's Marks in connection with services rendered in commerce. Cleaver's use of Vote.org's Marks in the Indiana Letter was "designed to dilute the Vote.org Marks, cause confusion or mistake, deceive, and/or divert donations and contributions from Vote.org to Cleaver and/or Cleaver's competing organization and/or to pass off Cleaver's new entity as that of Vote.org" in connection with goods and services. Compl, ECF No. 1, at ¶ 87; *id.* at ¶ 86 (alleging Cleaver used Vote.org's Marks in commerce and in connection with goods and services).

Diverting donations or contributions, as Vote.org alleges, or the loss thereof, is considered a commercial use so long as there is "a sufficient nexus between the unauthorized use of the protected mark and clear transactional activity." *Radiance Found., Inc. v. N.A.A.C.P.*, 786 F.3d 316, 326–27 (4th Cir. 2015). *See also Brach Van Houten Holding, Inc. v. Save Brach's Coal. for Chicago,* 856 F. Supp. 472, 475–76 (N.D. Ill. 1994) (concluding solicitation of donations, among other things, constitute "services" under the Lanham Act giving rise to Section 43(a) claim); *American Diabetes Ass'n v. Nat'l Diabetes Ass'n*, 533 F. Supp. 16 (E.D. Pa. 1981) (enjoining defendant's use of a confusingly similar name where defendant's activity in commerce was the solicitation of donations), *aff'd without op.*, 681

F.2d 804 (3rd Cir. 1982); *Cancer Research Institute. Inc. v. Cancer Research Society, Inc.*, 694 F. Supp. 1051 (S.D.N.Y. 1988) (enjoining defendant from using plaintiff's name for soliciting funds for cancer research after concluding defendant's name was confusingly similar). By discussing her allegedly wrongful termination, accusing Vote.org of mismanagement, and stating Vote.org is "no longer" a "respectable, mission driven organization," Cleaver used Vote.org's Marks as part of her efforts to divert donations away from Vote.org and to her own competing organization, satisfying the Lanham Act's use-in-commerce requirement. Compl., ECF No. 1, at Ex. D.

In a cursory attempt to limit the effects of the Indiana Letter to merely being a criticism of Vote.org incapable of giving rise to a Section 43(A) claim, Cleaver cites to nonbinding precedent from the Ninth Circuit. *See* Def.'s Br. Supp. Mot. Dismiss, ECF No. 17, at p. 7 (*citing Bosley Medical Institute, Inc. v. Kremer*, 403 F.3d 672, 677 (9th Cir. 2005)). As cited by Cleaver, *Bosley* stands for the limited proposition that "noncommercial use of a trademark as the domain name of a website—the subject of which is consumer commentary about the products and services represented by the mark—does not constitute infringement under the Lanham Act." *Bosley Medical Institute, Inc.* 403 F.3d at 674.

*Bosely* is inapposite. First, this is distinguishable from the present case where Vote.org is attempting to solicit donations to further its charitable mission and not alleging Cleaver misused Vote.org's domain name. Second, by using Vote.org's marks in the Indiana Letter, Cleaver has done more than simply be critical of Vote.org, as Kremer was of Bosley on his website. Instead, Cleaver has capitalized on Vote.org's years of good will created in Vote.org's Marks to "divert donations and contributions" away from Vote.org, giving rise to a Section 43(a) claim. Compl, ECF No. 1, at ¶ 87.

#### 2. The complaint sufficiently alleges that Cleaver's use of Vote.org's Marks is likely to cause confusion.

There are two bases for liability under Section 43(a) of the Lanham Act: false association or endorsement under subsection (A) and false representations in advertising under subsection (B). *See*



ME1\59294636.v1

*Martin v. Wendy's Int'l, Inc.*, 183 F. Supp. 3d 925, 931 (N.D. Ill. 2016). To state a claim for false endorsement/association under subsection (A), Vote.org must allege that Cleaver's use of Vote.org's Marks in the Indiana Letter likely caused confusion suggesting that Vote.org endorsed Cleaver's statements in the Indiana Letter. "The inquiry must focus on confusion by the customer." *Id.* at 935 (*citing Bd. of Regents of Univ. of Wis. Sys. v. Phoenix Int'l Software, Inc.*, 653 F.3d 448, 455 (7th Cir. 2011)).

To determine whether consumers are likely to be confused, the Court must analyze seven factors: (1) the similarity between the marks in appearance and suggestion; (2) the similarity of the products; (3) the area and manner of concurrent use; (4) the degree and care likely to be exercised by consumers; (5) the strength of the plaintiff's mark; (6) any actual confusion; and (7) the intent of the defendant to "palm off" his product as that of another. *AutoZone, Inc. v. Strick*, 543 F.3d 923, 929 (7th Cir. 2008). "No single factor is dispositive. Courts may assign varying weight to each of the factors depending on the facts presented, though usually the similarity of the marks, the defendant's intent, and actual confusion are particularly important" and the determination is "ultimately a question of fact." *Id.* (internal citation omitted).

A commonsense reading of the complaint, in a light most favorable to Vote.org, demonstrates significant confusion and that the Indiana Letter is more than a mere criticism of Vote.org. The Indiana Letter goes further: it is inherently confusing by including Vote.org's Marks to attract the reader's attention before finally appearing to be from "[f]ormer Vote.org [s]upporters." Compl., ECF No. 1, at Ex. D. Because confusion in sponsorship and approval is key in a false endorsement case, Vote.org satisfies its pleading burden and plausibly states a claim for relief based on the confusion caused by the use of the Vote.org Marks in the Indiana Letter. *See Hart v. Amazon.com, Inc.*, 191 F. Supp. 3d 809, 819 (N.D. Ill. 2016), *aff'd*, 845 F.3d 802 (7th Cir. 2017) (internal citation omitted) (stating "whether defendant's use of the mark to identify its goods or

services is likely to create confusion concerning the plaintiff's sponsorship or approval of those goods or services").

The Northern District of Illinois has considered a similar fact pattern. In *Maremont v. Susan Fredman Design Group, Limited*, the plaintiff, a professional interior designer, alleged she became well-known for her services by creating a personal following on social media. *See Maremont v. Susan Fredman Design Grp., Ltd*, 772 F. Supp. 2d 967, 971 (N.D. Ill. 2011). The *Maremont* plaintiff alleged defendant wrongly used her name and likeness by sharing social media posts that appeared to be authored by plaintiff. *See id.* The Northern District of Illinois denied defendant's motion to dismiss, concluding plaintiff properly stated a claim for relief for false endorsement because

> construing the facts and all reasonable inferences in Maremont's favor, she alleges that she was engaged in the commercial marketing of her skills when defendants wrongfully used her name and likeness by authoring Tweets and Posts under her name . . . As such, Maremont alleges a commercial injury based on Defendants' deceptive use of her name and likeliness . . . Therefore, Maremont has sufficiently alleged a false endorsement claim under the Lanham Act, and thus the Court denies Defendants' motion to dismiss Count I.

*Id.* Cleaver's alleged conduct is no different. In this case, Cleaver authored the Indiana Letter, a letter that appears to be from Vote.org or from within Vote.org, using Vote.org's letterhead. *See* Compl., ECF No. 1, at Ex. D. Vote.org alleges the Indiana Letter caused confusion and ultimately caused Vote.org significant harm by diverting donations away from Vote.org during a critical election year. *See* Compl, ECF No. 1, at ¶ 98. Therefore, Vote.org has satisfied its pleading obligations as to its false endorsement claim.

### F. Vote.org properly states tortious interference claims against Cleaver.

Vote.org states claims for relief as to tortious interference by Cleaver. Vote.org alleges intentional, unjustified interference by Cleaver with Vote.org's contracts and business relationships, satisfying both Rules 8 and 12(b)(6). *See* Compl., ECF No. 1, at ¶ 109 ("Cleaver intentionally induced various employees and business partners to breach their contractual relationships with Vote.org by

making false and defamatory statements regarding Vote.org"); *id.* at ¶ 117 ("Cleaver intentionally interfered with Vote.org's economic relationships with actual and potential donors by making false and defamatory statements regarding Vote.org. Cleaver's conduct was intentionally designed to disrupt Vote.org's business relationships with actual and potential donors."). These allegations of Cleaver's years-long campaign are more than attempted tortious interference, they explicitly outline Cleaver's malicious and intentional conduct and how it has affected Vote.org.

Cleaver claims Vote.org only alleges an "attempted" tortious interference claim, which does not exist under Indiana law. Cleaver miscites her only legal support, *Winkler v. V.G. Reed & Sons*, a 1994 Indiana Supreme Court case. *See* Def.'s Br. Supp. Mot. Dismiss, ECF No. 17, at p. 24 (*citing Winkler v. V.G. Reed & Sons*, 638 N.E.2d 1228 (Ind. 1994)). *Winkler* is of no support because Vote.org alleges more than attempted tortious interference, plausibly stating claims for relief. Indeed, *Winkler* actually states "Indiana has long recognized that intentional interference with a contract is an actionable tort, and includes *any* intentional, unjustified interference by third parties with a[] . . . contract." *Winkler,* 638 N.E.2d at 1234 (emphasis added) (internal citation omitted).[5] This is exactly what Vote.org alleges.

### G. Vote.org properly states a claim for unfair competition against Cleaver.

In Indiana, unfair competition is defined as an "attempt to create confusion concerning the source of the unfair competitor's goods," which is "always a question of fact." *Westward Coach Mfg. Co. v. Ford Motor Co.*, 388 F.2d 627, 633 (7th Cir. 1968) (internal citations omitted). As stated earlier in Section E(2), Vote.org has sufficiently alleged Cleaver has created confusion through her use of Vote.org's Marks, giving rise to both trademark and unfair competition claims.

[5] As to tortious interference, *Winkler* affirmed the lower court's grant of summary judgment in favor of the defendant because plaintiff failed to prove absence of justification, not because "mere attempts at inducement, even if improper" are insufficient to state a claim for relief. Def.'s Br. Supp. Mot. Dismiss, ECF No. 17, at p. 24. *See also* Winkler, 638 N.E.2d at 1236.

Vote.org alleges Cleaver has further created confusion by impersonating Vote.org's CEO in communications to Vote.org's employees. *See* Compl., ECF No. 1, at ¶ 124 (alleging Cleaver caused confusion by "impersonating Vote.org in an email harassing a newly hired employee").[6] Because the same analysis applies to an email appearing to come from "votedotorg" and the Indiana Letter with Vote.org's letterhead on it, for the reasons set forth in Section I(C), Cleaver's motion to dismiss the unfair competition claim must be denied.

**H. Vote.org properly states claims based on Cleaver's violations of Indiana's criminal laws.**

**1. Vote.org alleges violations of Indiana law that occurred in Indiana, giving rise to relief under Indiana's criminal code and Indiana's Crime Victims Relief Act.**

*Koger v. State*, cited by Cleaver, explains a basic premise: to give rise to Indiana criminal liability, the crime must have taken place in Indiana. *See Koger v. State*, 513 N.E.2d 1250, 1257 (Ind. Ct. App. 1987) ("I.C. 35-43-2-1 prohibits burglaries committed in Indiana; it does not prohibit burglaries committed outside our state's boundaries."). Although *Koger* does not explicitly consider Crime Victim's Relief Act ("CVRA") liability, it logically follows that if the crime took place outside Indiana, there can be no Indiana criminal liability, and therefore no liability under Indiana's CVRA. Vote.org does not dispute *Koger's* basic premise. However, because Cleaver engaged in criminal activity in Indiana, Cleaver is subject to both criminal and CVRA liability in Indiana.

**2. Using trademarks without permission gives rise to theft and conversion claims.**

The Indiana Supreme Court has conclusively determined trademarks can be subject to theft and conversion claims. In *Yao v. State*, the Indiana Supreme Court ruled the "right to sell products with a distinctive appearance is a property right which can be 'encumbered'" under Indiana's

---

[6] Notably, as with the Indiana Letter, Cleaver does not deny using the "votedogorg@proton.me" to send the harassing email. *See* Def.'s Br. Supp. Mot. Dismiss, ECF No. 17, at pp. 26-27.

definition of exertion of control for the purposes of a theft and conversion claim. *Leapers, Inc. v. Trams, Inc.*, 203 F. Supp. 3d 969, 975 (S.D. Ind. 2016) (*citing Yao v. State*, 975 N.E.2d 1273, 1281 (Ind. 2012), *as amended* (Jan. 6, 2025)). Relying on *Yao*, this Court then rejected the exact same arguments Cleaver makes today. *See Leapers, Inc.*, 203 F. Supp. 3d at 975 ("We adopt the *Yao* Court's conclusion as precedential and controlling and according **DENY** Defendants' motion to dismiss Counts One (Conversion) and Four (Theft).") (emphasis in original).

The *Doe v. Netflix* decision, relied upon by Cleaver, is distinguishable. *See Doe v. Netflix, Inc.*, 2023 U.S. Dist. LEXIS 98011, at *29 (S.D. Ind. June 6, 2023). In *Doe*, this Court concluded the unauthorized use of individual's names in a documentary does not constitute an exertion of control over each of those plaintiffs' "identity, name, image, likeness, and story." *Id.* (internal citation omitted). In contrast, Vote.org alleges Cleaver used Vote.org's name and likeness specifically in exclusion of Vote.org's rights in order to divert donations and contributions from Vote.org to Cleaver or her competing organization. *See* Compl, ECF No. 1, at ¶ 87. By attempting to divert donations away from Vote.org, Cleaver's use of Vote.org's Marks was in defiance of Vote.org's rights and constitutes the type of unauthorized control recognized in *Yao* which states a claim for relief for theft and conversion.

**3. Vote.org states a plausible claim for relief as to criminal mischief.**

Lastly, Vote.org explicitly alleges Cleaver "damaged or defaced Vote.org's property" via her unauthorized use of Vote.org's Marks for her "own benefit and to pursue a personal vendetta" against Vote.org. Compl., ECF No. 1, at ¶ 176. Under Indiana law, criminal mischief is not limited to damage to real property. Under Indiana Code section 35-43-1-2, an individual can commit criminal mischief, a level 6 felony, if damage causes a "substantial interruption or impairment of utility service" or if damage occurs to specific personal property. Ind. Code § 35-43-1-2(a)(2)(B). *See id.* § 35-43-1-2(b)(6). As explained above, although not tangible personal property, the Indiana

Supreme Court has recognized property rights in trademarks, finding such property may be encumbered. *See Yao*, 975 N.E.2d at 1281. If such trademarks may be encumbered, it follows that trademarks may be damaged or defaced in such a manner as to support a claim for criminal mischief.

## CONCLUSION

For the foregoing reasons, Defendant Debra Cleaver's Motions to Dismiss must be denied.

Dated: December 8, 2025

Respectfully submitted,

PLAINTIFF,
VOTE.ORG

By McCARTER & ENGLISH, LLP

*/s/ Zachary A. Myers*
Zachary A. Myers
Kaylin O. Cook

10 E. Main Street, Suite 200
Carmel, IN 46032
T: (317) 810-5510
F: (317) 602-1698
zmyers@mccarter.com
kcook@mccarter.com

*/s/ Vanessa Roberts Avery*
Vanessa Roberts Avery

185 Asylum Street
Hartford, CT 06103
T: (860) 275-6718
F: (317) 602-1689
vavery@mccarter.com

*Its Attorneys*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 8, 2025, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

*/s/ Vanessa Roberts Avery*
Vanessa Roberts Avery