**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| VOTE.ORG, | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| v. | ) |
| | ) No. <u>1:25-cv-01776-SEB-MJD</u> |
| DEBRA CLEAVER, | ) |
| | ) |
| *Defendant.* | ) |

**DEFENDANT'S REPLY SUPPORTING DISMISSAL UNDER F.R.C.P. 12(b)(2) AND (6)**

Defendant Debra Cleaver hereby submits her Reply, and states as follows:

**I.      This Court Does Not Have Personal Jurisdiction Over Cleaver**

*A. Alleged Solicitation of Nationwide Publication, with Theoretical Impact in Indiana*

First, as discussed in Cleaver's Motion, the Complaint alleges this Court has personal jurisdiction over Cleaver because she allegedly made "defamatory statements regarding Vote.org and its CEO with the intent of inflicting reputational harm on Vote.org in Indiana and elsewhere." (Dkt. 1 ¶ 28.) But as Cleaver's Motion explains, this is insufficient; Vote.org would have to allege facts showing Cleaver herself engaged in intentional conduct expressly aimed at Indiana. Instead, this allegation simply asserts that third parties, not Cleaver, published the statements, and that the statements theoretically might have been seen by Indiana residents.

Vote.org does not address this argument, other than to re-assert a brief, conclusory statement that Cleaver solicited reports to write "hit pieces" that Cleaver purportedly "knew" would reach Indiana readers – without saying how Cleaver "knew" that would happen, and without otherwise explaining how a third-party's decision to publish its own article somehow means Cleaver (rather than the third-party) intentionally aimed conduct at Indiana. (Dkt. 25 at 4.) Although

1

Cleaver cited cases showing that making a statement with a potential nationwide reach is not sufficient to establish personal jurisdiction, Vote.org does not respond to those cases, and fails to cite opposing cases. In short, Vote.org fails to satisfy its burden based on these statements.

### B. The Anonymous Letter is Not Sufficient to Establish Personal Jurisdiction

As Cleaver's Motion explains, the only other basis for personal jurisdiction asserted in the Complaint is the allegation, made purely on information and belief, that Cleaver was the one who prepared an alleged anonymous letter and sent it to Indiana residents. Cleaver's Motion explains that a bare, speculative allegation, made on information and belief, is insufficient to establish personal jurisdiction. Vote.org again fails to respond to the cases supporting this proposition, nor does Vote.org cite to any contrary authority. Vote.org thus concedes that an allegation made on information and belief is insufficient to establish personal jurisdiction.[1]

Instead, Vote.org argues Cleaver should be treated as the author of the anonymous letter because the letter allegedly "contains the hallmarks of Cleaver's communications," as the letter asserts some of the same criticisms of Vote.org that Cleaver allegedly has made elsewhere. (Dkt. 25 at 6.) But Vote.org itself alleges it is a very prominent get-out-the-vote organization, with "over 87 million voter outreach touchpoints" and over 40 million visits to its website in 2024. (Dkt. 1 ¶ 5.) If Vote.org is so prominent, then it is hardly surprising Vote.org faces various critics with similar concerns. None of that entitles Vote.org to hale Cleaver into Court in Indiana, based solely on speculation that Cleaver must be the one responsible for the anonymous letter.

To bolster its argument, Vote.org also asks the Court to draw an improper inference –

---

[1] Rather than addressing whether personal jurisdiction can be based on allegations made "on information and belief," Vote.org instead simply discusses cases in which there was no dispute the defendant had engaged in specific ties to the forum state. Vote.org's cited cases also involved more direct contact with the forum state than would be present here. In each, it was clear *who* sent the defamatory letters/messages, *where* exactly they were sent, and the fact that the statements were made exclusively and specifically to the forum state was not based on "information and belief." Jurisdiction was established by concrete facts, not speculation. Those cases thus are not relevant here.

namely, Vote.org argues that because Cleaver could have provided an affidavit denying she sent the letter, this Court should infer from the lack of an affidavit that she is responsible for the letter. (Dkt. 25 at 6.) But that argument improperly attempts to shift the burden of proof onto Cleaver. It is *Plaintiff's* burden – not Cleaver's – to establish a prima facie case for personal jurisdiction. *See Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 n.11 (7th Cir. 2003). Vote.org cannot satisfy that burden by urging the Court to draw an improper negative inference from the absence of an affidavit from Cleaver. Neither this Court nor Cleaver are required to fill evidentiary gaps in Plaintiff's case. Vote.org has failed to meet its burden of establishing that Indiana may exercise personal jurisdiction over Cleaver.

### C.  Plaintiff's New "Doxing" Theory Does Not Establish Personal Jurisdiction

Perhaps realizing its asserted bases for personal jurisdiction are inadequate, Vote.org's Opposition asserts a new theory for personal jurisdiction over Cleaver. Specifically, Vote.org now claims Cleaver allegedly "doxed" Vote.org's CEO and other individuals by "publicizing" those individuals' personal contact information in the complaint she sent to the New York Attorney General's office. Vote.org claims Politico, the third-party national media organization that published the July 2025 "hit piece," then published her complaint, causing the individuals' personal contact information to be publicized. (Dkt. 25 at 4-6.) Because Vote.org's CEO is an Indiana resident, Vote.org also claims this alleged doxing of the CEO is sufficient to confer personal jurisdiction in Indiana. This new theory is inadequate for numerous reasons.

First, this "doxing" allegation is not alleged anywhere in the Complaint. Vote.org has raised this issue for the first time in its Opposition, and thus it cannot support personal jurisdiction. Vote.org cannot amend its pleadings through its brief. *Daleidan v. Dupage Internal Med., Ltd.*, CASE NO. 02 C 2785, 2002 U.S. Dist. LEXIS 14877, at *9 n.1 (N.D. Ill. Aug. 12, 2002) (quoting *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996).

3

Second, even if Vote.org had pled this doxing claim in the Complaint, the claim would fail because Vote.org would not be the real party in interest and would lack standing. Under the Federal Rules, an action must be brought by the real party in interest. *See* Fed. R. Civ. P. 17(a). A real party in interest is, "the person who is the true owner of the right sought to be enforced." *Carr v. Chi. Southershore & S. Bend R.R.* No. 2:03-CV-534 PPS, 2005 U.S. Dist. LEXIS 4057, at *8 (N.D. Ind. Mar. 14, 2005) (employer could not sue to recover expenses it paid for injured employee; employee was real party in interest).[2] Here, Vote.org claims Cleaver publicized the contact information of its CEO. (Dkt. 25. at 5.) Accordingly, any purported claim for "doxing" belongs to the CEO, not to Vote.org, and this cannot confer jurisdiction here.

Finally, this doxing theory also fails because it faces the same deficiencies as Vote.org's theory regarding nationwide publication of Cleaver's alleged defamatory statements, as discussed above. Vote.org admits it was Politico, not Cleaver, that published the personal contact information of the CEO and others. (Dkt. 25 at 5; Dkt. 20 at 3 (referencing "'hit pieces' by Politico"). If there was any "doxing", Vote.org admits it was Politico, not Cleaver, that did so.

Further, as Vote.org itself alleges, Politico published to the "national press," (*Id.* at 3) – not specifically or purposefully to an Indiana audience. Again, making a statement with a potential nationwide reach is not sufficient to establish personal jurisdiction in Indiana. *See, e.g., Loebe v. Kolfage*, 2015 U.S. Dist. LEXIS 159313, at *4-6 (S.D. Ind. Oct. 27, 2015).

### D. *Exercise of Personal Jurisdiction Will Offend Traditional Notions of Fair Play and Substantial Justice*

As discussed in Cleaver's Motion, this dispute has, at best, a nominal connection to Indiana. Neither Cleaver nor Vote.org are Indiana residents, and no significant acts of Cleaver's occurred

---

[2] *See also Int'l Union UAW v. Dana Corp.*, 278 F.3d 548, 559 (6th Cir. 2002) ("[plaintiff] does not have standing to litigate claims in federal court on behalf of its employees. . . [a plaintiff] cannot rest his claim to relief on the legal rights or interests of third parties.")

4

in Indiana. Vote.org's arguments to the contrary are unavailing, as detailed above.[3] Vote.org's argument that the burden on Cleaver of litigating in Indiana would be small also fails. First, Vote.org claims "Cleaver quickly obtained Indiana counsel." (Dkt. 25. at 8.) But that argument makes no sense – of course Cleaver obtained counsel in Indiana to respond to the Complaint by her deadline to do so. That Cleaver hired Indiana counsel cannot possibly mean she is subject to personal jurisdiction in Indiana, as that argument would be entirely circular. Second, Vote.org argues the burden on Cleaver to litigate in Indiana is small because she "is well-versed in electronic means of communication." It is unclear what that means or why it is relevant to the burden Cleaver would face, as a California resident, if forced to defend herself in Indiana. The burden on her would be substantial.[4]

## II.    Plaintiff Cannot Satisfy The Statutory Requirement Under 15 U.S.C. § 1125(a) That An Infringing Use Must Be "In Connection With Any Good Or Services"

Glaringly absent from Vote.org's opposition is any attempt to identify where in the "Indiana Letter," attached as Exhibit D to the Complaint, the alleged infringing use was in connection with any goods or services. The reason Vote.org failed in this regard is clear – the letter does not mention, describe, or identify any goods or services at all. On the contrary, the letter can best be described as a criticism of Vote.org's current CEO as conceded by Vote.org's own allegations.

---

[3] The case on which Vote.org relies also fails to support Vote.org's position. (Dkt. 25 at 8.) In *Brockman*, the court emphasized Indiana's strong interest in protecting its own citizens (*Brockman v. Kravic*, 779 N.E.2d 1250, 1259 (Ind. Ct. App. 2002)). Here, Vote.org is not an Indiana corporation, and does not operate out of Indiana. (Dkt. 1 ¶ 64.) It is based in Washington, D.C. and incorporated under the laws of California. (Id.) Cleaver also is not an Indiana resident. (Dkt. 1 ¶ 65.) Indiana therefore has no comparable interest in adjudicating this dispute. The factual posture in *Brockman* also bears no resemblance to the facts alleged here. There, the defendant affirmatively injected himself into legal proceedings pending in an Indiana court involving an Indiana family and an Indiana plaintiff. *Brockman*, 779 N.E.2d 1250, 1259-60. Here, by contrast, the allegedly defamatory letter was sent to a group as a whole, (Dkt. 1, Exhibit D, pg. 49), was not targeted at Indiana or its residents specifically, and Vote.org itself is not an Indiana entity, nor is Cleaver (Dkt. 1 ¶ 64-65.) The purposeful, forum-directed conduct present in *Brockman* is entirely absent in the present case.

[4] In fact, Vote.org apparently requests an evidentiary hearing on personal jurisdiction, which Vote.org presumably would try to have Cleaver attend. Making Cleaver travel across the country, even at the very outset of the case, to defend herself in a jurisdiction with no real connection to the dispute, would be unfair and demonstrates the burden Vote.org is attempting to foist upon her.

5

326936243v.1

(*See* Dkt. 1 ¶ 64.) But to violate the Lanham Act, an alleged infringing use must be "in connection with . . . goods or services." 15 U.S.C. § 1125(a)(1)(A). Failure to satisfy this statutory requirement is fatal to Counts Two and Three of Vote.org's Complaint.

In a failed attempt to satisfy the "in connection with" requirement of 15 U.S.C. § 1125(a)(1)(A), Vote.org cites exclusively to allegations in its Complaint to suggest that the alleged infringing use was

> designed to dilute the Vote.org Marks, cause confusion or mistake, deceive, and/or divert donations and contributions from Vote.org to Cleaver and/or Cleaver's competing organization and/or to pass off Cleaver's new entity as that of Vote.org' in connection with goods and services.

(Dkt. 25 at 25.) But Vote.org's conclusory allegations fall short of stating a claim for relief under the Lanham Act. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("(t)hreadbare recitals of the elements of a cause of action" are insufficient). Vote.org does not allege what language in the letter causes confusion or mistake as to a source of goods or services nor does it allege that the letter references "Cleaver's competing organization" to divert donations and contributions. (Dkt. 25 at 25.) Nowhere in its Opposition or the Complaint does Vote.org cite to specific language in the letter that would provide notice as to how the alleged infringing letter was "in connection with" goods or services as required by the statute. Importantly, because the contents of the letter contradict Vote.org's own allegations, the lack of any connection to goods and/or services in the letter controls and compels dismissal of Vote.org's Lanham Act claims. *See N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend,* 163 F.3d 449, 454-455 (7th Cir. 1998). Without more, Vote.org's alleged infringement, based solely on the use of Vote.org as letterhead, requires dismissal of Vote.org's Counts Two and Three as a matter of law.

Vote.org doubles down suggesting the Court should improperly imply from its threadbare allegations that the singular use of the mark as letterhead confirms Cleaver's attempt "to divert donations away from Vote.org and to her own competing organization." (Dkt. 25. at 26.) To

6

326936243v.1

support this improper implication, Vote.org relies on *Radiance Found., Inc. v. N.A.A.C.P.*, 786 F.3d 316 (4th Cir. 2015). Contrary to Vote.org's intent, however, *Radiance Found.* supports Cleaver's position.

In *Radiance Found.*, the court found that "[a] solicitation may satisfy the 'in connection with' element if the trademark holder demonstrates *a sufficient nexus between the unauthorized use of the protected mark and clear transactional activity*," i.e., commercial activity. *Radiance Found.*, 786 F.3d at 327 (emphasis added). This requirement reflects the court's concern with the tension between the First Amendment and the Lanham Act. It summed up this concern as follows:

> [t]he risk of impinging on protected speech is much greater when trademarks serve not to identify goods but rather to obstruct the conveyance of ideas, **criticism**, comparison, and social commentary.

*Radiance Found.*, 786 F.3d at 322 (emphasis added). The statute, by requiring a "real nexus" to goods or services, avoids a fatal collision with First Amendment principles. *Id.* at 324. Given this requirement, the court held that plaintiff did not satisfy the "in connection with" requirement even though the alleged infringing use included a "Donate button" on the article page – it was "too attenuated from the donation solicitation." *Id.* at 326. Here, as discussed above, Vote.org has not alleged nor shown *any nexus at all* to goods or services other than to recite conclusory allegations. Accordingly, Counts Two and Three should be dismissed as a matter of law.[5]

### III.    The Doctrine of Continuing Harm Condemns Vote.org's State Law Claims

Vote.org's invocation of the doctrine of continuing harm (Dkt. 25 at 14) is fatal to all of its

---

[5] The Court need not address the likelihood of confusion element. *See Taubman Co. v. Webfeats*, 319 F.3d 770, 774 (6th Cir. 2003) ("If [defendant's] use is commercial, then, and only then, do we analyze his use for a likelihood of confusion."). Even if it did, Vote.org's reliance on *Maremont v. Susan Fredman Design Group, Limited* is incorrect and misplaced. In *Maremont*, the alleged false association/endorsement claim was based on the defendant's use of plaintiff's image through plaintiff's personal social media platforms to impersonate and author posts and tweets marketing plaintiff's status as a professional interior designer of defendant and promoting defendant's services. *Maremont v. Susan Fredman Design Group, Ltd.*, 772 F.Supp.2d 967, 970 (N.D. Ill. 2011). Here, the opposite is true. As discussed above, the letter does not suggest any false endorsement or association because absent from the alleged infringing use, i.e. the letter, is any mention of a good and/or service of defendant.

state law claims. As Vote.org acknowledges, the doctrine of continuing harm applies "where an entire course of conduct combines to produce an injury." *Gradus-Pizlo v. Acton*, 964 N.E.2d 865, 871 (Ind. Ct. App. 2012) (citing *Garneau v. Bush*, 838 N.E.2d 1134, 1143 (Ind. Ct. App. 2005). Indiana courts applying the doctrine have made clear that for the doctrine to apply, the alleged violative conduct must be considered as part of a single course of conduct:

> The doctrine of continuing wrong applies where *an entire course of conduct combines* to produce an injury. *Boggs*, 730 N.E.2d at 699. When this doctrine attaches, the statutory limitations period begins to run at the end of *the continuing wrongful act*. *Havens v. Ritchey*, 582 N.E.2d 792, 795 (Ind. 1991). In order to apply the doctrine, the plaintiff must demonstrate that *the alleged injury-producing conduct was of a continuous nature*. *Burton v. Elskens*, 730 N.E.2d 1281, 1284 (Ind. Ct. App. 2000) (citing *Cyrus*, 546 N.E.2d at 331).

*Garneau*, 838 N.E.2d at 1143 (emphasis added).

Vote.org expressly acknowledges this by asserting that it "alleges a continuous course of conduct including actions that occurred as recently as July 2025." (Dkt. 25 at 14.) But far from saving Vote.org's state law claims from the limitations period, the doctrine condemns Vote.org's state law claims to failure. This is because "'[t]he doctrine of continuing wrong will not prevent the statute of limitations from beginning to run when the plaintiff learns of facts which should lead to the discovery of his cause of action *even if his relationship with the tortfeasor continues beyond that point*.'" *Garneau v. Bush*, 838 N.E.2d at 1145 (citations omitted, emphasis added).

Vote.org has expressly stated that it alleges that the entirety of its multiple factual allegations comprise *a single course of continuing conduct beginning in 2019*. (Dkt. 25 at 14; *See also*, Dkt. 1 at ¶ 12 ("Since her 2019 firing, Cleaver has defamed and disparaged Vote.org. . . ."); Dkt. 1 at ¶ 44 ("Immediately following her removal in 2019 - and continuing for six years, to the present day - Cleaver made it her mission to reputationally and monetarily harm Vote.org.").)

Vote.org's assertion that Indiana's discovery rule applies to save its state law claims from

8

the two-year limitations period applicable to those claims is contrary to the allegations Vote.org makes in its Complaint and to the documents and facts the parties have asked this Court to recognize through judicial notice. For example, in paragraphs 56 through 60 of its Complaint, Vote.org describes litigation between it and Cleaver in which Vote.org, *on May 9, 2023*, filed a Cross-Complaint against Cleaver alleging, among other things, conversion, intentional misrepresentation, tortious interference and unfair competition. (Dkt. 1 at ¶ 58.) In that Cross-Complaint, Vote.org expressly alleges that Cleaver "disseminat[ed] . . . disparaging and defamatory comments about [Vote.org] to third parties" (Dkt. 15-1 at 6 (numbered paragraph 5 of the Complaint's page 3)) and "deliberate[ly] interfer[ed] with [Vote.org's] existing contractual relationships." (Id.)

Vote.org's assertion that it is saved from the two-year limitations period is also contrary to controlling law. Under Indiana's discovery rule, "'the discovery date does not depend upon when a plaintiff knows with certainty that [tortious conduct] has occurred; a plaintiff need only know facts that through reasonable diligence would lead to the discovery of the alleged [conduct] and resulting injury." *Garneau*, 838 N.E.2d at 1141 (citations omitted). And, the doctrine of continuing wrong is not an equitable doctrine, but instead defines when the alleged act, omission, or neglect took place. *Gradus-Pizlo*, 964 N.E.2d at 871. That is, the doctrine does not operate to save Vote.org's late filing if facts establish that Vote.org had a basis to know to assert its claims earlier. Here, Cleaver's acts that Vote.org asserts constitute the actionable continuous course of conduct began in 2019, was known to Vote.org at least as early as May 9, 2023, and was in fact acted upon by Vote.org in a prior civil action that Vote.org dismissed with prejudice on May 23, 2024. Under *Garneau*, the statute of limitations for Vote.org's state law claims began to run at least as early as May 9, 2023, despite the fact that its relationship with Cleaver continued beyond

that point. *Garneau*, 838 N.E.2d at 1145. Vote.org filed this civil action September 8, 2025. All of Vote.org's state law claims are thus barred by their applicable two-year limitations period.

## IV.     Issue Preclusion Bars Vote.org's Claims Based On Previously Dismissed Allegations

In her Motion, Cleaver pointed out that portions of Vote.org's case are barred by issue preclusion because, as the Complaint acknowledges, Vote.org previously sued Cleaver in California for some of the same alleged conduct, and that prior case was dismissed with prejudice. Thus, Vote.org cannot pursue causes of action that relitigate the factual allegations that were previously raised and dismissed in that prior complaint.

Vote.org's Opposition appears to misunderstand the point. Vote.org's entire response simply argues that the dismissal of the prior complaint did not create "forward-looking immunity from accountability for future unlawful conduct." (Dkt. 25. at 16.) In other words, Vote.org argues Cleaver can still be liable for new acts she took *after* that dismissal occurred in May 2024.

That response misses the point Cleaver is making. Cleaver's argument is that Vote.org is barred from litigating alleged acts that occurred *before* the May 2024 dismissal, not alleged acts that occurred *after* that date. The Complaint largely repeats verbatim the same factual allegations regarding pre-May 2024 conduct that were contained in Plaintiff's previous Cross-Complaint, which was dismissed with prejudice. (See Dkt. 16 at 11-12.) In fact, Vote.org admits in its Opposition that some of its claims are based on acts Cleaver allegedly committed before the prior case was dismissed. (Dkt. 25 at 16 ("every count of the complaint is based in whole *or in part* on Cleaver's conduct after the [dismissed case]" (emphasis added).) Accordingly, these same allegations are barred by issue preclusion.

## V.     Vote.org Fails to State a Defamation Claim

Vote.org acknowledges that this Court must accept all *non-conclusory* facts alleged in the Complaint. (Dkt. 25 at 16.) This Court also need *not* accept conclusory. (*See*, Dkt. 17 at 13).

10

326936243v.1

Vote.org asserts only that its allegations in Complaint paragraphs 76 (which themselves refer only to allegations Vote.org makes in paragraphs 62, 64[6], 65, and 68) and paragraphs 61 and 62 are stated with sufficient specificity to state a claim. (Dkt. 25 at 17-18.) Vote.org fails to address Cleaver's argument that Vote.org's allegations in paragraphs 12-15, 44, 49, 53-55, 63, 66, and 69 are deficient because they state only conclusory allegations that need not be taken as true. These allegations cannot serve as a basis for Vote.org's defamation claim.

Vote.org cites *Farr v. St. Francis Hosp. & Health Ctrs.* for the proposition that "alleged defamatory statements need not be recited verbatim in order to satisfy the requirements of notice pleading." *Farr v. St. Francis Hosp. & Health Ctrs.,* 2007 U.S. Dist. LEXIS 72352, at *10 (S.D. Ind. Sept. 26, 2007). Vote.org asserts that it "has put Cleaver on notice with more than enough information to form an appropriate response." (Dkt. 25 at page 18.) Vote.org misunderstands Cleaver's challenge.

Cleaver does not demand that Vote.org's paragraph 61 and 62 allegations be verbatim recitations of the statements Vote.org alleges to be defamatory. Cleaver challenges the allegations because they are mere *characterizations* of allegedly defamatory statements – "false allegations of intimidation, harassment, personal or political attacks, and personal insults" (Dkt. 1 at ¶ 62). Far from seeking dismissal because Vote.org's allegations impede Cleaver's ability to form an appropriate response or because Vote.org fails to provide a verbatim – that is, exact, word-for-word - recitation of the allegedly defamatory statement – Cleaver seeks dismissal because Vote.org *fails to allege actionable factual content* of the allegedly defamatory statements.

---

[6] To defend its paragraph 64 allegations, Vote.org asserts statements in an anonymous letter. In response, Cleaver re-states her argument in section I.B, *supra*.

326936243v.1

Vote.org fails to acknowledge that *Farr* found plaintiff failed to state a claim for defamation, with the court observing that "Farr alleges only that 'Farr's superiors at St. Francis told other employees at St. Francis, who had no need to know, that Farr had accessed pornography on his St. Francis computer.'" (*Farr,* 2007 U.S. Dist. LEXIS 72352 at *11.) The plaintiff had in fact alleged with specificity the defamatory statement to be that he had accessed pornography on his work computer. The court found the plaintiff's alleged claim deficient because he failed to include additional details – the number of speakers or statements made, to whom the statements were made, or when or in what context the statements were made – permitting the defendant to defend against the claim. *Id.*

Vote.org's paragraph 61 and 62 allegations are even less specific than those in Farr. Vote.org provides only characterizations – essentially, topics – about which it alleges Cleaver made false statements. As the *Farr* court noted "[e]ven under notice pleading, a plaintiff must set out the operative facts of a defamation claim by including a specific account of the alleged defamatory statement in the complaint. *Id.* at *10 (citation omitted).

To defend its paragraph 65 allegation – that Cleaver made defamatory statements in a podcast – Vote.org asserts only that it provides Cleaver with the context of the statement, a July 2024 podcast. (Dkt. 25 at 18.) Vote.org wholly fails to meet Cleaver's assertion that portions of the statements are and true under Vote.org's own allegations in its Complaint and that the remainder of the statements are opinion and so not defamatory.

To defend its paragraph 68 allegations that Cleaver's reports to state Attorneys General and the Internal Revenue Service defamed it, Vote.org states only:

> The defamatory statement is not about the ultimate number of voters registered by Vote.org in 2024; the defamatory statement is that Cleaver brazenly accused Vote.org of fraud and deception because Vote.org did not meet its ambitious and admirable voter registration goal in 2024. While, "[t]ruth is an absolute defense to a claim of defamation,"

12

> there is nothing true in Cleaver's statements implying fraudulent conduct and her reliance on the truth defense is misplaced."

(Dkt. 25 at 22.)

But Vote.org's argument here is contradicted by its own allegations. As Cleaver observes in her motion to dismiss, Vote.org expressly admits its stated "goal" was to register 8 million voters, (Dkt. 1 at ¶ 76.e), but that it actually registered only 2.2 million (Dkt. 1 at ¶ 68.a), far below its target. Thus, Cleaver's statement that Vote.org failed to meet its goal is true, and not defamatory. Cleaver's stated *belief* that Vote.org knew it would not meet its goal and so had fraudulent intent *is her subjective opinion* and not defamatory.

## VI.     Cleaver's Complaints to the IRS and Attorneys General Are Privileged

Vote.org argues that Cleaver's complaints to Attorneys General and the IRS are not privileged. First, Vote.org argues (without support) that such a complaint is privileged only if it results in a formal process. Vote.org argues this is necessary because there are no deterrents other than civil litigation for making a false complaint. (Dkt. 25 at 23.)

That is untrue. Many criminal statutes punish knowingly false complaints, including those made to an Attorney General or to the IRS. For example, Cleaver is a California resident, (Dkt. 1 at ¶ 25), and Vote.org apparently alleges one of the complaints Cleaver made was to the California Attorney General. (Dkt. 20-5, (Ex. E – stating Cleaver's complaints were sent to AGs in California, New York, Georgia, and Pennsylvania).) California's penal code *expressly* states it is a misdemeanor knowingly to make a false complaint to the Attorney General. *See* Cal. Penal Code 148.5. Other relevant state penal codes similarly provide a criminal deterrent for false claims. *See* N.Y. Penal Law § 240.50(3); GA Code § 16-10-20. This issue alone defeats Vote.org's entire argued justification for why it claims there is no immunity in the absence of a formal process.

326936243v.1

Critically, while Vote.org argues a complaint to an Attorney General or to the IRS is privileged only if it results in a formal process, Vote.org fails to cite any authority for that proposition,[7] as there is no authority stating that a formal proceeding is required for it to attach.

Vote.org attempts to distinguish the cases Cleaver cites, but it fails to accept the ultimately dispositive precedent on the matter: *Hall v. Shaw*, 147 N.E.3d 394. (Ind. Ct. App. 2020). Cleaver correctly notes the *Hall* Court ruled the defendant's consumer complaint to the Indiana Attorney General's office cannot be the basis of a defamation claim because it is protected by absolute privilege, thus avoiding the otherwise chilling effect retaliatory defamation claims would have. *Hall*, 147 N.E.3d at 401. Cleaver also cites to *Abrahams v. Young & Rubicam*, 79 F.3d 234 (2d Cir. 1996) for a similar privilege applicable to statements made to the IRS.

Vote.org acknowledges *Hall's* holding but attempts to dispense with it by stating that "the Indiana Court of Appeals had no contrary arguments to consider." (Dkt. 25 at 23.) But Vote.org's defamation claim is a state law claim. The *Hall* case is binding precedent regardless of the arguments presented (or not presented) to that Court. And even if Vote.org's critique of *Abrahams's* application to this case is correct (and it is not), applying it in the manner Vote.org seeks here would completely undercut *Hall's* stated policy to avoid the chilling effect retaliatory defamation claims could have on persons providing pertinent information to enforcement authorities.

Finally, Vote.org cites *Beckman v. Regina Caeli, Inc.*, 752 F. Supp. 3d 1346 (N.D. Ga. 2024). (Dkt. 25 at 24.) Vote.org claims *Beckman* stands for the proposition that a statement to the IRS is not privileged as it is not part of a quasi-judicial proceeding. But critically, *Beckman* did not

---

[7] Vote.org's stance also is illogical. The reason such complaints are privileged is to prevent chilling legitimate reports of misconduct. *See Abbott v. Individualized Support Home Health Agency, Inc.*, 148 N.E.3d 1091, 1095-97 (Ind. Ct. App. 2020). That reason would exist regardless of whether the complaint results in a formal process.

326936243v.1

involve a complaint made to the IRS at all. Instead, in *Beckman*, the plaintiff simply alleged the defendant committed defamation *by filing its own tax forms* with the IRS that contained false information. The defendant claimed its own tax forms were privileged merely because the forms were filed with the IRS, and the court confirmed that was not the case. *See id.* at 1370-71. *Beckman* did not consider whether a complaint made to the IRS, for potential investigation and prosecution, is privileged. In short, Cleaver's complaints to Attorneys General and the IRS are absolutely privileged, and Vote.org's claim based on such complaints must fail.

## VII.    Vote.org's Remaining State Law Claims Fail

Vote.org alleges only attempted tortious interference, alleging "Cleaver made the false and defamatory complaint in an attempt to discredit Vote.org and harm, or potentially end, its relationship with the Partner Organization" (Dkt. 1, at ¶ 63); that "Cleaver has attempted to induce the Partner Organization to breach its contractual relationship with Vote.org," (Id. at ¶ 110); and that "Cleaver, upon information and belief, attempted to interfere with Vote.org's employee relationships," (Id. at ¶ 111). Vote.org's allegations do not allege actual interference with Vote.org's contracts or business relationships.

Cleaver asserts that the anonymous letter that Vote.org asserts was likely to cause confusion – and thus unfair competition – emphasized it was not being sent by Vote.org. (Dkt. 17 at 26.) Vote.org does not address this. Cleaver also asserts that the Protonmail email Vote.org alleges was likely to cause confusion bore characteristics indicating it was unlikely to confuse a Vote.org employee. (Id.) Vote.org does not address this.

Finally, Vote.org continues to fail to identify a fact supporting an Indiana nexus for the conduct it alleges to support its Indiana Crime Victims Relief Act claim

## VIII.   CONCLUSION

For the foregoing reasons, Cleaver respectfully asks the Court to grant her motion to dismiss.

15

326936243v.1

Respectfully submitted,

/s/ Thomas J. Flynn

Justin G. Hazlett
Attorney No. 22046-49
justin.hazlett@wilsonelser.com

Thomas J. Flynn
Attorney No. 35642-71
thomas.flynn@wilsonelser.com

WILSON ELSER MOSKOWITZ
EDELMAN & DICKER LLP
301 Pennsylvania Parkway
Suite 210
Indianapolis, IN 46280
(317) 908-8916 (tel)
(317) 660-2357 (fax)

Certificate of Service

I certify that on December 19, 2025 a copy of the foregoing document was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system. A copy of the foregoing was also served on the following parties via email to their counsel:

Kaylin Oldham Cook
McCarter & English
10 E Main Street
Suite 200
Carmel, IN 46032
317-810-5495 (tel)
Email: kcook@mccarter.com

Vanessa Roberts Avery
McCarter & English
CityPlace I
185 Asylum Street
Hartford, CT 06103
860-275-6700 (tel)
Email: vavery@mccarter.com

Zachary A. Myers
10 E Main St
Ste 200
Carmel, IN 46032
317-810-5500 (tel)
Email: zmyers@mccarter.com

/s/ Thomas J. Flynn

Thomas J. Flynn

16

326936243v.1